No. 24-2299

# In the United States Court of Appeals for the Second Circuit

PEOPLE OF THE STATE OF NEW YORK,
PLAINTIFF-APPELLEE

*v.*

PRESIDENT DONALD J. TRUMP, DEFENDANT-APPELLANT

*ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK (NO. 23-3773) (THE HONORABLE ALVIN K. HELLERSTEIN)*

**REPLY OF APPELLANT
FOR A STAY OF THE REMAND ORDER PENDING APPEAL**

EMIL BOVE
TODD BLANCHE
BLANCHE LAW PLLC
  99 Wall Street, Suite 4460
  New York, NY 10005
  (212) 716-1250
  emil.bove@blanchelaw.com

## Table of Contents

Introduction ................................................................................... 1

Argument ...................................................................................... 1

    A.    Success On The Merits ............................................................ 3

    B.    Irreparable Harm ................................................................... 7

    C.    Balance Of Harms ................................................................ 11

Conclusion .................................................................................. 12

**Introduction**

1. Defendant-Appellant President Donald J. Trump respectfully submits this reply in further support of his September 4, 2024 motion for a stay of the Remand Order (the "Motion"), and in response to DANY's September 5, 2024 opposition filing at Dkt. 14 (the "Opposition").[1]

**Argument**

2. DANY's Opposition focuses on the request for a temporary administrative stay, which is a device that "buys the court time to deliberate." *United States v. Texas*, 144 S. Ct. 797, 798 (2024). President Trump is seeking such a stay because it "is not always easy to evaluate in haste" whether to impose a stay pursuant to Fed. R. App. P. 8(a), which President Trump has also requested and is fully warranted. *Id.* DANY likewise seems concerned about haste and requests an opportunity to submit "full" and "comprehensive" briefing at a later date. Opp'n at 1, 2. Thus, at minimum, an administrative stay is appropriate to "freeze legal proceedings until the court can rule on a party's request for expedited relief." *Texas*, 144 S. Ct. at 798 (cleaned up).

---

[1] President Trump respectfully incorporates by reference the defined terms from the opening submission in support of the Motion.

3. The traditional stay factors strongly support both types of stays. DANY's suggestion that the Court may not even "consider[]" President Trump's arguments "at all" is indicative of the level of local hostilities that have pervaded the New York County proceedings, prejudiced President Trump, and support the Second Removal Notice. Opp'n at 1.

4. Tellingly, notwithstanding the emergent nature of the motion, DANY does not suggest that they will file their "full briefing" and "comprehensive response" on an expedited basis. Opp'n at 1, 2. Pursuant to Rule 27(a)(3), the default deadline for that filing is September 16, 2024, which is the same day that Justice Merchan is scheduled to issue a decision on the pending Presidential immunity motion. Mot. ¶ 21. DANY appears to be trying to delay the Court's ruling on the Rule 8(a) stay until after one of the most potentially damaging and harmful events at issue is expected to occur in New York County. Justice Merchan's decision on that motion, before President Trump has a full opportunity to demonstrate to this Court that he should be permitted to litigate the defense in federal forum, is an example of the type of irreparable harm at issue. The Court should cut through DANY's gamesmanship and, at

minimum, impose an administrative stay pending DANY's "comprehensive response" and any further reply from President Trump that the Court authorizes.

### A. Success On The Merits

5. DANY does no violence to President Trump's strong merits showing by seeking to rewrite the Remand Order to strip appellate jurisdiction. Opp'n at 2-3.

a. Congress has authorized this Court to address President Trump's challenges to the Remand Order. The district court focused on a merits question under § 1442(a)(1)—concluding, erroneously, that "[n]othing" in *Trump v. United States* "affect[ed]" the court's prior ruling that DANY's prosecution did not "relate[]" to acts under "color" of the Presidency, App. 69a—rather than President Trump's 12 pages of good-cause arguments under § 1455(b)(1)-(2), App. 52a-64a.

b. In the Remand Order, the district court explicitly quoted from § 1455(b)(4), which describes a "summary remand" procedure, twice. App. 67a, 70a.

c. Thus, the Remand Order is an "order remanding a case" based on § 1442(a)(1) that "shall be reviewable by appeal." 28 U.S.C. § 1447(d).

3

This Court's review is plenary. *BP p.l.c. v. Mayor & City Council of Baltimore*, 141 S. Ct. 1532, 1537-38 (2021).

      d. Alternatively, if § 1447(d) does not authorize the appeal, which is a meritless position, the Remand Order is reviewable under 28 U.S.C. § 1291. *See, e.g.*, *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712-13 (1996).

