---

**No. 24-2299**

---

In the United States Court of Appeals
for the Second Circuit

———————————————

PEOPLE OF THE STATE OF NEW YORK,
PLAINTIFF-APPELLEE

*v.*

PRESIDENT DONALD J. TRUMP,
DEFENDANT-APPELLANT

———————————————

On Appeal from the United States District Court
For the Southern District of New York (No. 23-3773)
The Honorable Alvin K. Hellerstein

———————————————

*AMICUS CURIAE* **BRIEF OF AMERICA FIRST POLICY INSTITUTE**

———————————————

PAM BONDI
MATTHEW WHITAKER
JESSICA HART STEINMANN
RICHARD LAWSON
MICHAEL BERRY
AMERICA FIRST POLICY INSTITUTE
1635 Roger Road
Fort Worth, Texas 76107
T: (703) 637-3690
E: mberry@americafirstpolicy.com

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES.........................................................................iii

IDENTITY AND INTEREST OF *AMICUS CURIAE* ..............................1

INTRODUCTION ........................................................................................2

ARGUMENT ...............................................................................................3

   I.    Removal is Necessary to Vindicate Important Federal Interests....................3

   II.   Abstention is not required...........................................................10

CONCLUSION ...........................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Arizona v. Manypenny*, 451 U.S. 232 (1981) ...........................................6

*Bronx Defs. v. Off. Of Ct. Admin.*, 475 F. Supp.3d 278 (S.D.N.Y. 2020) ...............12

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976)..10

*Colorado v. Symes*, 286 U.S. 510 (1932) ...................................................5

*Com. of Puerto Rico v. Perez Casillas*, 24 F. Supp. 822 (D.P.R. 1985)...................5

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005). .................10

*Green v. Mattingly*, 585 F.3d 97 (2d Cir. 2009) .......................................11

*Jefferson County v. Acker*, 527 U.S. 423 (1999)........................................9

*Jordan v. Carter*, No. 1:23-cv-479, 2024 WL 3260483 (S.D. Ohio July 2, 2024)....4

*K&D LLC v. Trump Old Post Off. LLC*, 951 F.3d 503 (D.C. Cir. 2020) .................4

*McKithen v. Brown*, 626 F.3d 143 (2d Cir. 2010) ....................................11

*McMahon v. Presidential Airways, Inc.*, 410 F. Supp.2d 1189 (M.D. Fla. 2006) .....5

*Moccio v. New York State Office of Court Admin.*, 95 F.3d 195 (2d Cir. 1996) ......10

*New York v. Trump*, 683 F. Supp. 3d 334 (S.D.N.Y. 2023), appeal dismissed sub
    nom. *People v. Trump*, No. 23-1085, 2023 WL 9380793 (2d Cir. Nov. 15, 2023)
    ...............................................................................................4, 6

*People of the State of New York v. Trump*, Ind. No. 71543-2023 ...........................8

*Phifer v. City of New York*, 289 F.3d 49 (2d Cir. 2002) ...........................10

*Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 463 F. Supp. 2d 583 (E.D. La.
    2006), *aff'd* 485 F.3d 804 (5th Cir. 1992) .........................................6

*Spargo v. New York State Comm'n on Judicial Conduct*, 351 F.3d 65 (2d Cir. 2003)
    ...............................................................................................12

*Tennessee v. Davis*, 100 U.S. 256 (1880)...............................................5

*Trump v. United States*, 144 S. Ct. 2312 (2024) ....................................7, 9

*Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142 (2007) .............................8

*Williams v. Brantley*, 492 F. Supp. 925 (W.D.N.Y. 1980), *aff'd*, 738 F.2d 419 (2d Cir. 1984) .............................................................................................4, 5

*Willingham v. Morgan*, 395 U.S. 402 (1969) ................................. 3, 4, 5, 9

*Younger v. Harris*, 401 U.S. 37 (1971) ...................................................12

