---

**No. 24-2299**

---

In the United States Court of Appeals
for the Second Circuit

---

PEOPLE OF THE STATE OF NEW YORK,
PLAINTIFF-APPELLEE

*v.*

PRESIDENT DONALD J. TRUMP,
DEFENDANT-APPELLANT

---

On Appeal from the United States District Court
For the Southern District of New York (No. 23-3773)
The Honorable Alvin K. Hellerstein

---

*AMICUS CURIAE* **BRIEF OF AMERICA FIRST POLICY INSTITUTE**

---

PAM BONDI
MATTHEW WHITAKER
JESSICA HART STEINMANN
MICHAEL BERRY
RICHARD LAWSON
GINA M. D'ANDREA
AMERICA FIRST POLICY INSTITUTE
1635 Roger Road
Fort Worth, Texas 76107
T: (703) 637-3690
E: mberry@americafirstpolicy.com

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES.......................................................................3

IDENTITY AND INTEREST OF AMICUS CURIAE ............................6

INTRODUCTION ....................................................................................7

ARGUMENT ...........................................................................................8

   I.    Removal is Necessary to Vindicate Important Federal Interests....................8

      A.   The Defense of Presidential Immunity Should Be Reviewed by a Federal Court ..............................................................................................12

      B.   Defendant-Appellant's Supremacy Clause Defense Should Also be Reviewed by a Federal Court. ..........................................................15

   II.   Abstention is Not Requied.............................................................22

CONCLUSION ......................................................................................27

## TABLE OF AUTHORITIES

### Cases

*Altria Group, Inc. v. Good,* 555 U.S. 70 (2008)................................................. 15, 20

*Arizona v. Manypenny*, 451 U.S. 232 (1981)...........................................................12

*Arizona v. United States*, 567 U.S. 387 (2012).......................................................20

*Barnett Bank of Marion Cnty., N.A. v. Nelson*, 517 U.S. 25 (1996).......................16

*Bronx Defs. v. Off. Of Ct. Admin.*, 475 F. Supp.3d 278 (S.D.N.Y. 2020) ......... 24, 25

*Buckley v. Valeo*, 424 U.S. 1 (1976)................................................................. 18, 21

*Buono v. Tyco Fire Prod., LP*, 78 F.4th 490 (2d Cir. 2023) ....................................16

*Cantero v. Bank of Am., N.A.*, 49 F.4th 121 (2d Cir. 2022).....................................16

*Chamber of Com. of U.S. v. Whiting*, 563 U.S. 582 (2011).....................................17

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976)..22

*Colorado v. Symes*, 286 U.S. 510 (1932)................................................................10

*Com. of Puerto Rico v. Perez Casillas*, 24 F. Supp. 822 (D.P.R. 1985)..................10

*Crosby v. National Foreign Trade Council*, 530 U.S. 363 (2000)...........................15

*CSX Transp., Inc. v. Easterwood,* 507 U.S. 658 (1993).................................... 17, 18

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005)...................23

*Fed. Election Comm'n v. NRA Pol. Victory Fund*, 513 U.S. 88 (1994)...................22

*Foster v. Love*, 522 U.S. 67 (1997).........................................................................17

*Gade v. National Solid Wastes Management Ass'n*, 505 U.S. 88 (1992) ................21

*Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1 (1824).....................................................16

*Green v. Mattingly*, 585 F.3d 97 (2d Cir. 2009) .....................................................23

*Gregory v. Ashcroft*, 501 U.S. 452 (1991) ..............................................................15

*Jefferson County v. Acker*, 527 U.S. 423 (1999).....................................................14

*Jordan v. Carter*, No. 1:23-cv-479, 2024 WL 3260483 (S.D. Ohio July 2, 2024)....9

*K&D LLC v. Trump Old Post Off. LLC*, 951 F.3d 503 (D.C. Cir. 2020) ..................9

*Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024) .............................19

*Maryland v. Louisiana,* 451 U.S. 725 (1981) ...........................................................15

*McKithen v. Brown*, 626 F.3d 143 (2d Cir. 2010) ....................................................23

*McMahon v. Presidential Airways, Inc.*, 410 F. Supp.2d 1189 (M.D. Fla. 2006) ...10

*Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996)............................................. 16, 17, 19

*Moccio v. New York State Office of Court Admin.*, 95 F.3d 195 (2d Cir. 1996) ......22

*New York SMSA Ltd. P'ship v. Town of Clarkstown*, 612 F.3d 97 (2d Cir. 2010)....16

*New York v. Trump*, 683 F. Supp. 3d 334 (S.D.N.Y. 2023),

*app. dismissed sub nom. People v. Trump*, No. 23-1085, 2023 WL 9380793 (2d Cir.

