# 24-2299

## United States Court of Appeals

For the Second Circuit

---

**PEOPLE OF THE STATE OF NEW YORK**,

*Plaintiff-Appellee,*

*- against -*

**DONALD J. TRUMP,**

*Defendant-Appellant.*

**On Appeal from the United States District Court
for the Southern District of New York**

---

## BRIEF FOR APPELLEE
## PEOPLE OF THE STATE OF NEW YORK

---

ALVIN L. BRAGG, JR.
District Attorney
New York County
Attorney for Respondent-Appellee
One Hogan Place
New York, New York 10013
(212) 335-9000

STEVEN C. WU
*Chief, Appeals Division*
JOHN T. HUGHES
*Assistant District Attorney*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................ iv

INTRODUCTION ..................................................................................... 1

QUESTION PRESENTED ......................................................................... 4

STATEMENT OF THE CASE .................................................................... 4

    A. The Charges in the Indictment ......................................................... 4

    B. The First Removal Proceeding ......................................................... 5

    C. The State Jury Trial and Defendant's Conviction ............................ 7

    D. *Trump v. United States* ..................................................................... 7

    E. Defendant's Post-Trial Motion to Vacate ........................................ 8

    F. Defendant's Motion for Leave to File an Untimely
       Second Notice of Removal ............................................................... 9

    G. Defendant's Post-Trial Motion to Dismiss ..................................... 12

    H. Defendant's Failed Attempts to Stay the January 10 Sentencing ................. 14

    I. Defendant's Sentencing ................................................................... 15

SUMMARY OF ARGUMENT ................................................................... 15

ARGUMENT ............................................................................................ 18

POINT I

    DEFENDANT'S SENTENCING MOOTS THIS APPEAL
    AND, IN ANY EVENT, WOULD OVERWHELMINGLY
    ESTABLISH LACK OF GOOD CAUSE FOR AN UNTIMELY
    SECOND NOTICE OF REMOVAL ............................................... 20

        A. Because Defendant Has Been Sentenced in State Court,
          Removal Is No Longer Available, and This Appeal Is Moot ............ 20

B. Even If This Proceeding Were Not Moot, Defendant's
Sentencing and the Entry of Final Judgment Would
Provide Compelling Reason to Find Absence of Good
Cause for a Late Notice of Removal. ...................................................... 25

POINT II

DEFENDANT FAILED TO ESTABLISH ANY NEW
GROUNDS FOR FINDING THAT FEDERAL-OFFICER
REMOVAL WAS AVAILABLE .......................................................... 27

A. Federal-Officer Removal Is Unavailable Because the Criminal
Charges Here Were Based on Private, Unofficial Conduct. .......................... 28

B. *Trump v. United States* Did Not Provide Good Cause for
Defendant's Untimely Filing or Create a New Basis for Removal................ 32

C. The Evidentiary Ruling in *Trump v. United States* Is Inapplicable
Here in Any Event. ...................................................................... 34

POINT III

THE INEXPLICABLY LATE SUBMISSION OF
DEFENDANT'S MOTION FOR LEAVE TO FILE A
SECOND REMOVAL NOTICE GAVE THE DISTRICT
COURT ADDITIONAL GROUNDS TO DENY
DISCRETIONARY RELIEF ............................................................. 40

POINT IV

DEFENDANT'S MYRIAD COMPLAINTS ABOUT THE
STATE CRIMINAL TRIAL, IN ADDITION TO BEING
BASELESS, ARE NOT GERMANE TO THE EXISTENCE OF
GOOD CAUSE..................................................................................... 42

A. Defendant's Complaints About the Trial Are Immaterial
to Whether There Was Good Cause to File an Untimely
Second Notice of Removal. .................................................................. 42

B. Defendant's Complaints Are Also Baseless. ...................................... 44

1. Defendant's Judicial Bias Claims Are Specious........................... 44

2. The People Made No Misrepresentations During the First Removal Proceeding.......................................................... 48

3. Defendant's Complaints Regarding the Order Restricting Extrajudicial Statements Are Baseless....................... 48

4. Defendant Has Failed to Demonstrate That New York State Procedures Are Inadequate in Any Way. ................ 49

5. Defendant's Preemption Arguments Remain Meritless........... 50

CONCLUSION ............................................................................................... 52

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Allen v. McCurry*, 449 U.S. 90 (1980) ................................................. 32

*Arizona v. Folio*, No. CR-19-08056001-PCT-DJH,
2019 WL 1643720 (D. Ariz. Apr. 16, 2019) ............................. 21

*Arizona v. Manypenny*, 451 U.S. 232 (1981) ...........................24, 26, 29

*Arizona v. Meadows*, 2024 WL 4198384 (D. Ariz. Sept. 16, 2024) ................... 32

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................ 29

*Baker v. Atl. Richfield Co.*, 962 F.3d 937 (7th Cir. 2020) ......................... 34

*Barber v. Vance*, No. 3:16-CV-2105-AC,
2019 WL 267874 (D. Or. Jan. 18, 2019) ..................................... 21

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................. 29

*Bennett v. MIS Corp.*, 607 F.3d 1076 (6th Cir. 2010) ............................. 29

*Betzner v. Boeing Co.*, 910 F.3d 1010 (7th Cir. 2018) ............................ 29

*Blassingame v. Trump*, 87 F.4th 1 (D.C. Cir. 2023) ............................... 37

*Bond v. United States*, 572 U.S. 844 (2014) ...................................... 26

*Brody v. President & Fellows of Harvard Coll.*, 664 F.2d 10 (1st Cir. 1981) ................. 46, 48

*Callahan v. Cnty. Of Suffolk*, 96 F.4th 362 (2d Cir. 2024) ....................... 40

*Colombo v. Cty. of Suffolk*, 2010 WL 1459196 (E.D.N.Y. Apr. 8, 2010) ............ 21

*Colorado v. Symes*, 286 U.S. 510 (1932) .......................................... 29

*Comer v. Murphy Oil USA, Inc.*, 718 F.3d 460 (5th Cir. 2013) ..................... 23

*Commonwealth of Virginia v. Paul*, 148 U.S. 107 (1893) ........................... 25

*County Bd. of Arlington Cnty. v. Express Scripts Pharm., Inc.*,
996 F.3d 243 (4th Cir. 2021) ............................................... 29

*Cullen v. Fliegner*, 18 F.3d 96 (2d Cir. 1994) ................................... 26

*D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983) ........................................... 26

*Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81 (2014) ............................ 29

*Fed. Election Comm'n v. Nat'l Right to Work Comm.*, 459 U.S. 197 (1982) ........................ 38

*Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394 (1981) ...................................... 23

*Floyd v. United States*, 900 F.2d 1045 (7th Cir. 1990) ............................................ 19

*Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423 (1974) ....................... 25

*Graves v. 3M Co.*, 17 F.4th 764 (8th Cir. 2021) .................................................. 29

*Harmon v. Bogart*, 788 F. App'x 808 (2d Cir. 2019) ............................................... 18

*Hawaii v. Thronas-Kahoonei*, No. CV 19-00683 JAO-KJM, 2020 WL 118251 (D. Haw. Jan. 10, 2020) ............................................................................. 21

*Jefferson County v. Acker*, 527 U.S. 423 (1999) .................................................. 33

*Johnson v. Washington*, No. C07-0696-MJP, 2007 WL 2377141 (W.D. Wash. Aug. 15, 2007) .......................................................... 21

*K&D LLC v. Trump Old Post Off. LLC*, 951 F.3d 503 (D.C. Cir. 2020) ............................... 33

*Kansas v. Gilbert*, 2023 WL 2397025 (10th Cir. 2023) ............................................ 19

*Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 297 (5th Cir. 2020) ......................... 29

*Leite v. Crane Co.*, 749 F.3d 1117 (9th Cir. 2014) ............................................... 29

*Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024) ................................... 50

*Maryland v. Soper (No. 1)*, 270 U.S. 9 (1926) ........................................... 28, 30, 33

*Mesa v. California*, 489 U.S. 121 (1989) .......................................................... 50

*Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982) ................................................................................ 43

*Miller v. Louisiana*, No. CV 18-14251, 2019 WL 1293273 (E.D. La. Mar. 1, 2019) ........................................................ 21-22

*Mindling v. Stiegler*, No. 22-2711-CV,
2023 WL 8295868 (2d Cir. Dec. 1, 2023) ..................................................... 41

*Missouri v. Pate*, 2024 WL 3518594 (E.D. Mo. Jul. 24, 2024) .......................... 21

*New Hampshire v. Woodham*, Case No. 21-cr-128-JL,
2022 WL 1432069 (D. N.H. April 6, 2022) ................................................ 21

*New York v. Trump*, 683 F. Supp. 3d 334 (S.D.N.Y. 2023) ................................ 5

*Platinum-Montaur Life Scis., LLC v. Navidea Biopharmaceuticals, Inc.*,
943 F.3d 613 (2d Cir. 2019) ........................................................................ 23

*Sawyer v. Foster Wheeler LLC*, 860 F3d 249 (4th Cir. 2017) .............................. 34

*Shemendera v. First Niagara Bank N.A.*, 288 F.R.D. 251 (W.D.N.Y. 2012) ..................... 40

*Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355 (2d Cir. 2003) ........................... 19

*Smith v. Bradt*, 329 F.R.D. 500 (W.D.N.Y. 2019) ............................................. 40

*Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
332 F.3d 116 (2d Cir. 2003) ........................................................................ 44

*Sreit Broad. Vista Terrace, L.L.C. v. Aquila*, No. 23-1437,
2023 WL 8643626 (4th Cir. Dec. 14, 2023) ................................................ 24

*Steffel v. Thompson*, 415 U.S. 452 (1974) ....................................................... 27

*Sykes v. Texas Air Corp.*, 834 F.2d 488 (5th Cir. 1987) ....................................... 24

*Taylor v. Medtronic, Inc.*, 15 F.4th 148 (2d Cir. 2021) ..................................... 44

*Tennessee v. Davis*, 100 U.S. 257 (1880) ........................................................ 24

*Texas v. Kleinert*, 855 F.3d 305 (5th Cir. 2017) ....................................... 28-29, 50

*Trump v. Anderson*, 601 U.S. 100 (2024) ..................................................... 50-51

*Trump v. United States*, 603 U.S. 593 (2024) .............. 3, 7-10, 16-17, 27-28, 32-41, 51

*Trump v. Vance*, 591 U.S. 786 (2020) ........................................................... 51

*United States v. Rodgers*, 461 U.S. 677 (1983) ................................................ 19

*Willingham v. Morgan*, 395 U.S. 402 (1969)........................................24-25, 29, 33

*Wyoming v. Livingston*, 443 F.3d 1211 (10th Cir. 2006) .............................. 24