    6.    Like the district court in the Remand Order, DANY improperly seeks to draw inferences against President Trump's theory of the Presidential immunity defense by contending that the official-acts evidence described in the Second Removal Notice was "merely relevant" to their charges but not "essential." Opp'n at 4.

      a. The argument is contrary to this Court's requirement that § 1442(a)(1) be construed "broadly" and "liberally." Mot. ¶ 3.

      b. DANY's appeals team apparently disagrees with their trial team about the significance of the challenged official-acts proof described at length in the Second Removal Notice. While encouraging the jury to "examine" President Trump's official acts in a tactic the Supreme Court subsequently forbid as unconstitutional and unfairly prejudicial, *Trump v. United States*, 144 S. Ct. 2312, 2340-41 (2024), the ADA who gave

DANY's summation used words like "devastating" and "damaging" to describe some of the same evidence.

    c. In any event, DANY's distinction in the Opposition is immaterial. Official-acts evidence that DANY now admits was at least "merely relevant" to their criminal prosecution, Opp'n at 4, is also evidence "relating to" that prosecution under § 1442(a)(1).

    d. Permitting DANY to avoid that reality—and their earlier representations to the district court, *e.g.*, App. 16a—by focusing on their Indictment rather than the grand jury and trial record would "eviscerate" the Presidential immunity doctrine, *Trump v. United States*, 144 S. Ct. at 2340. *See* Opp'n at 4. "The Constitution deals with substance, not shadows." *Trump v. United States*, 144 S. Ct. at 2341 (cleaned up). It would be particularly problematic if prosecutors could escape removal by hiding Presidential immunity violations and official-acts evidence behind a barebones indictment, as "one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court." *Mesa v. California*, 489 U.S. 121, 133 (1989) (cleaned up).

5

7. DANY does not defend the district court's erroneous invocation of the *Rooker-Feldman* doctrine. Mot. ¶ 33.

a. Instead, DANY makes passing reference to distinct, inapposite abstention doctrines not cited in the Remand Order. Opp'n at 3. DANY's citations are so conclusory that they hardly merit a response in this setting. *E.g.*, *United States v. Collymore*, 61 F.4th 295, 297 n.1 (2d Cir. 2023) ("We decline . . . to consider that undeveloped argument.").

b. DANY's citation to *Manypenny* undercuts their abstention position. Similar to *Davis*, *see* Mot. ¶ 42, *Manypenny* involved federal-officer removal of a state criminal prosecution. 451 U.S. 232, 235-36 (1981). The Supreme Court found no disconnect between holding the "highest regard for a State's right to make and enforce its own criminal laws" and "conduct[ing] the trial under federal rules of procedure while applying the criminal law of the State." *Id.* at 241-43. These cases stand for the proposition that, when § 1442(a)(1) is applicable and its procedures complied with, federal courts show the states no disrespect.

c. This Court previously cited § 1442(a)(1)—when analyzing a DANY subpoena targeting President Trump—as a "[r]ecognition" of the "reality" that the "demands of federalism are diminished, . . . and the

importance of preventing friction is reduced, when state and federal actors are already engaged in litigation." *Trump v. Vance*, 941 F.3d 631, 637 (2d Cir. 2019), *aff'd on other grounds*, 591 U.S. 786 (2020).

        d. The importance of "preventing friction," *id.*, is reduced to an even greater extent where, as here, the litigation involves first-impression issues of "lasting significance" and "enduring consequences," *Trump v. United States*, 144 S. Ct. at 2326, 2346 (cleaned up).

    8.    Finally, DANY does not defend the failure of the District Court to address President Trump's preemption defense, which was relevant both to the merits of § 1442(a)(1) removal and based on intervening Supreme Court decisions and trial events that supported findings of good cause under § 1455(b)(1)-(2).

### B. Irreparable Harm

    9.    A stay is necessary to prevent irreparable harm to President Trump, voters across the country, and the integrity of the imminent Presidential election. *See* Mot. ¶ 37. "[T]he value of preserving the status quo here is much higher than in most other contexts" because we are "on the eve of an election." *Veasey v. Perry*, 769 F.3d 890, 892 (5th Cir. 2014). Because the potential impact on the election includes continued

7

infringements on President Trump's political advocacy and the public's reciprocal right to receive and engage with that advocacy, the damage includes irreparable First Amendment violations that DANY did not address. *See* Mot. ¶ 39.

a. DANY "[f]irst" attacks President Trump's demonstration of irreparable harm through an argument that misapprehends the status quo to be preserved by a stay, but then "[f]inally" comes close to acknowledging that the application of § 1455(b)(3) to stayed proceedings here would prevent Justice Merchan from conducting a sentencing that could lead to incarceration or other unacceptable liberty restrictions being imposed on the leading candidate in the forthcoming Presidential election. *Compare* Opp'n at 2, *with id*. at 4.

b. Specifically, pursuant to § 1455(b)(3), "a judgment of conviction shall not be entered" in New York County while the Second Removal Notice is being evaluated. Under New York law, such a judgment is complete when "sentence [is] imposed." CPL § 1.20(15). Always urging Justice Merchan to proceed recklessly, DANY incorrectly suggests that this Court's stay could only prevent Justice Merchan from "entering final judgment . . . *after* sentencing" President Trump. Opp'n

8

at 4 (emphasis added). But those are not separate processes under New York's Criminal Procedure Law. The "judgment" is "completed by imposition and entry of the sentence." CPL § 1.20(15). Therefore, a stay would prevent Justice Merchan from conducting the sentencing based on § 1455(b)(3), and thereby prevent one of the forms of irreparable harm at issue.