**Statutes**

28 U.S.C. § 1442 .......................................................................................2

28 U.S.C. § 1455(b)(1) ...............................................................................2

28 U.S.C. § 1455(b)(4) ............................................................................2, 6

28 U.S.C. § 1455(b)(5) ............................................................................2, 6

Act of February 4, 1815, § 8, 3 Stat. 198 ...................................................3

**Other Authorities**

14A C. Wright, A. Miller & E. Cooper, *Federal Prac. & Proc. Juris.*, § 3726 (Rev. 4th ed. 1985) ..........................................................................................3

H.R. Rep. No. 308, 80th Cong., 1st Sess., A134 (1947)............................4

## IDENTITY AND INTEREST OF *AMICUS CURIAE*[1]

America First Policy Institute ("AFPI") is a 501(c)(3) non-profit, non-partisan research institute dedicated to advancing policies that put the American people first. Its guiding principles are liberty, free enterprise, the rule of law, America-first foreign policy, and a belief that American workers, families, and communities are the key to our country's success.

AFPI's leadership includes many former leaders of the United States government. AFPI's leaders and members alike appreciate that bedrock principles of separation of powers, enshrined in the Nation's constitutional design from its birth, produce critical checks on government power while promoting accountability to the American people.

AFPI believes that the court below erred when it summarily remanded Defendant-Appellant's Second Notice of Removal without holding an evidentiary hearing. Congress intended removal for federal officials to be broadly construed to prevent state interference with federal operations and to ensure federal officials can

---

[1] No counsel for a party in this case authored this brief in whole or in part, and no such counsel or party made a monetary contribution intended to fund the preparation of this brief. No person other than *amicus curiae*, its members, or its counsel made a monetary contribution to the preparation or submission of this brief.

1

vindicate their interests before a federal court. AFPI submits this *amicus* in support of a stay pending this Court's review of the removal order issued below.

## INTRODUCTION

When a federal official's actions in their official capacity are the subject, whether in whole or part, of a legal action, the official may seek to remove the case against them to the corresponding federal court. 28 U.S.C. § 1442 (the "Federal Official Removal Statute"). For criminal proceedings, a federal defendant must file a notice of removal in both the state and district court within thirty (30) days after the state court arraignment. 28 U.S.C. § 1455(b)(1). A federal defendant may file such notice of removal after the thirty-day deadline "for good cause shown." *Id*. The district court judge reviewing such notice of removal is authorized to grant summary remand to the state court only where it can be determined from the face of the notice that removal is improper. 28 U.S.C. § 1455(b)(4). In all other cases, the district court should hold a prompt evidentiary hearing to determine the merits of the removal request. 28 U.S.C. § 1455(b)(5). Where removal is granted, the state court proceedings are halted. *Id*.

In the present case, the court below denied Defendant-Appellant's Second Notice of Removal. App. 7a-70a. That decision does not comport with the requirements of the Federal Official Removal Statute and ignores the important federal issues raised by Defendant-Appellant.

2

Defendant-Appellant sought removal to vindicate important federal interests that arose during and after the conclusion of his state court trial. Instead of conducting a proper evidentiary hearing on those issues—the doctrine of presidential immunity, the Supremacy Clause, the Sixth Amendment, and the First Amendment—the District Court summarily rejected removal based on a flawed rationale that failed to consider these important intervening events. The refusal of the court below to grant removal deprived Defendant-Appellant of the right to have those federal issues adjudicated by a federal court. Accordingly, this Court should stay that denial pending Defendant-Appellant's appeal.