Nov. 15, 2023)......................................................................................9, 11, 20

*People of the State of New York v. Trump*, Ind. No. 71543-2023 ...........................14

*Phifer v. City of New York*, 289 F.3d 49 (2d Cir. 2002) ..........................................22

*Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 463 F. Supp. 2d 583 (E.D. La.

2006), *aff'd* 485 F.3d 804 (5th Cir. 1992) ........................................................12

*Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218 (1947)............................................21

*Spargo v. New York State Comm'n on Judicial Conduct*, 351 F.3d 65 (2d Cir. 2003)

.............................................................................................................................24

*Tennessee v. Davis*, 100 U.S. 256 (1880)................................................................10

*Trump v. Anderson*, 601 U.S. 100 (2024) ...............................................................20

*Trump v. United States*, 144 S. Ct. 2312 (2024) ............................................... 13, 14

*U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779 (1995) .......................................17

*Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142 (2007)............................11

*Williams v. Brantley*, 492 F. Supp. 925 (W.D.N.Y. 1980), *aff'd*, 738 F.2d 419 (2d

Cir. 1984) ..........................................................................................................10

*Willingham v. Morgan*, 395 U.S. 402 (1969)........................................... 8, 9, 10, 14

*Younger v. Harris*, 401 U.S. 37 (1971) ...................................................................25

**Statutes**

28 U.S.C. § 1442......................................................................................7

28 U.S.C. § 1455(b)(1)............................................................................7

28 U.S.C. § 1455(b)(4)........................................................................7, 11

28 U.S.C. § 1455(b)(5)........................................................................7, 11

52 U.S.C. § 30143(a) ........................................................................ 17, 18

Act of February 4, 1815, § 8, 3 Stat. 198..............................................8

**Other Authorities**

14A C. Wright, A. Miller & E. Cooper, *Federal Prac. & Proc. Juris.*, § 3726 (Rev. 4th ed. 1985) ...............................................................................8

H.R. Rep. No. 308, 80th Cong., 1st Sess., A134 (1947)..........................9

Merriam-Webster, "Any", available at https://www.merriam-webster.com/dictionary/any ...............................................................18

**Regulations**

11 C.F.R. § 108.7.....................................................................................20

**Constitutional Provisions**

U.S. Const. Art. I § 4 cl. 1.....................................................................17

U.S. Const. art. VI, cl. 2 .......................................................................15

## IDENTITY AND INTEREST OF AMICUS CURIAE[1]

America First Policy Institute ("AFPI") is a 501(c)(3) non-profit, non-partisan research institute dedicated to advancing policies that put the American people first. Its guiding principles are liberty, free enterprise, the rule of law, America-first foreign policy, and a belief that American workers, families, and communities are the key to our country's success.

AFPI's leadership includes many former leaders of the United States government. AFPI's leaders and members alike appreciate that bedrock principles of separation of powers, enshrined in the Nation's constitutional design from its birth, produce critical checks on government power while promoting accountability to the American people.

AFPI believes that the court below erred when it summarily remanded Defendant-Appellant's Second Notice of Removal without holding an evidentiary hearing. Congress intended removal for federal officials to be broadly construed to prevent state interference with federal operations and to ensure federal officials can vindicate their interests before a federal court. Proper consideration of the federal issues raised by Defendant-Appellant—presidential immunity doctrine and

---

[1] The parties have consented in writing to AFPI's brief. No counsel for a party in this case authored this brief in whole or in part, and no such counsel or party made a monetary contribution intended to fund the preparation of this brief. No person other than *amicus curiae*, its members, or its counsel made a monetary contribution to the preparation or submission of this brief.

preemption—would have established good cause for removal. AFPI submits this *amicus* in support of a Defendant-Appellant's arguments that removal was warranted based on the important federal interests before the Court.

## INTRODUCTION

When a federal official's actions in their official capacity are the subject, either in whole or part, of a legal action, the official may seek to remove the case against them to the corresponding federal court. 28 U.S.C. § 1442 (the "Federal Official Removal Statute"). For criminal proceedings, a federal defendant must file a notice of removal in both the state and district court within thirty (30) days after the state court arraignment. 28 U.S.C. § 1455(b)(1). A federal defendant may file such notice of removal after the thirty-day deadline "for good cause shown." *Id*. The district court judge reviewing such notice of removal is authorized to grant summary remand to the state court only where it can be determined from the face of the notice that removal is improper. 28 U.S.C. § 1455(b)(4). In all other cases, the district court should hold a prompt evidentiary hearing to determine the merits of the removal request. 28 U.S.C. § 1455(b)(5). Where removal is granted, the state court proceedings are halted. *Id*.