*Zapata v. City of New York*, 502 F.3d 192 (2d Cir. 2007)............................. 18

### STATE CASES

*People v. Alomar*, 93 N.Y.2d 239 (1999)............................................. 45

*People v. Seignious*, 41 N.Y.3d 505 (2024)......................................... 48

*People v. Trump*, 82 Misc. 3d 1233(A) (N.Y. Sup. Ct. 2024)...............12, 45, 48

*Rumsey v. Niebel*, 286 A.D.2d 564 (App. Div. 2001).................................45-46

*Trump v. Merchan*, 227 A.D.3d 518 (App. Div. 2024)................................ 49

*Trump v. Merchan*, 227 A.D.3d 569 (App. Div. 2024)................................ 45

### FEDERAL STATUTES

5 U.S.C. § 13103(b)................................................................. 39

5 U.S.C. § 13103(c)................................................................. 39

5 U.S.C. § 13103(f)................................................................. 39

5 U.S.C. § 13104 ................................................................... 39

5 U.S.C. § 13107(a) ................................................................ 39

28 U.S.C. § 1442 ................................................................... 29

28 U.S.C. § 1442(a)(1) ...............................................1, 5, 27-28, 50, 52

28 U.S.C. § 1447(c) ................................................................ 23

28 U.S.C. § 1450 ................................................................... 22

28 U.S.C. § 1455 ................................................................... 21

28 U.S.C. § 1455(a) ................................................................ 21

28 U.S.C. § 1455(b)(1)...............................2, 4, 9-10, 18-20, 22, 33, 43

28 U.S.C. § 1455(b)(2) ...................................................... 2, 4, 10, 18-20, 43

28 U.S.C. § 1455(b)(3) ...................................................... 22

28 U.S.C. § 1455(b)(4) ...................................................... 2, 18, 52

28 U.S.C. § 1455(b)(5) ...................................................... 52

52 U.S.C. § 30107(a)(6) ..................................................... 38

52 U.S.C. § 30107 (e) ....................................................... 38

## STATE STATUTES

CPL § 210.20(1)(h) .......................................................... 12

CPL § 210.40(1) ............................................................ 12-14

CPL § 1.20(15) ............................................................. 15, 20-21

CPL § 1.20(16) ............................................................. 20, 22

CPL § 330.30 ............................................................... 14-15

CPL § 330.30(1) ............................................................ 9

CPL § 380.50(1) ............................................................ 15

N.Y. Penal Law § 65.20(1) .................................................. 13

N.Y. Penal Law § 65.20(2) .................................................. 13

N.Y. Penal Law § 175.10 .................................................... 1, 4, 7

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

THE PEOPLE OF THE STATE OF NEW YORK,

Plaintiff-Appellee,

-against-

DONALD J. TRUMP,

Defendant-Appellant.

## BRIEF FOR PLAINTIFF-APPELLEE

## INTRODUCTION

On May 30, 2024, in Supreme Court, New York County, defendant-appellant Donald J. Trump was convicted by a jury of 34 felony counts of Falsifying Business Records in the First Degree, in violation of N.Y. Penal Law § 175.10. On January 10, 2025, defendant was sentenced by Justice Juan Merchan to an unconditional discharge.

Earlier, shortly after his indictment, defendant had timely sought to remove his state criminal prosecution to the U.S. District Court for the Southern District of New York under the federal-officer removal statute, 28 U.S.C. § 1442(a)(1). That statute authorizes removal if (1) the state criminal charges are "for or relating to any act under color of [federal] office," 28 U.S.C. § 1442(a)(1); and (2) the defendant has a colorable federal defense. The district court (Hellerstein, J.) remanded the prosecution back to state court, holding that the criminal charges were based on wholly private, unofficial conduct, and that defendant's federal defenses were not colorable because they applied

only when official conduct was the target of state criminal charges. Defendant declined to appeal from this remand order.

On September 3, 2024—after the jury verdict, but before defendant's scheduled sentencing—defendant filed a motion seeking leave from the district court to file an untimely second notice of removal, as required by 28 U.S.C. § 1455(b)(1)-(2). The district court denied the motion, finding that defendant had failed to establish good cause. Subsequently, defendant filed multiple applications to stay his sentencing. Every state and federal court—including this Court and the U.S. Supreme Court—refused to adjourn the sentencing. Defendant was accordingly sentenced in state court this past Friday, January 10, 2025, to an unconditional discharge.

This Court should now either dismiss defendant's appeal from the district court's order denying leave to file an untimely second notice of removal, or affirm that order.[1] First, dismissal is warranted because defendant's sentencing and the conclusion of the state criminal action have rendered moot his attempt to remove the state criminal trial to a coordinate federal trial court. Even if defendant's appeal is not formally moot, the end of the state criminal action decisively shows that there is no good cause to allow an untimely removal, since the principal objective for federal-officer removal—the provision of a federal trial—is no longer available as a practical matter.

---

[1] Defendant incorrectly characterizes the district court's order as a "summary remand" order under 28 U.S.C. § 1455(b)(4) (Defendant's Brief ("DB"): 24-30). In fact, it is an order denying leave to file an untimely second notice of removal (Special Appendix ("SPA") 4).

Second, and independently, the district court providently exercised its discretion to find no good cause here because defendant has identified no intervening change in law that would support removal. Defendant contends that the Supreme Court's decision in *Trump v. United States*, 603 U.S. 593 (2024), altered the principles of presidential immunity applicable to this criminal prosecution. But that decision confirmed that a President has no immunity whatsoever for unofficial conduct. Since the district court earlier found—and defendant has now conceded—that the charges here were based entirely on unofficial conduct, *Trump v. United States* does not bolster defendant's immunity claim.

Third, defendant's delay in pursuing removal a second time further undermines his arguments for good cause. Defendant waited until three months after the jury verdict and two months after the issuance of *Trump v. United States* to file his leave motion with the district court. That inexplicable delay weighs heavily against finding good cause to permit an untimely second notice of removal.

Finally, the district court properly declined to find good cause based on defendant's other myriad complaints about the criminal trial. Those claims have no bearing on good cause or on the availability of federal-officer removal. And defendant is free to raise those objections on direct appeal in state court.

## QUESTION PRESENTED

Whether the district court providently exercised its discretion when it denied defendant leave to file a second, untimely notice of removal pursuant to 28 U.S.C. § 1455(b)(1)-(2)?

## STATEMENT OF THE CASE

### A. The Charges in the Indictment

On March 30, 2023, a New York County grand jury charged defendant with 34 felony counts of Falsifying Business Records in the First Degree, in violation of N.Y. Penal Law § 175.10. (Joint Appendix ("JA") 22.) That provision makes it a felony for any person to make or cause a false entry in the business records of an enterprise with an intent to defraud that includes an intent "to commit another crime or to aid or conceal the commission thereof." Penal Law § 175.10.

With the Indictment, the People filed a Statement of Facts outlining the allegations that formed the basis for the charges against defendant. (JA96.) The Statement alleged that defendant and his coconspirators orchestrated a scheme to interfere with the 2016 U.S. presidential election by suppressing negative information that could damage defendant's presidential campaign. (JA96.) They executed the scheme through a variety of means, including by purchasing the rights to, and then refusing to publish, a story about an extramarital affair between defendant and Stormy Daniels, an adult film actress. (JA98-102.) To effect this catch-and-kill scheme, defendant's personal attorney, Michael Cohen, paid $130,000 to acquire the publication

rights to Daniels' story, and defendant reimbursed Cohen an amount calculated to mask the true nature of the reimbursement. (JA102-103.) Defendant then concealed the reimbursement payments to Cohen by falsely recording them in the records of a New York enterprise as attorneys' fees paid to Cohen for services rendered pursuant to a retainer agreement. (JA103-105.) The characterization of those payments in these records was false because the payments to Cohen were to reimburse him for the payments he made to Daniels, not to pay him for legal services rendered pursuant to a retainer agreement. (JA103-105.)

## B. The First Removal Proceeding

Defendant was arraigned in state court on April 4, 2023. On May 4, 2023, he filed a notice of removal in the U.S. District Court for the Southern District of New York under the federal-officer removal statute, which allows state criminal proceedings against an "officer" of the United States to be removed to federal district court if the prosecution is "for or relating to any act under color of such [federal] office," 28 U.S.C. § 1442(a)(1), and the defendant has a colorable federal defense. (JA11.) After an evidentiary hearing, the district court (Hellerstein, J.) issued an order remanding the case to state court because defendant had failed to satisfy the prerequisites for federal-officer removal. (JA407.) *See New York v. Trump*, 683 F. Supp. 3d 334, 337 (S.D.N.Y. 2023).

First, the court concluded that the charges against defendant were not "for or relat[ed] to" any act defendant had taken under color of the office of the President. (JA417-421.) The court credited the hearing evidence "strongly supporting" the

People's allegation that the payments to Cohen were reimbursements for the payments he made to Daniels rather than attorneys' fees for legal services rendered. (JA419.) The court further found that the evidence "overwhelmingly suggests that the matter was a purely a personal item of the President—a cover-up of an embarrassing event." (JA419.) "Hush money paid to an adult film star is not related to a President's official acts" and "does not reflect in any way the color of the President's official duties." (JA419.)

Indeed, the district court found that the payments would amount to private and unofficial conduct even if they were attorneys' fees. As the hearing evidence established, defendant hired Cohen to "attend to his private matters"; the payments to Cohen were made from "private funds" that did not "depend on any Presidential power for their authorization"; and the documents recording those payments were maintained by "a private enterprise." (JA420-421.) Thus, the court concluded that the charges were based on defendant's "private acts," not "acts under the color of his office." (JA421.)

Second, the district court concluded that defendant had failed to identify a colorable federal defense. With regard to presidential immunity, the court explained that defendant had "expressly waived" any defense of "absolute presidential immunity," and that defendant had instead asserted that he was immune because the charges were based on the official acts he took as President of the United States. (JA422.) This defense was not colorable as a factual matter, the court held, because there was "[n]o evidence" that the reimbursements to Cohen constituted an official presidential act. (JA423.) There was also no colorable preemption defense. Defendant conceded that

the Federal Election Campaign Act ("FECA") did not directly preempt Penal Law § 175.10. (JA427.) And the court rejected defendant's claim that FECA indirectly preempted Penal Law § 175.10 by preempting the crimes that defendant sought to commit or conceal by making the false business records. (JA427-430.)

Defendant filed a notice of appeal from the district court's remand decision but later moved to dismiss his appeal; this Court granted that motion and dismissed the appeal. (JA432.)