10. DANY also gives short shrift to the irreparable harm that would result from allowing the Remand Order to stand, without a stay, as if this appeal does not exist and there is no prospect of future federal litigation over President Trump's Presidential immunity and preemption defenses. Opp'n at 4-5. This is another argument that defies reality, and it would render the Supremacy Clause a dead letter.

a. DANY brushes past irreparable harm to President Trump's appellate rights. Such harm would result from allowing DANY to rush ahead in New York County without affording President Trump "an opportunity to move for a stay, to seek reconsideration, and/or to appeal the order and request a stay from the court of appeals." *Forty Six Hundred LLC v. Cadence Educ., LLC*, 15 F.4th 70, 81 (1st Cir. 2021).

b. DANY's preferred course would render this appeal an "empty bag." *Id.* at 79. In the absence of a stay, Justice Merchan proceeding to deny the Presidential immunity motion as he has already suggested he plans to do—notwithstanding evidence of his bias that is directly related to the motion, *see, e.g.*, Mot. ¶ 35(e)—could render futile President Trump's efforts to present the Presidential immunity and preemption defenses in a federal forum after a successful appeal and removal.

11. As to Presidential immunity, the irreparable harm to President Trump's appellate rights would result in the additional irreparable harms discussed in *Trump v. United States* by denying President Trump an important opportunity to present this defense in a federal forum.

a. At stake here is nothing short of the "enfeebling of the Presidency," and perpetuating the type of "cycle of factional strife" that "the Framers intended to avoid," with "profound consequences" for the "future of our Republic." *Trump v. United States*, 144 S. Ct. at 2346-47.

b. "Comity is a two-way street . . . ." *Vance*, 941 F.3d at 638 (cleaned up). That is because comity and federalism, when done right, are based on "the historic and still vital relation of mutual respect and

common purpose existing between the States and the federal courts." *Williams v. Taylor*, 529 U.S. 420, 436 (2000). Thus, whether or not Justice Merchan *could* deny the Presidential immunity motion during the pendency of this appeal, the requested stay would send an important signal that mutual respect under present circumstances includes maintaining the status quo in New York County to avoid irreparable harm to the immensely important federal interests at stake.

### C. Balance Of Harms

12. An administrative stay, followed by a Rule 8(a) stay pending appeal, is in the interests of the public and the courts. None of DANY's *valid* interests would be served by denying the requested relief.

    a. The stay would benefit the public's interest in the integrity of the 2024 Presidential election, which is deserving of great weight.

    b. DANY does not, and cannot, challenge the fact that the courts and the public have an interest in avoiding duplicative litigation in New York County that may need to be repeated in federal court.

    c. The pending motion does not seek an indefinite injunction of the New York County proceedings, or even the sentencing. Rather, the requested stays would maintain the status quo while this Court

11

addresses the merits of the appeal. That type of temporary delay was contemplated by Congress through the enactment of § 1447(d). *See* Mot. ¶ 41. And the request is not unreasonable under the extraordinary and unique circumstances presented.

## Conclusion

13. President Trump has met his burden of demonstrating that an administrative stay, followed by a Rule 8(a) stay, are reasonable measures to maintain the status quo during this appeal of the district court's deeply flawed Remand Order.

Dated: September 5, 2024
New York, N.Y.

By: /s/ Emil Bove
Emil Bove
Todd Blanche
Blanche Law PLLC
99 Wall Street, Suite 4460
New York, NY 10005
212-716-1250
emil.bove@blanchelaw.com

*Attorneys for
President Donald J. Trump*

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPESTYLE REQUIREMENTS

I, Emil Bove, counsel for Defendant-Appellant President Donald J. Trump and a member of the Bar of this Court, certify, pursuant to Federal Rules of Appellate Procedure 27(d) and 32(c)(1), and 32(g), that the foregoing reply is proportionately spaced, has a typeface of 14 points, and contains 2,192 words, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f).

September 5, 2024

By: /s/ Emil Bove
Emil Bove

## CERTIFICATE OF SERVICE

I, Emil Bove, counsel for Defendant-Appellant President Donald J. Trump and a member of the Bar of this Court, certify, that, on September 5, 2024, the attached reply was filed through the Court's electronic filing system. I certify that all participants in the case are registered users with the electronic filing system and that service will be accomplished by that system.

September 5, 2024

                                                By:   <u>/s/ Emil Bove</u>
                                                         Emil Bove