## ARGUMENT

### I. Removal is Necessary to Vindicate Important Federal Interests.

Congress enacted the first Federal Official Removal Statute in 1815 "to protect federal officers from interference by hostile state courts." *Willingham v. Morgan*, 395 U.S. 402, 405 (1969) (citing Act of February 4, 1815, § 8, 3 Stat. 198). *See also* 14A C. Wright, A. Miller & E. Cooper, *Federal Prac. & Proc. Juris.*, § 3726 (Rev. 4th ed. 1985) ("Federal officers acting under color of office always have been granted a right to remove in order to protect the exercise of legitimate federal authority by government agents from interference by individual States through their courts, and numerous cases have articulated that policy justification for the statute and its predecessor."). While the initial removal act was

3

not permanent and only applied to certain federal officials, "other periods of national stress spawned similar enactments from Congress," applicable to varying federal officials as needed. *Willingham*, *supra* (listing subsequent enactments). Eventually Congress responded to this often-occurring issue by enacting a permanent statute that is applicable to all federal officials, *id*. at 405-06 (citing H.R. Rep. No. 308, 80th Cong., 1st Sess., A134 (1947), including the president. *See New York v. Trump*, 683 F. Supp. 3d 334, 343 (S.D.N.Y. 2023), appeal dismissed sub nom. *People v. Trump*, No. 23-1085, 2023 WL 9380793 (2d Cir. Nov. 15, 2023). ("I believe that the President should qualify as a 'federal officer' under the removal statute[.]")); *Jordan v. Carter*, No. 1:23-cv-479, 2024 WL 3260483, at *3 (S.D. Ohio July 2, 2024) (finding that President Obama had removed the case to federal court under 28 U.S.C. § 1442(a)(1) and thus was entitled to an appeal of the remand order under 28 U.S.C. § 1447(d)); *K&D LLC v. Trump Old Post Off. LLC*, 951 F.3d 503, 508 (D.C. Cir. 2020) ("Because President Trump has raised a colorable federal defense and demonstrated that Cork's suit falls within the scope of section 1442(a)(1), we conclude that this case was properly removed, and the district court possessed subject-matter jurisdiction.").

It is well established that "[t]he federal officer removal statute is not a narrow or limited statute." *Williams v. Brantley*, 492 F. Supp. 925, 927 (W.D.N.Y. 1980), *aff'd*, 738 F.2d 419 (2d Cir. 1984). *See also Com. of Puerto Rico v. Perez*

4

*Casillas*, 24 F. Supp. 822, 826 (D.P.R. 1985) ("Because the right of removal is a crucial procedural vehicle in the exercise of legitimate federal authority, Section 1442 receives a liberal construction."); *McMahon v. Presidential Airways, Inc.*, 410 F. Supp.2d 1189, 1196 (M.D. Fla. 2006) ("[W]hile removal provisions are usually construed narrowly, *see, e.g., Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996), the federal officer provision is 'not narrow or limited,' but instead 'is broad enough to cover all cases where federal officers can raise a colorable defense arising out of their duty to enforce federal law.'") (quoting *Willingham*, 395 U.S. at 406–07). Broad interpretation is necessary "to maintain the supremacy of the laws of the United States by safeguarding officers and others acting under federal authority against peril of punishment of state law." *Colorado v. Symes*, 286 U.S. 510, 517 (1932) (citing *Tennessee v. Davis*, 100 U.S. 256 (1880)). This Court has recognized and affirmed that "[t]he availability and protection of the federal forum should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)." *Williams*, 492 F. Supp. at 927.

Despite this clear precedent, the Court below narrowly construed the statute to summarily reject Defendant-Appellant's removal, effectively vindicating state interests over federal ones in direct contravention of Congress's intent. Summary remand is only permissible where "it clearly appears on the face of the notice and any exhibits annexed thereto that removal should not be permitted[.]" 28 U.S.C. §

5

1442(b)(4). The Court below erred when it granted summary remand because it based that decision on its prior findings, *New York v. Trump*, 683 F. Supp. 3d 334 (S.D.N.Y. 2023), without considering the evidence of intervening events presented in Defendant-Appellant's second notice of removal. Under the Federal Official Removal Statute, the intervening events provided in the second notice of removal could only be properly considered following an evidentiary hearing. 28 U.S.C. § 1455(b)(5).