In the present case, the court below denied Defendant-Appellant's Second Notice of Removal. App. 7a-70a. That decision does not comport with the

requirements of the Federal Official Removal Statute and ignores the important federal issues raised by Defendant-Appellant.

Defendant-Appellant sought removal to vindicate important federal interests that arose during and after the conclusion of his state court trial. Instead of conducting a proper evidentiary hearing on those issues—the doctrine of presidential immunity, the Supremacy Clause, the Sixth Amendment, and the First Amendment—the District Court summarily rejected removal based on a flawed rationale that failed to consider these important intervening events. The refusal of the court below to grant removal deprived Defendant-Appellant of the right to have those federal issues adjudicated by a federal court. Accordingly, this Court should reverse the remand order issued by the court below and grant immediate removal of this case.

## **ARGUMENT**

### I.      **Removal is Necessary to Vindicate Important Federal Interests.**

Congress enacted the first Federal Official Removal Statute in 1815 "to protect federal officers from interference by hostile state courts." *Willingham v. Morgan*, 395 U.S. 402, 405 (1969) (citing Act of February 4, 1815, § 8, 3 Stat. 198). *See also* 14A C. Wright, A. Miller & E. Cooper, *Federal Prac. & Proc. Juris.*, § 3726 (Rev. 4th ed. 1985) ("Federal officers acting under color of office always have been granted a right to remove in order to protect the exercise of legitimate federal

authority by government agents from interference by individual States through their courts, and numerous cases have articulated that policy justification for the statute and its predecessor."). While the initial removal act was not permanent and only applied to certain federal officials, "other periods of national stress spawned similar enactments from Congress," applicable to varying federal officials as needed. *Willingham*, *supra* (listing subsequent enactments). Eventually Congress responded to this often-occurring issue by enacting a permanent statute that is applicable to all federal officials, *id*. at 405-06 (citing H.R. Rep. No. 308, 80th Cong., 1st Sess., A134 (1947), including the president. *See New York v. Trump*, 683 F. Supp. 3d 334, 343 (S.D.N.Y. 2023), appeal dismissed sub nom. *People v. Trump*, No. 23-1085, 2023 WL 9380793 (2d Cir. Nov. 15, 2023). ("I believe that the President should qualify as a 'federal officer' under the removal statute[.]")); *Jordan v. Carter*, No. 1:23-cv-479, 2024 WL 3260483, at *3 (S.D. Ohio July 2, 2024) (finding that President Obama had removed the case to federal court under 28 U.S.C. § 1442(a)(1) and thus was entitled to an appeal of the remand order under 28 U.S.C. § 1447(d)); *K&D LLC v. Trump Old Post Off. LLC*, 951 F.3d 503, 508 (D.C. Cir. 2020) ("Because President Trump has raised a colorable federal defense and demonstrated that Cork's suit falls within the scope of section 1442(a)(1), we conclude that this case was properly removed, and the district court possessed subject-matter jurisdiction.").

9

It is well established that "[t]he federal officer removal statute is not a narrow or limited statute." *Williams v. Brantley*, 492 F. Supp. 925, 927 (W.D.N.Y. 1980), *aff'd*, 738 F.2d 419 (2d Cir. 1984). *See also Com. of Puerto Rico v. Perez Casillas*, 24 F. Supp. 822, 826 (D.P.R. 1985) ("Because the right of removal is a crucial procedural vehicle in the exercise of legitimate federal authority, Section 1442 receives a liberal construction."); *McMahon v. Presidential Airways, Inc.*, 410 F. Supp.2d 1189, 1196 (M.D. Fla. 2006) ("[W]hile removal provisions are usually construed narrowly, *see, e.g., Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996), the federal officer provision is 'not narrow or limited,' but instead 'is broad enough to cover all cases where federal officers can raise a colorable defense arising out of their duty to enforce federal law.'") (quoting *Willingham*, 395 U.S. at 406–07). Broad interpretation is necessary "to maintain the supremacy of the laws of the United States by safeguarding officers and others acting under federal authority against peril of punishment of state law." *Colorado v. Symes*, 286 U.S. 510, 517 (1932) (citing *Tennessee v. Davis*, 100 U.S. 256 (1880)). This Court has recognized and affirmed that "[t]he availability and protection of the federal forum should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)." *Williams*, 492 F. Supp. at 927.