### C. The State Jury Trial and Defendant's Conviction

On April 15, 2024, defendant's trial commenced with jury selection. (Addendum ("Add.") 27.) On May 30, 2024, the jury unanimously found defendant guilty of all 34 felony counts. (Add. 27.) Defendant's sentencing was originally scheduled for July 11, 2024. (JA844.)

### D. *Trump v. United States*

On July 1, 2024—after the jury verdict, but before defendant's scheduled sentencing—the Supreme Court decided *Trump v. United States*, which addressed the scope of presidential immunity from criminal prosecution for a President's official acts committed during his tenure as President. 603 U.S. at 601-02. The Supreme Court held that the President is at least presumptively immune for "acts within the outer perimeter of his official responsibility," and that he "is absolutely immune from criminal prosecution for conduct within his exclusive sphere of constitutional authority." *Id.* at

609, 614-615. However, the Court confirmed that the "President enjoys no immunity for his unofficial acts, and not everything the President does is official." *Id.* at 642.

Separately, the Supreme Court held that certain evidence relating to a President's official acts may be inadmissible at trial, even as to charges based on unofficial conduct. *Id.* at 630-632. In particular, the Court concluded that although prosecutors could "point to the public record to show the fact that the President performed [an] official act," they could not "admit testimony or private records of the President or his advisers probing the official act itself" because allowing "that sort of evidence would invite the jury to inspect the President's motivations for his official actions and to second-guess their propriety." *Id.* at 632 n.3.

### E. Defendant's Post-Trial Motion to Vacate

On July 10, 2024, defendant filed a post-trial motion in the state trial court to dismiss the indictment and vacate the jury's verdict pursuant to N.Y. Criminal Procedure Law ("CPL") 330.30(1). In that motion, defendant argued that the People had improperly introduced evidence of official presidential acts before the grand and petit juries in violation of *Trump v. United States.* In particular, defendant's claim pertained to certain testimony by three witnesses: Hope Hicks, Madeleine Westerhout, and Michael Cohen. His claim also related to his postings on social media and to a personal financial disclosure form, namely, Office of Government Ethics Form 278e for 2017. (JA845-900, 971-994.) The People opposed the motion. (JA901-971.)

On December 16, 2024, the trial court denied defendant's CPL § 330.30(1) motion. (Add. 27.) As an initial matter, the court found that defendant had failed to preserve his objections to the trial testimony of Westerhout and Cohen, and to any evidence that was introduced before the grand jury. (Add. 35-42.) In any event, on the merits, the court found that none of the disputed proof constituted a "core official act," nor did any of it "fall within the outer perimeter" of defendant's "official duties." (Add. 42-61.) In the alternative, the court found that even if certain communications testified to by Westerhout, Hicks, or Cohen fell within the "outer perimeter" of defendant's presidential authority, "other, non-privileged trial testimony provided ample non-motive related context and support to rebut a presumption of privilege" and to demonstrate "that Defendant was acting in his personal capacity and not pursuant to his authority as President." *Id.* Similarly, this evidence posed "no danger of intrusion on the authority and function of the Executive Branch." *Id.*

Finally, the court ruled that even if any of the disputed evidence amounted to proof of "official acts under the auspices of the *Trump* decision," the court would still deny defendant's motion because "introduction of the disputed evidence constitutes harmless error and no mode of proceedings error has taken place." (Add. 61-64.)

## F. Defendant's Motion for Leave to File an Untimely Second Notice of Removal

Under 28 U.S.C. § 1455(b)(1), a "notice of removal of a criminal prosecution shall be filed not later than 30 days after the arraignment in the State court . . . except

that for good cause shown the United States district court may enter an order granting the defendant . . . leave to file the notice at a later time." Likewise, "a second notice [of removal] may be filed only on grounds not existing at the time of the original notice," but a district court "may grant relief" from this limitation "[f]or good cause shown." *Id.* § 1455(b)(2).

On August 29, 2024—well in excess of § 1455(b)(1)'s time limitation— defendant purported to file a second notice of removal with the U.S. District Court for the Southern District of New York, relying again on federal-officer removal. (JA433.) The district court rejected that filing, noting that the "Court's leave has not been granted" for an untimely, second notice of removal under 28 U.S.C. § 1455(b)(1)-(2), and that "the order granting permission to file the pleading was not attached" to the removal notice. (JA8.)

On September 3, 2024, defendant filed a motion for leave to file a second notice of removal. (JA9.) Defendant argued that the Supreme Court's intervening decision in *Trump v. United States* supplied good cause for the second, untimely notice of removal, and that events that had occurred at trial—including allegations of "political bias, conflicts of interest, and appearances of impropriety"—were changed circumstances that also supplied good cause for defendant's late filing. (JA443, 486-494.)

The district court (Hellerstein, J.) denied the motion. (SPA1.) The court found that *Trump v. United States* had not altered or affected the court's "previous conclusion that the hush money payments were private, unofficial acts, outside the bounds of

executive authority." (SPA3.) The court thus concluded that "[g]ood cause has not been shown, and leave to remove the case is not granted." (SPA4.) The court further found that it would be "highly improper" for it to "evaluate the issues of bias, unfairness or error" in defendant's trial absent an otherwise proper basis for removal. (SPA2-3.)

Defendant filed a notice of appeal and moved in the district court to stay its decision denying leave. (JA9.) On September 6, 2024, the district court denied defendant's stay application, concluding that there was nothing for it to stay. The court explained that, after the deadline for filing a notice of removal has expired, a defendant may file a removal notice in a criminal case "only if good cause is shown and if the district court, in its discretion, grants 'the defendant or defendants leave to file the notice at a later time.'" (JA1142.) Since the court had denied defendant's motion for leave to file a notice of removal in the first place, "there has been no removal petition properly filed [and] there is no action in [the court's earlier order denying leave] to stay." (JA1142.) The district court thus denied the motion for a stay as "academic." (JA1142.)

On September 4, 2024, defendant also moved in this Court for a stay of the district court's order pending appeal. (ACMS Dkt. No. 7.) On September 6, 2024, a single judge of this Court referred the motion to a motions panel. (ACMS Dkt. No. 17.) That same day, the state trial court granted defendant's motion to further adjourn sentencing until after the presidential election, in order to "avoid any appearance— however unwarranted—that the proceeding has been affected by or seeks to affect the approaching Presidential election in which the Defendant is a candidate." (Add. 22-25.)

On September 12, 2024, a panel denied the motion for an emergency stay "[i]n light of the state court's adjournment of sentencing." (ACMS Dkt. No. 31.)

### G. Defendant's Post-Trial Motion to Dismiss

On November 5, 2024, defendant was reelected as President of the United States. On November 22, 2024, the trial court granted defendant's motion for leave to file an additional motion to dismiss and stayed sentencing. (Add. 26.)

On December 2, 2024, defendant filed a motion in the state trial court pursuant to CPL 210.20(1)(h) and CPL 210.40(1)—known as a "*Clayton* motion"—requesting that it dismiss the indictment and vacate the jury's verdict in the interests of justice as a result of the recent presidential election. Defendant argued that such a dismissal was warranted on a wide variety of grounds. Defendant's principal argument was that, as President-elect, he had the same immunity from prosecution as the sitting President. *People v. Trump*, Defendant's CPL 210.40(1) Motion at 31-49 (Dec. 2, 2024).[2] Defendant also asserted that dismissal was appropriate under the various factors identified in CPL 210.20(1)(h) and CPL 210.40(1). *Id.* at 54-68. The People opposed the motion. *People v. Trump*, People's Opposition to Defendant's CPL 210.40(1) Motion (Dec. 10, 2024).[3]

On January 3, 2025, the trial court denied defendant's *Clayton* motion and scheduled his sentencing for January 10. As relevant here, the trial court found that

---

[2] https://tinyurl.com/39c7bnsm (last accessed Jan. 13, 2025).

[3] https://tinyurl.com/yp3a874w (last accessed Jan. 13, 2025).

"Presidential immunity from criminal process for a sitting president does not extend to a President-elect." (Add. 72.) It further noted that because there was "no legal impediment to sentencing," and because "Presidential immunity will likely attach once Defendant takes his Oath of Office," it was "incumbent" upon the court to schedule the sentencing for before defendant's inauguration on January 20, 2025. (Add. 84.) The trial court observed that it had an obligation to "sentence Defendant within a reasonable time following verdict" and permit defendant to "avail himself of every available appeal, a path he has made clear he intends to pursue but which only becomes fully available upon sentencing." (Add. 84.) The court further found that defendant had established none of the statutory factors supporting dismissal in the interest of justice. (Add. 77-83.)

The trial court also noted that, although it could not make a final "determination on sentencing" before allowing the parties to be heard, it intended "to not impose any sentence of incarceration." (Add. 84.) Rather, after balancing the relevant concerns, including "the Presidential immunity doctrine," the court stated that an unconditional discharge "appear[ed] to be the most viable solution to ensure finality and allow Defendant to pursue his appellate options."[4] *Id.* The court also permitted defendant to

---

[4] Under New York law, an unconditional discharge is a sentence "without imprisonment, fine or probation supervision," or any other "condition upon the defendant's release." N.Y. Penal Law § 65.20(1)-(2).

appear virtually for the January 10 sentencing. *Id.* Defendant subsequently opted to appear virtually. (Add. 90-92.)

### H. Defendant's Failed Attempts to Stay the January 10 Sentencing

On the morning of January 7, 2025, defendant filed a petition in the Appellate Division, First Department, purporting to challenge the state trial court's two post-trial orders under article 78 of New York's Civil Practice Law and Rules. Defendant also filed an application for interim relief seeking an immediate stay of the proceedings in his underlying criminal case pending resolution of the article 78 petition. That afternoon, a justice of the Appellate Division denied defendant's request for an interim stay. (Add. 86-87.)

At 10:24 p.m. on January 7, 2025, defendant filed an application for a stay with the U.S. Supreme Court. At 4 p.m. on January 8, defendant filed an application for a stay with the New York Court of Appeals. At 9:07 a.m. on January 9, a judge of the New York Court of Appeals declined to grant defendant's request for a stay. (Add. 88.) At 7:14 p.m. on January 9, the Supreme Court also denied defendant's request for a stay. (Add. 89.) As to the claims in defendant's CPL § 330.30 motion, the Supreme Court noted that "the alleged evidentiary violations at President-Elect Trump's state-court trial can be addressed in the ordinary course on appeal." *Id.* As to the claims in defendant's *Clayton* motion, the Court noted that "the burden that sentencing will impose on the President-Elect's responsibilities is relatively insubstantial in light of the

trial court's stated intent to impose a sentence of 'unconditional discharge' after a brief virtual hearing." *Id.*

## I. Defendant's Sentencing

On January 10, 2025, defendant appeared by videoconference with counsel for sentencing. (Add. 90-92.) After remarks from the People, defense counsel, defendant, and the court, *see* CPL § 380.50(1), the trial court sentenced defendant to an unconditional discharge, thereby concluding the state criminal action. (Add. 90-112.) *See* CPL §§ 1.20(15), (16). Defendant represented in court that he intends to pursue appeals from the final judgment. (Add. 103.)