Congress intended the statute would "ensure a federal forum in any case where a federal official is entitled to raise a defense arising out of his official duties. The act of removal permits a trial upon the merits of the state law question free from local interests or prejudice." *Arizona v. Manypenny*, 451 U.S. 232, 241-42 (1981). As explained above, to achieve this end, "the Court must interpret the statute liberally, resolving any factual disputes in favor of federal jurisdiction." *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 463 F. Supp. 2d 583, 588 (E.D. La. 2006), *aff'd* 485 F.3d 804 (5th Cir. 1992). The Court below ignored this well-established precedent by failing to consider the "good cause" for the second notice of removal and resolving Defendant-Appellant's claims in favor of state jurisdiction. Had the court below held an evidentiary hearing it would have been clear that the federal interests at hand are of the kind that Congress intended be resolved by a federal court.

6

At minimum, the defense of presidential immunity, as clarified in an intervening Supreme Court decision earlier this year, warrants review by a federal court. In *Trump v. United States*, the Supreme Court held that "the President is absolutely immune from criminal prosecution for conduct within his exclusive sphere of constitutional authority." *Trump v. United States*, 144 S. Ct. 2312, 2328 (2024). As the Court explained:

> If official conduct for which the President is immune may be scrutinized to help secure his conviction, even on charges that purport to be based only on his unofficial conduct, the "intended effect" of immunity would be defeated. [*Nixon v.*] *Fitzgerald*, 457 U.S. [731,] 756 [(1982)]. The President's immune conduct would be subject to examination by a jury on the basis of generally applicable criminal laws. Use of evidence about such conduct, even when an indictment alleges only unofficial conduct, would heighten the prospect that the President's official decisionmaking will be distorted. *See Clinton* [*v. Jones*], 520 U.S. [681,] 694, n. 19 [(1997)].

*Id.* at 2341.

The court below failed to give sufficient attention to these considerations and instead chose to rely on its own prior reasoning for denying presidential immunity as sufficient reason to deny the Second Notice of Removal. A more thorough examination would have revealed how the Supreme Court's warnings came to fruition in the state court proceedings against Defendant-Appellant where the District Attorney in New York relied on such official acts for both the grand jury proceedings and the trial on the merits. App. 24a-25a. Defendant-Appellant

has moved to have the charges against him vacated based on the use of this

evidence and his entitlement to immunity for official acts, but the judge in the state

court has indicated that he will not rule on the motion until after the 2024

Presidential Election. *People of the State of New York v. Trump*, Ind. No. 71543-

2023, Letter Adjournment, available at:

https://www.nycourts.gov/LegacyPDFS/press/pdfs/PeoplevDJT-Letter-

Adjournment-Dec9-6-24.pdf (sentencing for the underlying conviction was also

postponed until after the election). Had the court below conducted and evidentiary

hearing and applied the Supreme Court's presidential immunity holdings to the

facts presented in the Second Notice of Removal, the need for a federal forum to

resolve these questions would have been self-evident.

The facts underlying the present case reflect the dangerous state interference

that Congress sought to protect against when it enacted the permanent federal

official removal statute in 1948. As the Supreme Court explained,

> the removal statute's basic purpose is to protect the
> Federal Government from interference with its operations
> that would ensue were a State able, for example, to arres[t]
> and bring to trial in a State cour[t] for an alleged offense
> against the Law of the State, officers and agents of the
> Federal Government acting . . . within the scope of their
> authority.

*Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 150 (2007) (alterations

original) (internal quotation marks and citations omitted). Defendant-Appellant

8

alleges that the prosecution not only violated the rules of presidential immunity and his constitutional rights, but also that it is intended to interfere with the 2024 Presidential Election. State interference of this nature disrupts the constitutional balance of power between the states and federal government and can only be rectified by adjudication before a federal court.