Despite this clear precedent, the Court below narrowly construed the statute to summarily reject Defendant-Appellant's removal, effectively vindicating state interests over federal ones in direct contravention of Congress's intent. Summary

remand is only permissible where "it clearly appears on the face of the notice and any exhibits annexed thereto that removal should not be permitted[.]" 28 U.S.C. § 1442(b)(4). The Court below erred when it granted summary remand because it based that decision on its prior findings, *New York v. Trump*, 683 F. Supp. 3d 334 (S.D.N.Y. 2023), without considering the evidence of intervening events presented in Defendant-Appellant's second notice of removal. Under the Federal Official Removal Statute, the intervening events provided in the second notice of removal could only be properly considered following an evidentiary hearing. 28 U.S.C. § 1455(b)(5). Proper consideration of those events would have established the required good cause for the untimely second notice of removal.

Furthermore, the facts underlying the present case reflect the dangerous state interference that Congress sought to protect against when it enacted the permanent federal official removal statute in 1948. As the Supreme Court explained,

> the removal statute's basic purpose is to protect the Federal Government from interference with its operations that would ensue were a State able, for example, to arres[t] and bring to trial in a State cour[t] for an alleged offense against the Law of the State, officers and agents of the Federal Government acting . . . within the scope of their authority.

*Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 150 (2007) (alterations original) (internal quotation marks and citations omitted). Defendant-Appellant alleges that the prosecution not only violated the rules of presidential immunity,

11

preemption, and his constitutional rights, but also that it did so with the intent to interfere with the 2024 Presidential Election. State interference of this nature disrupts the constitutional balance of power between the states and federal government and can only be rectified by adjudication before a federal court.

### A. The Defense of Presidential Immunity Should Be Reviewed by a Federal Court.

Congress intended the Federal Officer Removal statute would "ensure a federal forum in any case where a federal official is entitled to raise a defense arising out of his official duties. The act of removal permits a trial upon the merits of the state law question free from local interests or prejudice." *Arizona v. Manypenny*, 451 U.S. 232, 241-42 (1981). As explained above, to achieve this end, "the Court must interpret the statute liberally, resolving any factual disputes in favor of federal jurisdiction." *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 463 F. Supp. 2d 583, 588 (E.D. La. 2006), *aff'd* 485 F.3d 804 (5th Cir. 1992). The Court below ignored this well-established precedent by failing to consider the "good cause" for the second notice of removal and resolving Defendant-Appellant's claims in favor of state jurisdiction. Had the court below held an evidentiary hearing it would have been clear that the federal interests at hand are of the kind that Congress intended be resolved by a federal court.

At minimum, the defense of presidential immunity, as clarified in an intervening Supreme Court decision earlier this year, warrants review by a federal

court. In *Trump v. United States*, the Supreme Court held that "the President is absolutely immune from criminal prosecution for conduct within his exclusive sphere of constitutional authority." *Trump v. United States*, 144 S. Ct. 2312, 2328 (2024). As the Court explained:

> If official conduct for which the President is immune may be scrutinized to help secure his conviction, even on charges that purport to be based only on his unofficial conduct, the "intended effect" of immunity would be defeated. [*Nixon v.*] *Fitzgerald*, 457 U.S. [731,] 756 [(1982)]. The President's immune conduct would be subject to examination by a jury on the basis of generally applicable criminal laws. Use of evidence about such conduct, even when an indictment alleges only unofficial conduct, would heighten the prospect that the President's official decisionmaking will be distorted. *See Clinton* [*v. Jones*], 520 U.S. [681,] 694, n. 19 [(1997)].

*Id.* at 2341.

The court below failed to give sufficient attention to these considerations and instead chose to rely on its own prior reasoning for denying presidential immunity as sufficient reason to deny the Second Notice of Removal. A more thorough examination would have revealed how the Supreme Court's warnings came to fruition in the state court proceedings against Defendant-Appellant where the District Attorney in New York relied on such official acts for both the grand jury proceedings and the trial on the merits. App. 24a-25a. Defendant-Appellant has moved to have the charges against him vacated based on the use of this evidence and his entitlement to immunity for official acts, but the judge in the state court has

indicated that he will not rule on the motion until after the 2024 Presidential Election. *People of the State of New York v. Trump*, Ind. No. 71543-2023, Letter Adjournment, available at: https://www.nycourts.gov/LegacyPDFS/press/pdfs/PeoplevDJT-Letter-Adjournment-Dec9-6-24.pdf (sentencing for the underlying conviction was also postponed until after the election). Had the court below conducted an evidentiary hearing and applied the Supreme Court's presidential immunity holdings to the facts presented in the Second Notice of Removal, the need for a federal forum to resolve these questions would have been self-evident.