## SUMMARY OF ARGUMENT

This Court should either dismiss defendant's appeal as moot in light of his recent sentencing and the entry of final judgment in state court, or affirm the district court's order denying leave to file an untimely second notice of removal.

I. Defendant's appeal is moot because he has already been sentenced. As federal courts have uniformly held, removal is unavailable once final judgment has been entered in the state proceeding. The unavailability of removal under these circumstances is supported by the text of the removal statute, which repeatedly assumes that there is a pending state criminal action that has not yet reached final judgment. And it is supported by the policy underlying federal-officer removal, which is to provide a federal forum for a trial where a federal officer can assert his federal defenses. When, as here, no federal trial would be available, removal would not serve the purposes of the statute.

Even if defendant's appeal were not formally moot, the conclusion of the state criminal trial would still powerfully demonstrate the absence of good cause to file an untimely second notice of removal. Again, no purpose would be served by removal at this point because the conclusion of the state trial means that a federal trial would not be available. And defendant's appellate claims are best channeled to the state appellate courts—an avenue of relief that the Supreme Court specifically directed defendant to pursue in denying his attempt to stay sentencing.

II. The district court also providently exercised its discretion in denying leave here because defendant failed to establish any basis for the court to reconsider its earlier conclusion that federal-officer removal was unavailable. The district court had reached this conclusion in the first removal proceeding based on its factual finding that the charged crimes concerned wholly unofficial conduct, rather than acts under color of the federal Office of the President. Contrary to defendant's argument, nothing in the Supreme Court's opinion in *Trump v. United States* alters this conclusion, since the Court's decision reaffirmed the principle that a President can engage in unofficial conduct and that he can be criminally prosecuted for those unofficial acts.

Although the Supreme Court separately held in *Trump* that certain evidence of official acts could not be introduced at a criminal trial, even on charges for unofficial conduct, that evidentiary holding is irrelevant to the narrow removal question presented here. The availability of federal-officer removal turns on whether the *charged conduct* relates to an act under color of federal office, not on the nature of any evidence admitted

at trial. Defendant's arguments based on *Trump*'s evidentiary ruling should thus be raised on direct appeal in the state courts—as the Supreme Court directed in its order denying a stay—not invoked as a basis for a belated notice of removal.

III. Defendant's lack of diligence in seeking removal a second time also provided ample reason to deny leave to file. Defendant waited three months after the jury verdict and two months after the Supreme Court's decision in *Trump v. United States* to file his leave motion with the district court. That delay, which is both unexplained and inexplicable, severely undermines any good cause for an untimely notice of removal.

IV. Much of defendant's appellate brief recycles a batch of complaints about the state criminal trial that he has already unsuccessfully raised multiple times in state court. The district court declined to consider these complaints. This Court should disregard them as well, since none of them pertain to the dispositive question of whether defendant has established good cause to file a second and duplicative notice of removal months after the statutory deadline.

Defendant's trial complaints are meritless in any event. In particular, defendant's assertion that the trial court was required to recuse is utterly baseless and has been rejected multiple times by the state courts as well as by the New York Advisory Committee on Judicial Ethics, which found no support for defendant's assertion of bias. To the extent defendant continues to feel aggrieved by the trial process, he is free to raise those claims on direct appeal.

## ARGUMENT

As an initial matter, defendant repeatedly mischaracterizes the district court's order here as a summary remand order under 28 U.S.C. § 1455(b)(4) and devotes much of his brief to arguments about the impropriety of such a summary remand. (Defendant's Brief ("DB"): 20, 24-30, 37.) But the district court did not issue a summary remand order. Rather, because defendant's second notice of removal here was untimely and further sought removal on the same federal-officer grounds as his first notice, defendant was precluded from filing the second notice of removal unless the district court first granted leave to file upon finding "good cause" to exempt defendant from the default prohibitions in 28 U.S.C. § 1455(b)(1)-(2). The district court's order under review made clear that the court was denying leave to file, not summarily remanding the case. (SPA4. ("Good cause has not been shown, and leave to remove the case is not granted.")) And the district court's subsequent order denying a stay made crystal clear that its earlier order was a leave denial, not a summary remand: as the court explained, because it had previously "denied leave to file for removal," there was "no removal petition properly filed" and thus no remand order to stay. (JA1142.)

The only question presented here is thus whether the district court properly denied defendant leave to file an untimely and duplicative second notice of removal due to the absence of good cause. A "district court's determinations on whether good cause is present" are "exercises of discretion." *Zapata v. City of New York*, 502 F.3d 192, 197 (2d Cir. 2007); *see also Harmon v. Bogart*, 788 F. App'x 808, 809 (2d Cir. 2019) (district

court did not abuse its discretion in deciding that plaintiff lacked good cause for failure to timely serve adversary); *Floyd v. United States*, 900 F.2d 1045, 1046 (7th Cir. 1990) ("It is, of course, well established that 'good cause' determinations entail discretionary conclusions by the district court that will not be disturbed absent an abuse of discretion."). Furthermore, the removal statute provides that the district court "may" grant leave upon a showing of good cause. 28 U.S.C. § 1455(b)(1). "The word 'may,' when used in a statute, usually implies some degree of discretion." *United States v. Rodgers*, 461 U.S. 677, 706 (1983).

Given the discretionary nature of the district court's leave decision, this Court's review is limited to whether the district court abused its discretion.[5] This standard is a deferential one that does not authorize a reviewing court to substitute its judgment for that of the lower court. Rather, this Court should affirm the district court's decision "unless it has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion that it reached upon a weighing of the relevant factors." *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 362 (2d Cir. 2003) (applying abuse

---

[5] There is no authority that holds that a "district court's § 1455(b)(1)-(2) rulings" are subject to *de novo* review, as defendant contends. (DB: 24.) The decision he cites for that proposition is "not binding precedent" and merely stated (in a parenthetical describing another decision) that the de novo standard applied "to [a] district court's ruling on the propriety of removal." *Kansas v. Gilbert*, 2023 WL 2397025, at *1 (10th Cir. 2023). The court in that case, however, did not meaningfully consider the scope of its review in affirming the district court's decision to dismiss an untimely *pro se* notice of removal. *See id.*

of discretion standard to review district court's decision to extend time to file a notice of appeal).

Here, defendant does not dispute that his second attempt to remove his state criminal trial was untimely: he sought removal on August 29, 2024, which was more than a year after his April 4, 2023 arraignment. Nor can defendant dispute that his second attempt at removal was again based on the federal-officer statute. As a result, defendant could file his untimely notice only if the district court granted him leave "for good cause shown." 28 U.S.C. § 1455(b)(1)-(2). For the reasons given below, defendant's appeal from the district court's order denying leave is moot given that he has now been sentenced. In any event, the district court did not abuse its discretion when it found that defendant had failed to demonstrate good cause.

## POINT I

### DEFENDANT'S SENTENCING MOOTS THIS APPEAL AND, IN ANY EVENT, WOULD OVERWHELMINGLY ESTABLISH LACK OF GOOD CAUSE FOR AN UNTIMELY SECOND NOTICE OF REMOVAL

**A. Because Defendant Has Been Sentenced in State Court, Removal Is No Longer Available, and This Appeal Is Moot.**

The state trial court sentenced defendant on January 10, 2025. Because final judgment has been entered and the state criminal action has concluded, *see* CPL §§ 1.20(15), (16), there is nothing to remove to federal district court. Accordingly, this Court must dismiss defendant's appeal as moot.

-20-

As federal courts have uniformly concluded, the entry of a judgment of conviction precludes removal of a state criminal prosecution.[6] *See* 8A Fed. Proc., L. Ed. § 22:59 ("The general rule is that a criminal prosecution can be removed from a state to a federal court only after indictment and before trial."). Multiple textual provisions of the removal statute support this judicial consensus. First, notices of removal in criminal prosecutions must be filed in "the district and division within which such prosecution is pending." 28 U.S.C. § 1455(a). But a state criminal prosecution is no longer "pending" for federal removal purposes when the defendant has been sentenced. *See Thronas-Kahoonei*, 2020 WL 118251, at *2; *Folio*, 2019 WL 1643720, at *1; *Johnson*, 2007 WL 2377141, at *2; *see also* CPL § 1.20(15) (under New York law, "[a] judgment is

---

[6] *See, e.g.*, *Missouri v. Pate*, 2024 WL 3518594 (E.D. Mo. Jul. 24, 2024) (defendant seeking to remove "closed criminal action" to district court failed to meet "the express procedural requirements" of 28 U.S.C. § 1455); *Hawaii v. Thronas-Kahoonei*, No. CV 19-00683 JAO-KJM, 2020 WL 118251, at *2 (D. Haw. Jan. 10, 2020) (even if the defendant qualified for federal officer removal, "he would be time-barred, as judgment entered in the criminal prosecution and the matter is on appeal"); *Arizona v. Folio*, No. CR-19-08056001-PCT-DJH, 2019 WL 1643720, at *1 (D. Ariz. Apr. 16, 2019) ("Defendant has not identified any *ongoing* state criminal proceeding. Instead, it appears that Defendant is trying to remove his state criminal appeal to this court, which is improper."); *Johnson v. Washington*, No. C07-0696-MJP, 2007 WL 2377141, at *2 (W.D. Wash. Aug. 15, 2007) ("the removal statute clearly does not apply to an appeal or petition for postconviction relief"); *Miller v. Louisiana*, No. CV 18-14251, 2019 WL 1293273, at *2 (E.D. La. Mar. 1, 2019) (the removal statute "clearly does not contemplate removal of a case *after* conviction"), *report and recommendation adopted*, No. CV 18-14251, 2019 WL 1277522 (E.D. La. Mar. 20, 2019); *Barber v. Vance*, No. 3:16-CV-2105-AC, 2019 WL 267874, at *2 (D. Or. Jan. 18, 2019) ("his criminal case is finished at the state trial court level and removal to this trial court is improper after the case is closed"); *New Hampshire v. Woodham*, Case No. 21-cr-128-JL, 2022 WL 1432069, at *2 (D. N.H. April 6, 2022), *adopted*, 2022 WL 1423608 (D.N.H. May 4, 2022) (removal of defendant's "state court criminal case is improper, as the state court matter is closed"); *Colombo v. Cty. of Suffolk*, 2010 WL 1459196, at *1 (E.D.N.Y. Apr. 8, 2010) ("the underlying criminal prosecution had concluded and there was no action to remove").

comprised of a conviction and the sentence imposed thereon and is completed by imposition and entry of sentence"); CPL § 1.20(16) ("[a] criminal action … terminates with the imposition of sentence"). "[T]he point of removal is to have *the trial* go forward in a federal, rather than state, court." *Miller*, 2019 WL 1293273, at *2 (emphasis added). That objective is demonstrated by the separate requirement that a notice of removal generally be "filed not later than 30 days after the arraignment in the State court, or at any time *before trial*, whichever is earlier." 28 U.S.C. § 1455(b)(1) (emphasis added). Once the state trial is complete and a defendant has been sentenced, removal serves no purpose because the federal district court can no longer supervise a trial in the first instance.