Finally, "one of the most important reasons for removal is to have the validity of the defense of official immunity tried in federal court." *Willingham*, 395 U.S. at 407. *See also Jefferson County v. Acker*, 527 U.S. 423, 447 (1999) (Scalia, J., concurring in part and dissenting in part) (explaining that "the main point [of federal official removal] is to give officers a federal forum in which to litigate the merits of immunity defenses."). The issue of presidential immunity is especially poignant considering the above-referenced Supreme Court decision in *Trump v. United States*. As the Court explained, the president has absolute immunity for official acts while in office and evidence of those official acts cannot be used to establish culpability for other unofficial acts, *Trump*, 144 S. Ct. at 2340-42. A federal court is the proper venue to review Defendant-Appellant's renewed claims of presidential immunity in light of the intervening facts and Supreme Court decision Standing alone, this issue is sufficient to warrant removal to federal court.

## II.     Abstention is not required.

The Constitution sets up a system of two co-equal sovereigns: States and the Federal Government. One attribute of sovereignty is to legislatively define harms to society and codify those harms as crimes, and for each sovereign to have its own court system adjudicate those crimes. Federal courts have a "virtually unflagging obligation . . . to exercise the[ir] jurisdiction," *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976), when a matter is properly before them.

First, the court below erred when it relied on the *Rooker-Feldman* doctrine to block removal. This judicially created "doctrine holds that inferior federal courts lack subject matter jurisdiction 'over cases that effectively seek review of judgments of state courts[.]'" *Phifer v. City of New York*, 289 F.3d 49, 55 (2d Cir. 2002) (quoting *Moccio v. New York State Office of Court Admin.*, 95 F.3d 195, 197 (2d Cir. 1996)). The Supreme Court has explained that it "is confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

*Rooker-Feldman* abstention has four requirements: "(1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court

10

judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced." *McKithen v. Brown*, 626 F.3d 143, 154 (2d Cir. 2010). The "first and fourth requirements may be loosely termed procedural, while the second and third requirements may be termed substantive." *Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009) (quotation marks and citation omitted). Defendant-Appellant's motion for stay overcomes these factors.

As stated, the second notice of removal was filed due to intervening events after the issuance of a jury verdict, including applicable Supreme Court decisions, to vindicate federal interests and not because of a "loss" in state court. Defendant-Appellant does not seek review of a final court judgment that was entered before the Second Notice of Removal was filed. Instead, he seeks the same relief he sought from the state court—a ruling on his motion to vacate the indictment against him based on presidential immunity. Thus, Defendant-Appellant is not inviting a federal court to reject a state court judgment, he merely seeks the opportunity to present the presidential immunity defense he submitted to the state court, which has been adjourned until after the election.

Finally, the *Younger* abstention doctrine is also inapplicable here. *Younger* is non-jurisdictional, it is merely "a prudential limitation on the court's exercise of jurisdiction grounded in equitable considerations of comity." *Spargo v. New York*

11

*State Comm'n on Judicial Conduct*, 351 F.3d 65, 74 (2d Cir. 2003) (citation omitted). *Younger* abstention counsels that out of respect for federalism under the 10th Amendment and for the status of the states as co-sovereigns, once a State has initiated a criminal prosecution for a matter in which there are federal issues, a federal court should usually abstain from acting upon its own federal jurisdiction, giving space to the state judiciary to adjudicate the matter, knowing that state courts have concurrent jurisdiction to decide federal defenses as part of that case, and that a Defendant can ultimately file a Supreme Court petition regarding those federal protections if the state appellate system does not properly decide those questions on appeal. But this is far from a usual case.