Importantly, "one of the most important reasons for removal is to have the validity of the defense of official immunity tried in federal court." *Willingham*, 395 U.S. at 407. *See also Jefferson County v. Acker*, 527 U.S. 423, 447 (1999) (Scalia, J., concurring in part and dissenting in part) (explaining that "the main point [of federal official removal] is to give officers a federal forum in which to litigate the merits of immunity defenses."). The issue of presidential immunity is especially poignant considering the above-referenced Supreme Court decision in *Trump v. United States*. As the Court explained, the president has absolute immunity for official acts while in office and evidence of those official acts cannot be used to establish culpability for other unofficial acts. *Trump*, 144 S. Ct. at 2340-42. A federal court is the proper venue to review Defendant-Appellant's renewed claims of

14

presidential immunity in light of the intervening facts and Supreme Court decision. Standing alone, this issue is sufficient to warrant removal to federal court.

**B. Defendant-Appellant's Supremacy Clause defense should also be reviewed by a federal court.**

Had the court below conducted a proper review of Defendant-Appellant's petition for removal it would have also been clear that the Federal Election Campaign Act, 52 U.S.C. §§ 30101, *et seq*., ("FECA") preempts the charges brought by the State of New York. The court below committed reversible error in failing to consider these arguments.

Because the "Constitution establishes a system of dual sovereignty between the States and the Federal Government," *Gregory v. Ashcroft*, 501 U.S. 452, 457 (1991), it is inevitable that conflicts arise between the laws enacted by these dual sovereigns. The inclusion of the Supremacy Clause, which provides that "the Laws of the United States . . . shall be the supreme Law of the Land . . . [the] Laws of any State to the Contrary notwithstanding," U.S. Const. art. VI, cl. 2, reflects the Framers' awareness of this conflict and their guidance to the courts in resolving such conflicts. Accordingly, "state and local laws that conflict with federal law are without effect.'" *Altria Group, Inc. v. Good,* 555 U.S. 70, 76 (2008) (quoting *Maryland v. Louisiana,* 451 U.S. 725, 746 (1981)). *See also Crosby v. National Foreign Trade Council*, 530 U.S. 363, 372 (2000) (explaining that "state law is naturally preempted to the extent of any conflict with a federal statute."); *Barnett Bank of Marion Cnty.,*

15

*N.A. v. Nelson*, 517 U.S. 25, 30 (1996) (explaining that "the Supremacy Clause requires courts to follow federal, not state, law."); *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 82 (1824) ("[T]he act of Congress . . . is supreme; and the law of the State, though enacted in the exercise of powers not controverted, must yield to it."). Thus, while the states have wide latitude to enact laws to regulate and protect their citizens, conflicts are generally resolved in favor of the federal sovereign.

There are three types of preemption:

> (1) express preemption, where Congress has expressly preempted local law; (2) field preemption, where Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law; and (3) conflict preemption, where local law conflicts with federal law such that it is impossible for a party to comply with both or the local law is an obstacle to the achievement of federal objectives.

*New York SMSA Ltd. P'ship v. Town of Clarkstown*, 612 F.3d 97, 103–04 (2d Cir. 2010) (quotation marks and citation omitted). Regardless of the method employed by Congress, analysis of "[p]reemption is 'a matter of statutory interpretation,'" *Buono v. Tyco Fire Prod., LP*, 78 F.4th 490, 495–96 (2d Cir. 2023) (quoting *Cantero v. Bank of Am., N.A.*, 49 F.4th 121, 130 (2d Cir. 2022)), and "the purpose of Congress is the ultimate touchstone in every pre-emption case." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (internal quotation marks omitted).

Both express and implied preemption are relevant to this case. First, FECA contains an express preemption provision barring any state law purporting to

16

regulate federal elections. 52 U.S.C. § 30143(a). Second, preemption is also expressly contained in the Elections Clause of the U.S. Constitution which empowers Congress with broad and undoubted authority to regulate the time, place and manner of federal elections and to preempt state laws. U.S. Const. Art. I § 4 cl. 1; *Foster v. Love*, 522 U.S. 67, 69 (1997) ("Thus it is well settled that the Elections Clause grants Congress 'the power to override state regulations' by establishing uniform rules for federal elections, binding on the States.") (quoting *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 832-833 (1995)). Finally, Congress has occupied the field of federal elections thereby barring states from enacting regulations in this realm. As will be shown, the charges against Defendant-Appellant fall under FECA's preemption provision and as such cannot survive under the Supremacy Clause.