Second, the federal removal statute generally allows state criminal prosecutions to go forward notwithstanding the filing of a notice of removal, "except that a judgment of conviction shall not be entered unless the prosecution is first remanded." 28 U.S.C. § 1455(b)(3). The plain import of this provision is to ensure that the state trial proceeding remain pending—and not be concluded by the entry of final judgment—so that the federal district court can take over the ongoing criminal trial if it declines to remand the case. *Cf.* 28 U.S.C. § 1450 (authorizing district court to adopt, dissolve, or modify "[a]ll injunctions, orders, and other proceedings had in such action prior to its removal"). By contrast, the statute's automatic stay of the entry of a final criminal judgment would be pointless and superfluous if such a judgment did not meaningfully affect the availability of removal.

-22-

Third, the removal statute provides, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Again, the plain language of this provision assumes that a federal district court will take over a removed case "before final judgment" has been entered. *Id.* If a state criminal case could be removed after entry of final judgment, this provision would seem to suggest that a federal district court would no longer be subject to an ongoing mandate to review its subject-matter jurisdiction. That result makes no sense, especially since subject-matter jurisdiction is "[p]erhaps the most important limit" on federal-court jurisdiction, *Platinum-Montaur Life Scis., LLC v. Navidea Biopharmaceuticals, Inc.*, 943 F.3d 613, 617 (2d Cir. 2019). The more sensible interpretation is that § 1447(c)'s directive that district courts ensure their continuing subject-matter jurisdiction aligns with the procedural posture of state criminal trials that can be removed—i.e., the criminal proceedings must be "before final judgment."

Aside from the text of the federal statute, principles of res judicata also support precluding removal after the entry of a state-court final judgment. "A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981). That preclusive effect applies even if the state-court judgment is on appeal. *See Comer v. Murphy Oil USA, Inc.*, 718 F.3d 460, 467 (5th Cir. 2013). Applying these well-settled principles, courts have concluded in the removal context that, once a state case "has proceeded to judgment," any "subsequent re-removal is for naught as

the parties are bound by res judicata." *Sykes v. Texas Air Corp.*, 834 F.2d 488, 490 (5th Cir. 1987); *see also Sreit Broad. Vista Terrace, L.L.C. v. Aquila*, No. 23-1437, 2023 WL 8643626, at *1 (4th Cir. Dec. 14, 2023) (dismissing appeal of remand order as moot where the underlying action "proceeded to final judgment in the state court" since relitigation of the claim "would be barred by the doctrine of res judicata").

Finally, the purposes of federal-officer removal do not support removal after the entry of a final criminal judgment in state court. Congress created a removal procedure for federal officers because of concerns that they would be "'brought to trial in a State court'" on account of their official actions. *Willingham v. Morgan*, 395 U.S. 402, 406 (1969) (quoting *Tennessee v. Davis*, 100 U.S. 257, 263 (1880)). "[O]ne of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court," thus giving federal officers "the protection of a federal forum" to defend against civil or criminal charges. *Id.* at 407; *see also Arizona v. Manypenny*, 451 U.S. 232, 242 (1981) (Congress provided for removal to "permit[] a trial upon the merits of the state-law question free from local interests or prejudice" and to enable the defendant "to have the validity of his [federal] immunity defense adjudicated, in a federal forum"); *Wyoming v. Livingston*, 443 F.3d 1211, 1222 (10th Cir. 2006) ("Federal officer removal statutes . . . provide federal officers with a federal forum for the entire trial, including determinations of guilt or innocence as well as the applicability of official immunity."). Indeed, one of the precursors to the current removal statute made clear the driving purpose of giving federal officers a federal trial by expressly providing that

removal was available only "before the trial or final hearing thereof." *Commonwealth of Virginia v. Paul*, 148 U.S. 107, 119 (1893). Here, by contrast, because defendant has already been sentenced and is subject to a final criminal judgment, no federal trial is available upon removal. Removal at this late stage thus would not serve the purposes of the statute.

Accordingly, the entry of final judgment in this case mooted defendant's appeal of the district court's order denying him leave to file an untimely notice of removal because there is no pending criminal action to remove to federal district court. This Court should accordingly dismiss the appeal.

## B. Even If This Proceeding Were Not Moot, Defendant's Sentencing and the Entry of Final Judgment Would Provide Compelling Reason to Find Absence of Good Cause for a Late Notice of Removal.

Even if entry of final judgment did not moot this appeal or preclude removal entirely, the completion of trial and imposition of sentence would still provide overwhelming reason to find the absence of good cause for an untimely removal notice. As explained, the purpose of removal is to give federal officers a federal forum where they can be tried on state-law charges. *See Willingham*, 395 U.S. at 406-07. To fulfill this purpose, the federal removal statute provides procedures that allow a federal court to "take[] the case up where the State court left it off." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 436 (1974). Here, however, removal would not lead to a federal trial because defendant has already been sentenced and a final judgment has already been entered. (Add. 90-112.) Indeed, a federal trial was already unavailable at

the time that the district court ruled on defendant's motion, because by that time defendant had already long since been convicted by the jury after a multi-week trial that ended with the guilty verdicts on May 30, 2024. The principal purpose behind federal-officer removal thus could not be fulfilled when defendant sought leave to file this second notice of removal—and conclusively cannot now that final judgment has been entered in the state criminal prosecution, thereby shifting further proceedings to the appellate courts.

Given that a federal trial is no longer available, permitting removal now would lead to the anomalous result of transferring defendant's direct appeal of his criminal conviction from state court to the federal district court. But moving defendant's state-court appeal to a federal trial court would violate the general principle that "a United States District Court has no authority to review final judgments of a state court." *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 482 (1983). It would also leave the federal courts to decide defendant's state-law objections regarding his state criminal conviction, in conflict with the Supreme Court's repeated admonition that state criminal enforcement is "pre-eminently a matter for the States," *Manypenny*, 451 U.S. at 243 (quotation marks omitted), and is "[p]erhaps the clearest example of traditional state authority," *Bond v. United States*, 572 U.S. 844, 858 (2014). And although defendant may also raise federal-law arguments on appeal, this Court has long recognized that "ordinarily a state proceeding provides an adequate forum for the vindication of federal constitutional rights," *Cullen v. Fliegner*, 18 F.3d 96, 103 (2d Cir. 1994), since state courts are bound by

the same "solemn responsibility" as the federal courts "to guard, enforce, and protect every right granted or secured by the Constitution of the United States," *Steffel v. Thompson*, 415 U.S. 452, 460-61 (1974). Indeed, the Supreme Court denied defendant's request for a stay of sentencing in the state-court proceeding precisely because defendant's federal-law arguments could "be addressed in the ordinary course on appeal." *Trump v. New York*, Order, Dkt. No. 24A666 (Jan. 9, 2025).

Thus, even if removal were technically still available, defendant's sentencing and the entry of final judgment in his state-court criminal prosecution would weigh decisively against a finding of good cause to file an untimely second notice of removal.

## POINT II

### DEFENDANT FAILED TO ESTABLISH ANY NEW GROUNDS FOR FINDING THAT FEDERAL-OFFICER REMOVAL WAS AVAILABLE

Even setting aside the completion of the underlying state criminal action, the district court's order here should be affirmed for an independent reason: the court providently exercised its discretion in concluding that defendant had failed to identify any new grounds that would warrant revisiting the court's prior holding that the criminal charges here were not "for or relating to any act under color of [federal] office," 28 U.S.C. § 1442(a)(1). As the district court previously found, and defendant has now conceded, the underlying criminal charges involved purely private and unofficial conduct that "does not reflect in any way the color of the President's official duties." (JA419.) And contrary to defendant's arguments, nothing in *Trump v. United States*

affected this conclusion: to the contrary, the Supreme Court reaffirmed that, "[a]s for a President's unofficial acts, there is no immunity." 603 U.S. at 615. Defendant thus fell well short of establishing good cause to file an untimely second notice of removal.

### A. Federal-Officer Removal Is Unavailable Because the Criminal Charges Here Were Based on Private, Unofficial Conduct.

During the first removal proceeding, defendant argued that he was entitled to federal-officer removal under 28 U.S.C. § 1442(a)(1) because the criminal charges against him were "for or relating to" acts under color of office for which he had a colorable federal defense. Following an evidentiary hearing, the district court ruled that the state prosecution was not "for or relating to" acts "taken under color of federal office" and, for similar reasons, that neither of the "federal defenses" defendant asserted—namely, presidential immunity and preemption—was colorable. (JA421.) Those rulings were correct, and defendant cannot relitigate them in the instant proceeding.

To support federal-officer removal, a defendant must establish, *inter alia*, that the criminal charges against him are "for or relating to any act under color of such office," and that he has a colorable federal defense. *Texas v. Kleinert*, 855 F.3d 305, 311-12 (5th Cir. 2017). A defendant's actions are "under color of . . . office" for purposes of federal-officer removal when the state criminal charges are "based on or arise[] out of the acts he did under authority of federal law in the discharge of his duty and only by reason thereof." *Maryland v. Soper (No. 1)*, 270 U.S. 9, 33 (1926). It is thus not enough that the

defendant was a federal official at the time of the alleged crime. *Cf. Colorado v. Symes*, 286 U.S. 510, 518 (1932) ("Federal officers and employees are not, merely because they are such, granted immunity from prosecution in state courts for crimes against state law."). Rather, the conduct underlying the state criminal prosecution must have occurred "while [he was] performing [his] duties" under federal law. *Willingham*, 395 U.S. at 409; *see also Manypenny*, 451 U.S. at 241 (federal-officer removal "to raise a defense arising out of his official duties").