As the Supreme Court has explained, "[t]he *Younger* abstention doctrine prohibits federal courts from interfering with ongoing state proceedings, absent a showing of bad faith, harassment, or a patently invalid state statute." *Bronx Defs. v. Off. Of Ct. Admin.*, 475 F. Supp.3d 278, 284 (S.D.N.Y. 2020) (citing *Younger v. Harris*, 401 U.S. 37 (1971)). *Younger* abstention requires that "(1) there is an ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims." *Bronx Defs.*, 475 F. Supp.3d at 284 (quotation marks and citation omitted). The issues this Court

12

is being asked to consider do not rise to the level required for abstention by *Younger*.

The equation should be different in this case. All abstention doctrines are judicial policy judgments crafted by the Supreme Court, so the Court also has plenary authority to craft exceptions and otherwise define the contours and limits of those doctrines. The President occupies a unique role in the life of the Nation, implicating unique federal interests. Here, a former President—which is a status recognized in federal law—who is the presumptive opposition party nominee in the federal presidential election that is currently underway—which is also recognized under federal law—alleges that his federal constitutional rights are being violated. Among those many violations are (1) that the indictment that initiated this prosecution violates the Sixth Amendment of the federal Constitution by not specifying the predicate crime, (2) that the possible predicate crimes—once identified during closing arguments and in the jury instructions—are crimes that can only be defined and enforced by the Federal Government (specifically the Department of Justice or Federal Election Commission)—and therefore the charges violate Article VI of the Supremacy Clause, and (3) the jury instruction that the jury need not unanimously agree on which federal crime was committed is another Sixth Amendment violation.

13

Defendant-Appellant further plausibly alleges that the whole purpose of the prosecution is to interfere with the nationwide presidential election, which is a paramount federal interest. If these arguments are correct, then this represents an assault of the highest order on the US. Constitution. The harm will be irreparable if not remedied before balloting begins for the presidency, and there is daily harm already accruing through this unconstitutional undermining of the campaigning process for that federal office.

Moreover, the state proceeding is not ongoing as it has been adjourned until after the 2024 Presidential Election. Any interest the state may claim does not rise to the "important" level required for a federal court to decline jurisdiction, and certainly does not overcome Defendant-Appellant's interest in having his federal defenses heard in a proper forum. To date, the state proceeding has not afforded Defendant-Appellant an adequate opportunity to vindicate the federal interests that serve as the basis for his removal notice. Defendant-Appellant does not seek interference with a state proceeding, he merely seeks the opportunity to exercise his right, under federal statute, to have his federal defenses adjudicated by a federal court.

Given all that, this Court should recognize that *Younger* abstention does not apply under these extraordinary and unprecedented circumstances, because federal interests predominate here over the State's interest in the state criminal proceeding.

14

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant-Appellant's motion for stay pending appeal should be GRANTED.

Dated: September 9, 2024                     Respectfully submitted,

                                              /s/ Michael Berry
                                             Michael Berry

                                             Pam Bondi
                                             Matthew Whitaker
                                             Jessica Hart Steinmann
                                             Richard Lawson
                                             America First Policy Institute
                                             1635 Roger Road
                                             Fort Worth, Texas 76107
                                             T: 703.637.3690
                                             E: mberry@americafirstpolicy.com

## **CERTIFICATE OF COMPLIANCE**

I, Michael Berry, counsel for *amicus curiae* America First Policy Institute and a member of the bar of this Court, certify, pursuant to Federal Rules of Appellate Procedure 29(a)(5) and 32(g), that the foregoing brief of *amicus curiae* is proportionately spaced, has a typeface of 14 points, and contains 3,264 words, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f).

Dated: September 9, 2024          /s/ Michael Berry

Michael Berry

## <u>CERTIFICATE OF SERVICE</u>

I, Michael Berry, counsel for *amicus curiae* America First Policy Institute and a member of the bar of this Court, certify that on September 9, 2024, the foregoing *amicus curiae* brief was filed using the Court's CM/ECF filing system. I further certify that all participants in the case are registered users with the CM/ECF filing system and that service will be accomplished by that system.

Dated: September 9, 2024           /s/ Michael Berry
                                   Michael Berry

17