"When a federal law contains an express preemption clause, we 'focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent.'" *Chamber of Com. of U.S. v. Whiting*, 563 U.S. 582, 594 (2011) (quoting *CSX Transp., Inc. v. Easterwood,* 507 U.S. 658, 664 (1993)). *See also Medtronic Inc.*, 518 U.S. at 512 (O'Connor, J., concurring in part) ("If a statute contains an express pre-emption clause, the task of statutory construction must in the first instance focus on the plain wording of the clause, which necessarily

contains the best evidence of Congress' pre-emptive intent.") (citing *CSX Transp., Inc.*, 507 U.S. at 664).

The plain language of FECA supports Defendant-Appellant's preemption arguments. FECA is an "intricate statutory scheme adopted by Congress to regulate federal election campaigns [and] includes restrictions on political contributions and expenditures that apply broadly to all phases of and all participants in the election process." *Buckley v. Valeo*, 424 U.S. 1, 12-13 (1976). As relevant here, Congress expressly preempted state laws conflicting with FECA: "the provisions of this Act, and of rules prescribed under this Act, *supersede and preempt any provision of State law with respect to election to Federal office*." 52 U.S.C. § 30143(a) (emphasis added). Merriam-Webster defines "any" as "one or some indiscriminately of whatever kind." Merriam-Webster, "Any", available at https://www.merriam-webster.com/dictionary/any (last visited Oct. 10, 2024). Taken at face value, this broad statutory language clearly bars state regulation of federal campaign finance issues, including the charges brought against Defendant-Appellant.

Furthermore, while true FECA's preemption provision has been previously construed as narrow, such construction is inconsistent with both the plain language of the statute and the intent of Congress. Nor is it binding on this Court. First, prior to the Supreme Court's decision overturning *Chevron* earlier this year, it had already been established that "[w]here the language of the statute is clear, resort to the

18

agency's interpretation is improper." *Medtronic, Inc.*, 518 U.S. at 512 (O'Connor, J., concurring in part). Discussing a statute preempting "any [state] requirement," Justice O'Connor noted that it would be error to "employ an agency's narrowing construction of a statute where no such deference is warranted. The statute makes no mention of a requirement of specificity, and there is no sound basis for determining that such a restriction on 'any requirement' exists." *Id*. The same is true here, where FECA explicitly preempts any State law regarding federal elections. Such preemption necessarily includes contributions and expenditures related to the 2016 presidential election, which formed the basis for the state law charges against Defendant-Appellant. *See generally* Appellant's Brief at 75-77.

Second, as the Supreme Court explained when it overruled *Chevron* earlier this year, "courts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2273 (2024). Accordingly, the district court erred in relying on its previous denial, which was based on the applicable regulations and an Eighth Circuit ruling describing the preemption provision as narrow in scope. *New York v. Trump*, 683 F. Supp. 3d 334, 347 (S.D.N.Y. 2023), *appeal dismissed sub nom. People v. Trump*, No. 23-1085, 2023 WL 9380793 (2d

19

Cir. Nov. 15, 2023).[2] Deference to the narrow interpretation of 11 C.F.R. § 108.7 is thus no longer warranted and the regulation should be reviewed for compliance with the statute it purports to implement.

The presence of an express preemption provision, even when that provision is clearly implicated as is the case here, "does not immediately end the inquiry because the question of the substance and scope of Congress' displacement of state law still remains." *Altria Grp., Inc*, 555 U.S. at 76. As explained, the plain language of FECA's preemption provision broadly applies to *any* state law. Furthermore, as the Supreme Court's ruling this summer in *Trump v. Anderson* makes clear, state authority to control federal elections and candidates is limited in nature. 601 U.S. 100, 111 (2024) (explaining that state "power over governance . . . does not extend to *federal* . . .candidates.") (emphasis original). This ruling in conjunction with the plain broad language of the preemption statute indicates that Congress did in fact intend to supplant state law with respect to FECA violations.