As for the requirement that defendant establish a colorable federal defense, courts have generally equated a "colorable" defense with a "plausible" one. *See, e.g., Graves v. 3M Co.*, 17 F.4th 764, 771 (8th Cir. 2021); *County Bd. of Arlington Cnty. v. Express Scripts Pharm., Inc.*, 996 F.3d 243, 254 (4th Cir. 2021); *Texas v. Kleinert*, 855 F.3d at 313; *Bennett v. MIS Corp.*, 607 F.3d 1076, 1089 (6th Cir. 2010); *see also, e.g., Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 297 (5th Cir. 2020) ("if a defense is plausible, it is colorable" (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009))). "Plausibility" is by now a familiar standard for evaluating the sufficiency of pleadings under Federal Rule of Civil Procedure 8. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The Supreme Court has expressly held that notices of removal should be reviewed under Rule 8's plausibility standard, *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87-89 (2014), and lower courts have applied this standard specifically in the context of 28 U.S.C. § 1442, *see, e.g., Betzner v. Boeing Co.*, 910 F.3d 1010, 1015 (7th Cir. 2018); *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

Here, as the district court rightly found during the first removal proceeding, none of the criminal charges against defendant were based on "acts done by him under color of federal authority and in enforcement of federal law." *Soper (No. 1)*, 270 U.S. at 33. Defendant was charged with and convicted of creating false entries in the business records of a private enterprise to conceal an illegal pre-election scheme designed to suppress information about a private sexual affair. (JA98-102; *see also* Confidential Appendix ("CA") 3-23.) Much of the charged conduct took place before defendant became a federal official, and all of it related to a private scheme unrelated to any official duty. (JA417-421.) As for the charged conduct that did occur while defendant was President—signing personal checks that drew on personal accounts, and creating non-governmental records maintained by a private corporation—all of it related to defendant's personal conduct and personal affairs, not to his federal duties as President. (JA417-421; CA2-73.)

Indeed, in the first removal proceeding, defendant *admitted* that, during his presidency, he made the 2017 payments to "Mr. Cohen as his personal lawyer"—who, at the time, was charged with "handl[ing] [defendant's] personal affairs" (JA15)—"for services rendered to President Trump as his personal attorney . . . while he was President." (JA256, JA427.) The unofficial nature of the 2017 payments to Cohen was further supported by other facts never contested by defendant—including that the business records at issue in this prosecution were held by private enterprises having nothing to do with the presidency, and that the payments were drawn from accounts

that were entirely unofficial in nature. (JA96-97, JA102-105; CA23-73.) In light of defendant's admissions and the uncontested evidence in the record, the district court was correct when it found that this "matter was a purely … personal item" of defendant's. (JA419. ("[h]ush money paid to an adult film star is not related to a President's official acts," nor did it "reflect in any way the color of the President's official duties."))

For similar reasons, the district court was also right when it found, during the first removal proceeding, that defendant had failed to identify a colorable federal defense. Regarding "immunity," defendant had "expressly waived any argument premised on a theory of absolute presidential immunity" and in any event had failed to demonstrate that "hiring and making payments to a personal attorney to handle personal affairs carrie[d] out a constitutional duty." (JA422-423.) Indeed, defendant never identified *any* official duty or responsibility that defendant was fulfilling, or official authority that defendant was invoking, when he made the payments and falsified the business records at issue in this criminal proceeding. None of the payments from defendant's personal accounts relied for their authorization on defendant's presidential powers; and the business records here were generated in the course of a private enterprise's usual course of operations, not by dint of any federal authority. (JA104-105; CA23-73.) As for defendant's preemption argument, the district court correctly ruled that FECA did not preempt either the Falsifying Business Records statue or N.Y. Election Law § 17-152. (JA429.)

-31-

Defendant declined to pursue an appeal to this Court from the district court's remand order. (JA432.) He is accordingly barred from relitigating the district court's factual and legal conclusions here. *See Allen v. McCurry*, 449 U.S. 90, 94 (1980).

## B. *Trump v. United States* Did Not Provide Good Cause for Defendant's Untimely Filing or Create a New Basis for Removal.

Rather than disputing the district court's prior conclusions, defendant instead asserts that the intervening Supreme Court decision in *Trump v. United States* supplied good cause for his untimely and duplicative filing. (DB: 31; *see also* JA483-485.) He is wrong. *See Arizona v. Meadows*, 2024 WL 4198384, at *4 (D. Ariz. Sept. 16, 2024) (*Trump v. United States* "does not bring new grounds into existence as required for a subsequent notice filing").

In *Trump*, the Supreme Court announced new rules for determining whether a President is immune from criminal prosecution for his *official* conduct. But the Court did not disturb at all the well-settled law that, "[a]s for a President's unofficial acts, there is no immunity." 603 U.S. at 615. Because the district court had previously found that the charges here were based entirely on unofficial conduct, it correctly concluded that "[n]othing in the Supreme Court's opinion" required the court to reconsider its earlier conclusion that defendant could not seek removal based on criminal charges for his "private, unofficial acts, outside the bounds of executive authority." (SPA4.)

Rather than focusing on the conduct underlying the criminal charges, defendant instead shifts the focus to certain evidence that was admitted during the trial that he

claims was based on his official acts as President. For this argument, defendant relies on a separate holding in *Trump* that evidence about "official conduct for which the President is immune" may not be introduced at trial "even on charges that purport to be based only on his unofficial conduct." 603 U.S. at 631. According to defendant, even if the *criminal charges* against him were not "for or relating to" acts taken under color of federal office, his *criminal trial* was nonetheless "for or relating to" such acts because the People admitted evidence of his official acts at trial. (DB: 39.)

Defendant is incorrect. For federal-officer removal, the relevant focus is the conduct that forms the basis for the criminal charges, not the nature of the trial evidence. The removal statute reflects this focus: defendants are required to file removal petitions before trial, 28 U.S.C. § 1455(b)(1), at a time when a defendant will only have notice of the charges but not of the trial evidence. And case law confirms that the relevant inquiry is about the nature of the conduct underlying the criminal charges. The Supreme Court has long emphasized that the appropriate focus is the connection between "the *charged conduct* and asserted official authority." *Willingham*, 395 at 409 (emphasis added); *see also Jefferson County v. Acker*, 527 U.S. 423, 433 (1999) (noting that this aspect of the jurisdictional inquiry turns on "[t]he circumstances that gave rise to the [state] liability"); *Soper*, 270 U.S. at 33 (querying the connection between federal authority and "the basis . . . of the state prosecution"). And the lower courts have likewise held that "the circumstances that *gave rise to the liability* must encompass the defendant's conduct in office." *K&D LLC v. Trump Old Post Off. LLC*, 951 F.3d 503,

507 (D.C. Cir. 2020) (emphasis added); *see also Baker v. Atl. Richfield Co.*, 962 F.3d 937, 944 (7th Cir. 2020) (finding a sufficient connection "between the charged conduct and asserted official authority") (quotation omitted); *Sawyer v. Foster Wheeler LLC*, 860 F3d 249, 258 (4th Cir. 2017) (finding "a sufficient connection between the charged conduct and asserted official authority").

The district court thus correctly concluded that defendant failed to establish any good cause for an untimely second notice of removal based on *Trump v. United States*.

## C. The Evidentiary Ruling in *Trump v. United States* Is Inapplicable Here in Any Event.

The unavailability of federal-officer removal under the evidentiary ruling in *Trump v. United States* does not, of course, preclude defendant from relying on that ruling to challenge his conviction; as the Supreme Court observed, "the alleged evidentiary violations at President-Elect Trump's state-court trial can be addressed in the ordinary course on appeal." (Add. 89.)

Nonetheless, because defendant devotes a significant amount of space his brief to asserting that the People admitted official-acts evidence in violation of *Trump v. United States* (DB: 40-47), the People explain here why none of the evidence admitted at defendant's trial contravened the Supreme Court's ruling.

By its own terms, the Supreme Court's holding about the admission of official-acts evidence applies only when that evidence concerns "official acts for which the President is immune" from criminal liability; there is no evidentiary bar with respect to

unofficial acts by the President. 603 U.S. at 631. As for official acts, this Court separated them into two categories. The first, narrow category consists of acts by the President to carry out an explicit constitutional commitment of exclusive authority; for such conduct, the President has absolute immunity. *Id.* at 607-09. The second category consists of all other acts that a President is authorized to commit; for such conduct, the President is entitled only to presumptive immunity, which can be rebutted by showing that "applying a criminal prohibition to that act would pose no dangers of intrusion on the authority and functions of the Executive Branch." *Id.* at 615 (quotation marks omitted). Finally, even as to official acts for which the President is immune, "of course the prosecutor may point to the public record to show the fact that the President performed the official act." *Id.* at 632 n.3.

In other words, under *Trump v. United States*, evidence about defendant's conduct during his Presidency may be properly admitted if *any* of the following is true: the evidence concerns defendant's unofficial conduct; the evidence concerns official conduct for which the presumption of immunity has been rebutted; or the evidence consists of a public record of an official act. As described below, one or more of these factors applies to all of the evidence that defendant challenged after trial.

1. Defendant objected to the admission of four Tweets from his Twitter account. Three Tweets reflected defendant's opinion about Cohen, his personal attorney; the fourth contained defendant's observations about "a private contract between two parties." (JA1119-1128.) The subject matter of these Tweets consisted solely of

"unofficial acts" for which "there is no immunity" and thus no bar to admission of evidence. *Trump*, 603 U.S. at 615. The Supreme Court specifically recognized that defendant, even while serving as President, could make public statements—including Tweets—"in an unofficial capacity," such as if he spoke "as a candidate for office or party leader," rather than as the President exercising his Article II powers. *Id.* at 629. All four of the challenged Tweets referred to Cohen, defendant's personal attorney at the time; and one provided defendant's opinion about—in his own words—"a private contract" between Cohen and Stormy Daniels. (JA1119-1128.) Defendant was thus "speak[ing] in an unofficial capacity," *Trump*, 603 U.S. at 629, when he commented on a private contract between private individuals that was signed before his presidency and that had no relationship to any official presidential duty. (Add. 58-61.)

In any event, even if the Tweets were official acts for which defendant would be immune, they were admissible because the People admitted nothing more than the "public record" of those Tweets "to show the fact that the President performed the official act"—i.e., that he made those statements on Twitter. *Trump*, 603 U.S. at 632 n.3.

2. There was no error in the admission of testimony from former White House employees Hope Hicks and Madeleine Westerhout. The only testimony that the People elicited from Hicks regarding any conversations with defendant while he was President related solely to unofficial conduct—namely, discussions between defendant and Hicks about the hush-money scheme that was then being reported in the press. (Add. 44-48.) As defendant has long conceded, that scheme was entirely personal and largely

committed before the election, and it had no relationship whatsoever to any official duty of the presidency. A President's discussions about a purely private matter, even with a White House advisor, do not constitute "official acts for which the President is immune," *Trump*, 603 U.S. at 631, because neither the internal discussions nor the subject matter have any "connection with the general matters committed by law to his control or supervision," *Blassingame v. Trump*, 87 F.4th 1, 13 (D.C. Cir. 2023) (quotation marks omitted); *see also Trump*, 603 U.S. at 623-624 (holding that not all of a President's discussions with his Vice President would qualify as official conduct subject to absolute immunity).