FECA is also subject to field preemption. "[F]ield preemption . . . prevents the states 'from regulating conduct in a field that Congress, acting within its proper authority, has determined must be regulated by its exclusive governance.'" *Arizona v. United States*, 567 U.S. 387, 399 (2012) (quoting *Gade v. National Solid Wastes*

---

[2] Defendant-Appellant's preemption arguments were not addressed by the District Court in the matter presently before this Court.

*Management Ass'n*, 505 U.S. 88, 115 (1992) (Souter, J., dissenting)). Congress's "intent to displace state law altogether can be inferred from a framework of regulation 'so pervasive . . . that Congress left no room for the States to supplement it' or where there is a 'federal interest . . . so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.'" *Id*. (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)).

Partially concurring in *Buckley v. Valeo*, Justice White explained the necessity of federal primacy with respect to federal elections:

> It is accepted that Congress has power under the Constitution to regulate the election of federal officers, including the President and the Vice President. This includes the authority to protect the elective processes against the "two great natural and historical enemies of all republics, open violence and insidious corruption," *Ex parte Yarbrough*, 110 U.S. 651, 658, 4 S.Ct. 152, 155, 28 L.Ed. 274 (1884); for "(i)f this government is anything more than a mere aggregation of delegated agents of other states and governments, each of which is superior to the general government, *it must have the power to protect the elections on which its existence depends*, from violence and corruption," the latter being the consequence of "the free use of money in elections, arising from the vast growth of recent wealth . . . ." Id., at 657-658, 667, 4 S.Ct. at 160.

424 U.S. 1, 257 (1976) (White, J., concurring in part) (emphasis added). Even were this not so, FECA satisfies the "pervasive framework" and "dominant interest" required to establish field preemption because it "governs various aspects of *all federal elections* . . . [including sections that] specifically govern the administration

21

of funds for Presidential election campaigns and the payment of matching funds for Presidential primary campaigns." *Fed. Election Comm'n v. NRA Pol. Victory Fund*, 513 U.S. 88, 91 (1994) (emphasis added). Preemption would have been clear had the district court taken the time to properly review it as good cause supporting the Second Notice of Removal instead of summarily remanding Defendant-Appellant's petition for removal.

## II.    Abstention is not required.

The Constitution sets up a system of two co-equal sovereigns: States and the Federal Government. One attribute of sovereignty is to legislatively define harms to society and codify those harms as crimes, and for each sovereign to have its own court system adjudicate those crimes. Federal courts have a "virtually unflagging obligation . . . to exercise the[ir] jurisdiction," *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976), when a matter is properly before them.

First, the court below erred when it relied on the *Rooker-Feldman* doctrine to block removal. This judicially created "doctrine holds that inferior federal courts lack subject matter jurisdiction 'over cases that effectively seek review of judgments of state courts[.]'" *Phifer v. City of New York*, 289 F.3d 49, 55 (2d Cir. 2002) (quoting *Moccio v. New York State Office of Court Admin.*, 95 F.3d 195, 197 (2d Cir. 1996)). The Supreme Court has explained that it "is confined to cases . . . brought by state-

22

court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

*Rooker-Feldman* abstention has four requirements: "(1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced." *McKithen v. Brown*, 626 F.3d 143, 154 (2d Cir. 2010). The "first and fourth requirements may be loosely termed procedural, while the second and third requirements may be termed substantive." *Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009) (quotation marks and citation omitted). Defendant-Appellant's second notice of removal overcomes these factors.

As stated, the second notice of removal was filed due to intervening events after the issuance of a jury verdict, including applicable Supreme Court decisions, to vindicate federal interests and not because of a "loss" in state court. Defendant-Appellant does not seek review of a final court judgment that was entered before the Second Notice of Removal was filed. Instead, he seeks the same relief he sought from the state court—a ruling on his motion to vacate the indictment against him based on presidential immunity and preemption. Thus, Defendant-Appellant is not

23

inviting a federal court to reject a state court judgment, he merely seeks the opportunity to present the presidential immunity and preemption defenses he submitted to the state court, which has been adjourned until after the election.

Finally, the *Younger* abstention doctrine is also inapplicable here. *Younger* is non-jurisdictional, it is merely "a prudential limitation on the court's exercise of jurisdiction grounded in equitable considerations of comity." *Spargo v. New York State Comm'n on Judicial Conduct*, 351 F.3d 65, 74 (2d Cir. 2003) (citation omitted). *Younger* abstention counsels that out of respect for federalism under the 10th Amendment and for the status of the states as co-sovereigns, once a State has initiated a criminal prosecution for a matter in which there are federal issues, a federal court should usually abstain from acting upon its own federal jurisdiction, giving space to the state judiciary to adjudicate the matter, knowing that state courts have concurrent jurisdiction to decide federal defenses as part of that case, and that a Defendant can ultimately file a Supreme Court petition regarding those federal protections if the state appellate system does not properly decide those questions on appeal. But this is far from a usual case.