As for Westerhout's testimony, she simply described her assistance in handling defendant's private affairs, including her receipt of personal checks from a purely private enterprise, the Trump Organization, for defendant to sign. (Add. 48-51.) This is unofficial conduct that is not subject to any claim of immunity. S*ee Trump*, 603 U.S. at 629. Moreover, Westerhout's general descriptions of defendant's work practices did not trigger any concerns about official-acts immunity because she provided no testimony about any particular official act of the President, let alone any specific "exercise of Article II" or "statutory authority." (DB: 40.)

3. The challenged testimony from Michael Cohen was also properly admitted. Evidence regarding Cohen's responses to FEC investigations into whether hush-money payments violated campaign finance laws was unrelated to any official act because the pre-election hush-money payments had no connection to any official duty of any federal

-37-

office. And aside from defendant, all of the relevant actors mentioned in this evidence were private parties who were not acting in any official capacity. The Supreme Court recognized that defendant himself "appeared to concede" at the *Trump* oral argument that acts "involving 'private actors' . . . entail 'private' conduct." *Trump*, 603 U.S. at 626.

Defendant argues that Cohen's testimony about the Attorney General "tak[ing] care of" an FEC investigation relates to defendant's authority to decide which crimes to prosecute (DB: 44). This argument makes no sense. The FEC's enforcement authority is exclusively civil, not criminal; and it is an independent administrative agency that is not supervised by the Attorney General in any event. 52 U.S.C. § 30107(a)(6), (e); *see Fed. Election Comm'n v. Nat'l Right to Work Comm.*, 459 U.S. 197, 199 n.2 (1982). And because defendant disputes that he actually spoke with the Attorney General about this issue (DB: 45), the only "conduct" at issue here would appear to be an empty promise from defendant to reassure his private attorney about an independent agency's investigation into private affairs. That conduct reflects no exercise of actual presidential responsibilities.

Defendant's claim that Cohen improperly testified about the exercise of the "pardon power" (DB: 45-46) simply misstates the record. Cohen testified about an email exchange between himself and another lawyer (Robert Costello) in which Costello offered to ask Rudy Giuliani to ask defendant to issue a pardon. (Add. 52-58.) Defendant was not a party to that email exchange; the participants did not say that they had lodged the pardon request with defendant; the exchange did not attribute any

comments to defendant; and defendant never pardoned Cohen. A private conversation between two private individuals about a pardon they never requested from defendant is not testimony about any official presidential act. *See Trump*, 603 U.S. at 626.

4. Finally, defendant's OGE financial disclosure form (DB: 47) was also properly admitted at trial. The obligation to file this OGE form is not limited to Presidents; it applies to other officials and to political candidates for federal office, and the information disclosed on the form consists of the individual's private finances—which are necessarily separate from any official acts. *See* 5 U.S.C. §§ 13103(b)-(c), (f), 13104. Even assuming that the OGE form nonetheless reflects official conduct, OGE is statutorily required to make these filings publicly available. *See* 5 U.S.C. § 13107(a); *see also id.* §§ 13101(18)(D), 13122(b)(1). The document is thus a quintessential "public record to show the fact that the President performed the official act." *Trump*, 603 U.S. at 632 n.3. Moreover, in admitting the form, the People did not rely on "testimony or private records of the President or his advisers probing the official act itself." *Id.* To the contrary, the form was admitted through the testimony of Jeffrey McConney, a Trump Organization employee who prepared the form for defendant in his capacity as a private employee and stored it in the records of the Trump Organization. (Add. 51-52.)

Defendant contends that the OGE form constituted an official act of "speaking to . . . the American people." (DB: 47.) But there is no evidence whatsoever that defendant completed the OGE form in an effort to communicate with the public at large. And although the OGE makes these forms publicly available, merely filing a form

with a government agency is simply not the same as a President using the power of "the office's 'bully pulpit' to persuade Americans . . . in ways that the President believes would advance the public interest." *Trump*, 603 U.S. at 629.

Thus, all of the evidence defendant challenged in his post-trial motion either concerned unofficial conduct that is not subject to any immunity, or is a matter of public record that is not subject to preclusion.[7]

## POINT III

### THE INEXPLICABLY LATE SUBMISSION OF DEFENDANT'S MOTION FOR LEAVE TO FILE A SECOND REMOVAL NOTICE GAVE THE DISTRICT COURT ADDITIONAL GROUNDS TO DENY DISCRETIONARY RELIEF

When a statute refers to "good cause" for extending a deadline, or for excusing a party's failure to meet one, the existence of good cause generally "turns on the diligence of the moving party." *Callahan v. Cnty. Of Suffolk*, 96 F.4th 362, 370 (2d Cir. 2024). Courts decline to find good cause if the party "knew, or should have known" steps it needed to take "in advance of the deadline sought to be extended." *Smith v. Bradt*, 329 F.R.D. 500, 505 (W.D.N.Y. 2019); *see also Shemendera v. First Niagara Bank N.A.*, 288 F.R.D. 251, 253 n.3 (W.D.N.Y. 2012) (finding no good cause where counsel did "little or nothing to schedule the depositions" until shortly before the deadline).

---

[7] Defendant briefly mentions evidence before the grand jury (DB: 19, 22), but he offers no additional arguments regarding the grand jury evidence, beyond the contentions he voices about the trial evidence (*see* DB: 39-47), all of which are already discussed in the main text.

In his motion for leave to file a late notice of removal, defendant claimed that his tardy notice was justified because of his criminal trial and because of the Supreme Court's decision in *Trump v. United States*. But defendant's trial concluded on May 30, 2024 with the jury verdict, and the Supreme Court issued its decision in *Trump v. United States* on July 1, 2024. Defendant then waited more than two months to file his motion on September 3, 2024. Defendant has failed to explain why it took him three months after his trial and two months after *Trump v. United States* to finally seek leave to file a late notice of removal.

Given that the deadline for removal was already long past, defendant should have exercised diligence and sought relief soon after those new circumstances arose. But he failed to do so. Defendant's unexplained delay provides further support for the absence of good cause to file an untimely second notice of removal. *See Mindling v. Stiegler*, No. 22-2711-CV, 2023 WL 8295868, at *2 (2d Cir. Dec. 1, 2023) ("district court did not abuse its discretion" in finding that defendant "failed to demonstrate due diligence" or "good cause" where he filed motion for extension "over two months after his deadline had passed").

## POINT IV

## DEFENDANT'S MYRIAD COMPLAINTS ABOUT THE STATE CRIMINAL TRIAL, IN ADDITION TO BEING BASELESS, ARE NOT GERMANE TO THE EXISTENCE OF GOOD CAUSE

### A. Defendant's Complaints About the Trial Are Immaterial to Whether There Was Good Cause to File an Untimely Second Notice of Removal.

Finally, defendant raises a litany of complaints about the trial, including recycled claims of judicial bias which have been repeatedly rejected by various courts. For several reasons, the district court properly declined to entertain these contentions.

First, none of these arguments have anything to do with "good cause" for a late, second notice of removal. Contrary to defendant's characterization, none of these complaints involved "changed circumstances" (DB: 53) that justified defendant's attempt to pursue removal a second time months after the state-court jury had already found him guilty and on the eve of his sentencing. Furthermore, defendant is free to assert all of these trial arguments on direct appeal; he fails to explain why it is necessary for him to raise these claims before a federal district court instead. More fundamentally, if a defendant's dissatisfaction with his trial could constitute "good cause" for an untimely removal notice, then virtually every criminal defendant would be able to file serial notices of removal to disrupt his state-court trial and forestall sentencing. No court has ever endorsed such a rule.

Second, and relatedly, none of defendant's trial arguments affect the unavailability of federal-officer removal because none of them alter the basic fact that

the criminal charges were based on unofficial acts, rather than acts under color of a federal office. In other words, even if any of defendant's miscellaneous claims had merit—which they do not, for the reasons discussed below—removal would still be unavailable, and defendant would thus still fail to establish good cause.

Third, as the district court recognized, these claims all amounted to an improper attempt by defendant to utilize the federal removal procedure to effectively obtain interlocutory appellate review of a pending state criminal proceeding. The district court did not abuse its discretion in declining to indulge defendant's trial complaints in this manner, both because defendant will be able to assert these claims on direct appeal, and because defendant's attempt to shoehorn every conceivable complaint about the trial into this removal proceeding violated the "strong federal policy against federal-court interference with pending state judicial proceedings." *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982).

The criminal removal statute reflects this anti-interference principle in a variety of ways. Deadlines that force parties to seek removal early, paired with restrictions on successive removal petitions, discourage litigants from engaging in disruptive attempts to invoke federal-court intervention. *See* 28 U.S.C. § 1455(b)(1)-(2). Other provisions unique to criminal removal authorize federal courts to summarily remand any facially deficient removal petition, and allow proceedings to continue in state court even after a notice of removal has been filed. *See id.* § 1455(b)(3)-(4). Meanwhile, strict limits on appealability, *see id.* § 1447(d), reflect a "strong congressional policy" against

interference in state proceedings that is "grounded in notions of fairness to litigants by curbing the potential for dilatory tactics." *Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 332 F.3d 116, 125-26 (2d Cir. 2003). And courts further seek to mitigate the possibility of inter-sovereign conflict by strictly construing "statutory procedures for removal" and resolving "any doubts against removability." *Taylor v. Medtronic, Inc.*, 15 F.4th 148, 150 (2d Cir. 2021).

It is for these reasons that the district court appropriately relied on the policy underlying the *Rooker-Feldman* doctrine in explaining why defendant had failed to establish good cause here. (SPA2.) The reasoning behind that doctrine amply supported the court's conclusion that it would be inappropriate to permit defendant to assert, in a post-trial removal proceeding, various complaints about the state trial that had no bearing on "good cause" for filing a late removal notice or on the legal availability of removal.

For these reasons, the district properly declined to entertain defendant's various complaints about the trial. This Court should refuse to entertain them too.

## B. Defendant's Complaints Are Also Baseless.

To the extent this Court considers defendant's complaints, it should reject all of them as meritless.

### 1. Defendant's Judicial Bias Claims Are Specious.

Defendant's judicial bias claims have been rejected in many different orders by both state and federal courts. The trial court evaluated, and rejected, defendant's

arguments in three orders denying defendant's multiple motions to recuse. (JA1014-1019, 1112-14.); *see People v. Trump*, 82 Misc. 3d 1233(A) (N.Y. Sup. Ct. 2024). The Appellate Division, First Department also rejected defendant's requests for relief based on recusal three separate times. *Trump v. Merchan*, 227 A.D.3d 569, 570 (App. Div. 2024); (Add. 8-11). In the first removal proceeding, the district court likewise found "no reason to believe that the New York judicial system would not be fair and give defendant equal justice under the law." (JA-431.)