As the Supreme Court has explained, "[t]he *Younger* abstention doctrine prohibits federal courts from interfering with ongoing state proceedings, absent a showing of bad faith, harassment, or a patently invalid state statute." *Bronx Defs. v. Off. Of Ct. Admin.*, 475 F. Supp.3d 278, 284 (S.D.N.Y. 2020) (citing *Younger v.*

24

*Harris*, 401 U.S. 37 (1971)). *Younger* abstention requires that "(1) there is an ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims." *Bronx Defs.*, 475 F. Supp.3d at 284 (quotation marks and citation omitted). The issues this Court is being asked to consider do not rise to the level required for abstention by *Younger*.

The equation should be different in this case. All abstention doctrines are judicial policy judgments crafted by the Supreme Court, so the Court also has plenary authority to craft exceptions and otherwise define the contours and limits of those doctrines. The President occupies a unique role in the life of the Nation, implicating unique federal interests. Here, a former President—which is a status recognized in federal law—who is the opposition party nominee in the federal presidential election that is currently underway—which is also recognized under federal law—alleges that his federal constitutional rights are being violated. Among those many violations are (1) that the indictment that initiated this prosecution violates the Sixth Amendment of the federal Constitution by not specifying the predicate crime, (2) that the possible predicate crimes—once identified during closing arguments and in the jury instructions—are crimes that can only be defined and enforced by the Federal Government (specifically the Department of Justice or Federal Election Commission)—and therefore the charges violate Article VI of the

Supremacy Clause, and (3) the jury instruction that the jury need not unanimously agree on which federal crime was committed is another Sixth Amendment violation.

Defendant-Appellant further plausibly alleges that the whole purpose of the prosecution is to interfere with the nationwide presidential election, which is a paramount federal interest. If these arguments are correct, then this represents an assault of the highest order on the US. Constitution. The harm will be irreparable if not remedied before balloting begins for the presidency, and there is daily harm already accruing through this unconstitutional undermining of the campaigning process for that federal office.

Moreover, the state proceeding is not ongoing as it has been adjourned until after the 2024 Presidential Election. Any interest the state may claim does not rise to the "important" level required for a federal court to decline jurisdiction, and certainly does not overcome Defendant-Appellant's interest in having his federal defenses heard in a proper forum. To date, the state proceeding has not afforded Defendant-Appellant an adequate opportunity to vindicate the federal interests that serve as the basis for his removal notice. Defendant-Appellant does not seek interference with a state proceeding, he merely seeks the opportunity to exercise his right, under federal statute, to have his federal defenses adjudicated by a federal court.

Given all that, this Court should recognize that *Younger* abstention does not apply under these extraordinary and unprecedented circumstances, because federal interests predominate here over the State's interest in the state criminal proceeding.

## CONCLUSION

For the foregoing reasons, the holding of the district court should be REVERSED.

Dated: October 17, 2024                Respectfully submitted,

                                       /s/ Michael Berry
                                       Michael Berry

                                       Pam Bondi
                                       Matthew Whitaker
                                       Jessica Hart Steinmann
                                       Richard Lawson
                                       Gina M. D'Andrea
                                       America First Policy Institute
                                       1635 Roger Road
                                       Fort Worth, Texas 76107
                                       T: 703.637.3690
                                       E: mberry@americafirstpolicy.com

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Michael Berry, counsel for *amicus curiae* America First Policy Institute and a member of the bar of this Court, certify, pursuant to Federal Rules of Appellate Procedure 29(a)(5) and 32(g), that the foregoing brief of *amicus curiae* is proportionately spaced, has a typeface of 14 points, and contains 5,205 words, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f).

Dated: October 17, 2024        /s/ Michael Berry
                                      Michael Berry

## <u>CERTIFICATE OF SERVICE</u>

I, Michael Berry, counsel for *amicus curiae* America First Policy Institute and a member of the bar of this Court, certify that on October 17, 2024, the foregoing *amicus curiae* brief was filed using the Court's electronic filing system. I further certify that all participants in the case are registered users with the electronic filing system and that service will be accomplished by that system.

Dated: October 17, 2024          /s/ Michael Berry
                                             Michael Berry