As these courts have all correctly held, defendant has utterly failed to establish the trial court's bias. Recusal is required "only where there exists a direct, personal, substantial or pecuniary interest in reaching a particular conclusion." *People v. Alomar*, 93 N.Y.2d 239, 246 (1999). There must be concrete proof of such a direct interest; "speculative" claims of potential bias are insufficient to warrant recusal. *Rumsey v. Niebel*, 286 A.D.2d 564, 564 (App. Div. 2001).

Here, defendant failed to make the requisite showing of "a direct, personal, substantial or pecuniary interest in reaching a particular conclusion." Defendant claims that the trial judge, Justice Juan Merchan, should have recused himself principally because of his adult daughter's employment at a political consulting firm, Authentic, that does work for Democratic politicians. But the New York Advisory Committee on Judicial Ethics determined nearly two years ago that this claim provided no basis for recusal. (Add. 1-3.) As the Committee determined, "a judge's relatives remain free to engage in their own bona fide independent political activities" without affecting the judge's impartiality, and a

-45-

"relative's independent political activities do not provide a *reasonable* basis to question the judge's impartiality." *Id.* These conclusions apply with full force here.

Defendant's accusations are also entirely unfounded. His claim that Justice Merchan stood to benefit from his daughter's work with a political consulting firm rested on speculation at every step. Defendant has never identified any evidence that the trial court's daughter had a direct personal or professional relationship with the People or defendant. And neither Authentic nor any of its clients is a party or attorney in any of the relevant proceedings.

Defendant's present contentions offer nothing that would warrant a different conclusion. As in his prior applications for recusal, defendant repeats his claim that Authentic receives money from certain clients; those clients are vocal opponents of defendant; and some of those clients have mentioned this prosecution in soliciting campaign donations. (DB: 3, 57.) Completely absent is any direct connection between these facts. Indeed, it seems quite unlikely that the income Authentic receives is dedicated *solely* to creating advertisements mentioning defendant, when candidates also devote a significant amount of advertising to tout their own achievements, comment on issues of concern to voters, and criticize their direct opponents. And defendant has still identified no direct evidence that Authentic has done any work related to the criminal charges at issue here or that Authentic's revenues are somehow based on defendant's political fortunes. Recusal is simply not warranted when, as here, "the interest asserted bears only a tangential relationship to the subject matter of the suit." *Brody v. President & Fellows of*

-46-

*Harvard Coll.*, 664 F.2d 10, 12 (1st Cir. 1981).

Defendant also makes the absurd claim that, in a 2019 podcast interview, the trial judge's family member "discussed a conversation" with Justice Merchan reflecting "bias against [defendant's] use of Twitter while he was in Office." (DB: 18.) The quoted statements show no such thing. The five-year-old statement attributed to Justice Merchan was that he "hate[s] that politicians use Twitter." (JA488.) But there is no indication that the sentiment specifically refers to defendant, and the use of the plural word "politicians" indicates otherwise since, as of 2019, many politicians used Twitter—including President Biden, Vice President Harris, and many of the other candidates whom defendant deems to be his political opponents. A general distaste for politicians' use of social media is simply not the same as bias toward one such politician, and defendant's claim to the contrary is not just wrong but irresponsible.

Finally, defendant argues that Justice Merchan could not preside over the trial fairly because of his prior political contributions. However, as the Advisory Committee noted, the total of those contributions, "in the aggregate," was "less than $50." (Add. 2.) One of those contributions was made to "the person who opposed the defendant in an election; none was made to the defendant or the prosecutor or anyone else involved in the case." (Add. 2.) Those de minimis contributions from years before the trial could not reasonably call Justice Merchan's ability to be impartial into question.

-47-

### 2. The People Made No Misrepresentations During the First Removal Proceeding.

Contrary to defendant's claim (DB: 38-40, 65-66), the People made no false statements in the first removal proceeding. The People accurately disclosed, and accurately described in the first removal proceeding, every possible basis for finding that defendant had falsified business records with the intent to commit or conceal another crime. It was entirely proper for the People to later focus on a single, more specific theory of liability at trial. *People v. Seignious*, 41 N.Y.3d 505, 511-512 (2024). And contrary to defendant's claim (DB: 65-66), the trial court's instructions did not mention—let alone require the jury to find—anything about "specific disclosures" required by FECA. *People v. Trump*, Jury Instructions and Charges (N.Y. Sup. Ct. 2024).[8] The trial court's instructions merely explained that it was unlawful to exceed federal campaign contribution limits, *id.* at 31—a true fact, to which defendant made no objection at trial.

### 3. Defendant's Complaints Regarding the Order Restricting Extrajudicial Statements Are Baseless.

Defendant argues that "good cause" supported his untimely removal notice because of the "need to protect the integrity of the 2024 Presidential election" by providing him "a federal forum to seek prompt relief" from the trial court's order restricting certain extrajudicial statements. (DB: 58-61.) These contentions are all moot

---

[8] https://tinyurl.com/bdhsdwm8 (last accessed Jan. 13, 2025).

now because the court's order restricting extrajudicial statements remained in effect only through the imposition of sentence. (Add. 12-16.) In any event, the trial court's now-expired order was proper in the first instance, as the state trial court has explained—and as the Appellate Division and New York Court of Appeals declined to disturb—in light of defendant's long, well-documented history of publicly attacking individuals involved in legal proceedings against him, including witnesses, jurors, judges, and prosecutors. *Trump v. Merchan*, 227 A.D.3d 518, 519-20 (App. Div. 2024), *appeal dismissed*, 42 N.Y.3d 956 (N.Y. Sept. 12, 2024); (Add. 4-7.)

### 4. Defendant Has Failed to Demonstrate That New York State Procedures Are Inadequate in Any Way.

Defendant's myriad complaints about "New York's appellate procedures," such as their alleged inadequacy to afford him the kind of "interlocutory" review to which he claims to be entitled under the Supreme Court's decision in *Trump v. United States* (DB: 61-63), are baseless. In the week leading up to his sentencing, the U.S. Supreme Court, the New York Court of Appeals, and the New York Appellate Division all entertained and rejected requests by defendant to stay the criminal proceedings so that he could pursue an interlocutory appeal. (Add. 86-89.) Indeed, in denying a stay, the Supreme Court specifically noted that "the alleged evidentiary violations at President-Elect Trump's state-court trial can be addressed in the ordinary course on appeal" (Add. 89.) Defendant thus not only took advantage of multiple avenues of (emergency)

interlocutory appeal, but has now been directed to raise his arguments on direct appeal, after sentencing.

### 5. Defendant's Preemption Arguments Remain Meritless.

During the first removal proceeding, defendant claimed that the criminal charges in the indictment were preempted by FECA. After a detailed legal analysis, the district court ruled that defendant's preemption arguments were "without merit" and that there was "no colorable basis to them." (JA423-430.)

Defendant now claims "good cause" because the People assertedly changed trial strategy in a way that improved his FECA preemption claim. (DB: 65-67.) Defendant mischaracterizes the People's trial position as "contradictory." (DB: 65.) But that dispute is immaterial here because defendant could raise any such argument on direct appeal (to the extent it is preserved). Defendant also does not contest that, at best, FECA preemption would establish a federal defense that is just one of the prerequisites for federal-officer removal. *See Mesa v. California*, 489 U.S. 121, 129 (1989). But nothing about FECA would affect the district court's separate conclusion in the first removal proceeding that the underlying criminal charges here were not "for or relating to any act under color of [federal] office," 28 U.S.C. § 1442(a)(1)—an entirely independent requirement for removal. *See Kleinert*, 855 F.3d at 311.

The same arguments apply to defendant's claim that the Supreme Court's "intervening" decisions in *Trump v. Anderson*, 601 U.S. 100 (2024), and *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024), changed the preemption analysis. (DB:

63-65.) Those arguments can also be raised on direct appeal; and, even if correct, they would still not support federal-officer removal here.

Defendant also vastly overstates the degree to which these decisions affect the preemption analysis. For example, defendant asserts that *Loper Bright*'s overruling of *Chevron* deference undermines the district court's reliance on an FEC regulation, 11 C.F.R. § 108.7. (DB: 63.) But it was principally *defendant* who relied on that regulation in the first removal proceeding to support his preemption arguments. (*See, e.g.*, JA16-17, JA255.)

Likewise, defendant relies on *Anderson* for the proposition that New York cannot regulate federal candidates at all. (DB: 64.) But *Anderson* said nothing of the sort. Rather, that decision held only that a State could not exclude a presidential candidate from the ballot under Section 3 of the Fourteenth Amendment. 601 U.S. at 105-06. Neither FECA nor campaign finance is mentioned anywhere in the opinion; nor is defendant's sweeping characterization of that decision consistent with the Supreme Court's holding that even sitting Presidents are not wholly immune from criminal process, including from state prosecutors. *See Trump*, 603 U.S. at 642; *Trump v. Vance*, 591 U.S. 786, 806-07 (2020). Defendant is thus wrong to rely on these inapposite decisions to support his claim of good cause to file an untimely second notice of removal.[9]

---

[9] Even if this Court were to conclude that the district court erred in denying leave here, defendant is wrong to claim that the proper remedy would be to "remand the case with instructions that the Second Removal Notice was sufficient to establish removal pursuant to

(Continued…)

## CONCLUSION

This appeal should be dismissed as moot. In the alternative, the order of the district court should be affirmed.

Respectfully submitted,

ALVIN L. BRAGG, JR.
District Attorney
New York County

BY: _____
JOHN T. HUGHES
Assistant District Attorney

STEVEN C. WU
  Chief, Appeals Division
JOHN T. HUGHES
  Assistant District Attorney
    Of Counsel

January 13, 2025

---

§ 1442(a)(1)." (DB: 67.) Rather, the proper remedy would be to return the case to the district court for it to grant defendant leave to file an untimely second notice of removal. At that point, the district court could still consider whether to "make an order for summary remand," and the People would be entitled to move for remand. *See* 28 U.S.C. § 1455(b)(4)-(5).

## CERTIFICATE OF COMPLIANCE

The word count for this brief is 13440, excluding the Table of Contents and Table of Authorities.  The word processing system used to prepare this brief and to calculate the word count was Microsoft Word 2016.  The brief is printed in Garamond, a serifed, proportionally spaced typeface.  The type size is 14 points in the text and headings, and 13 points in the footnotes. I certify that the brief complies with Rule 32(a)(5)-(7) and Local Rule 32.1.

John T. Hughes