# 24-2299

---

# United States Court of Appeals

### For the Second Circuit

――――――

**PEOPLE OF THE STATE OF NEW YORK**,

*Plaintiff-Appellee,*

*- against -*

**DONALD J. TRUMP,**

*Defendant-Appellant.*

**On Appeal from the United States District Court
for the Southern District of New York**

---

## SUPPLEMENTAL BRIEF FOR THE PEOPLE IN RESPONSE TO UNITED STATES AMICUS

---

ALVIN L. BRAGG, JR.
District Attorney
New York County
Attorney for Respondent-Appellee
One Hogan Place
New York, New York 10013
(212) 335-9000

STEVEN C. WU
*Chief, Appeals Division*
JOHN T. HUGHES
*Assistant District Attorney*

---

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................... ii

ARGUMENT ..................................................................................................................... 1

POINT I

DEFENDANT'S SENTENCING BOTH PRECLUDES
REMOVAL AND SUPPORTS THE DISTRICT
COURT'S FINDING OF LACK OF GOOD CAUSE IN
ANY EVENT ................................................................................................... 1

POINT II

DEFENDANT IS NOT ENTITLED TO FEDERAL-
OFFICER REMOVAL ................................................................................... 12

CONCLUSION ............................................................................................................... 16

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Carroll v. Trump*, 66 F.4th 91 (2d Cir. 2023) ..................................................... 11

*FDIC v. Keating*, 12 F.3d 314 (1st Cir. 1993) ...................................................... 5

*Georgia v. Clark*, 119 F.4th 1304 (11th Cir. 2024) ............................................. 15

*Georgia v. Meadows*, 692 F. Supp. 3d 1334 (N.D. Ga. 2023) .............................. 9

*Georgia v. Shafer*, 119 F.4th 1317 (11th Cir. 2024) ............................................ 15

*Harris v. U.S. Department of Transportation FMCSA*,
  122 F.4th 418 (D.C. Cir. 2024) ........................................................................ 4

*In re Savers Fed. Sav. & Loan Ass'n*, 872 F.2d 963 (11th Cir. 1989) ................. 5

*Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286 (5th Cir. 2020) .................. 14

*Matter of Meyerland Co.*, 960 F.2d 512 (5th Cir. 1992) ...................................... 5

*Mayor & City Council of Baltimore v. BP P.L.C.*, 31 F.4th 178 (4th Cir. 2022) ............... 14

*Maze v. Tennessee*, No. 3:15-CV-00698, 2015 WL 3989125
  (M.D. Tenn. June 30, 2015) ............................................................................. 8

*Missouri v. Pate*, No. 4:24-CV-01728-MTS, 2025 WL 104174
  (E.D. Mo. Jan. 15, 2025) .................................................................................. 8

*Pennsylvania v. Maggitti*, No. 24-1702, 2025 WL 869493
  (3d Cir. Mar. 20, 2025) (unpublished) ............................................................ 4

*Renteria v. Lumpkin*, No. 23-70007, 2023 WL 7649071
  (5th Cir. Nov. 14, 2023) (unpublished) ........................................................ 4-5

*Russello v. United States*, 464 U.S. 16 (1983) ...................................................... 2

*Sai Kwan Wong v. Doar*, 571 F.3d 247 (2d Cir. 2009) ......................................... 3

*State v. Meadows*, 88 F.4th 1331 (11th Cir. 2023) .............................................. 15

*Trump v. United States*, 603 U.S. 593 (2024) ....................................... 6-7, 11, 13

*Whitley v. Ercole*, 642 F.3d 278 (2d Cir. 2011) ........................................................ 9

## STATE CASES

*Matter of Trump v. Merchan*, 227 A.D.3d 569 (1st Dep't 2024) ......................... 11

*People v. Afflick*, 234 A.D.3d 501 (1st Dep't 2025) ............................................ 5

*People v. Machado*, 90 N.Y.2d 187 (1997) ........................................................ 5

## FEDERAL STATUTES

28 U.S.C. § 1292(b) ................................................................................... 3

28 U.S.C. § 1404 ....................................................................................... 3

28 U.S.C. § 1442(a) ............................................................................. 12, 15

28 U.S.C. § 1442(a)(1) ............................................................................. 14

28 U.S.C. § 1446 ....................................................................................... 4

28 U.S.C. § 1446(d) ................................................................................... 2

28 U.S.C. § 1447(d) ................................................................................... 3

28 U.S.C. § 1450 ....................................................................................... 3

28 U.S.C. § 1455 ....................................................................................... 4

28 U.S.C. § 1455(b)(1) ........................................................................... 6-7

28 U.S.C. § 1455(b)(2) ............................................................................. 15

28 U.S.C. § 1455(b)(4) ........................................................................... 2-3

28 U.S.C. § 1455(b)(5) ............................................................................... 3

28 U.S.C. § 2112(a)(4) ............................................................................... 3

28 U.S.C. § 2112(a)(5) ............................................................................... 3

28 U.S.C. § 2241(b) ................................................................................... 3

28 U.S.C. § 2241(d) ................................................................................... 3

## STATE STATUTES

N.Y. Criminal Procedure Law § 245.10(1) ........................................................ 4

N.Y. Criminal Procedure Law § 255.20(1) ........................................................ 4

N.Y. Criminal Procedure Law § 330.30 ............................................................ 4

N.Y. Criminal Procedure Law § 390.20(1) ........................................................ 4

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

THE PEOPLE OF THE STATE OF NEW YORK,

Plaintiff-Appellee,

-against-

DONALD J. TRUMP,

Defendant-Appellant.

## SUPPLEMENTAL BRIEF FOR THE PEOPLE
## IN RESPONSE TO UNITED STATES AMICUS

The People respectfully submit this supplemental brief to respond to the proposed amicus brief filed by the United States.

## ARGUMENT

## POINT I

## DEFENDANT'S SENTENCING BOTH PRECLUDES REMOVAL AND SUPPORTS THE DISTRICT COURT'S FINDING OF LACK OF GOOD CAUSE IN ANY EVENT

### A. Federal Removal Is No Longer Available After a Final Criminal Judgment.

As explained in the People's main brief, removal of this criminal proceeding is no longer available here since defendant has been sentenced (Brief for Respondent ["RB"]: 20-25). The United States argues to the contrary by asserting that the federal-officer removal statute, 28 U.S.C. § 1442(a)(1), is silent on the effect of a final judgment,

and that the statute for removal of criminal prosecutions, *id.* § 1455(b), "imposes no outer limit on when the federal officer can remove his criminal case based on a showing of good cause, including after the federal officer has been convicted and sentenced" (U.S. Amicus: 7-8).

These arguments ignore statutory indicia that Congress intended for removal of criminal cases to happen before sentencing by anticipating that essential federal proceedings will take place prior to a final criminal judgment. In particular, as the People have previously explained (RB: 22), unlike in removed civil cases, *see* 28 U.S.C. § 1446(d), criminal cases may proceed in state court even after a notice of removal has been filed, "except that a judgment of conviction shall not be entered unless the prosecution is first remanded." *Id.* § 1455(b)(3). This stay provision assumes that the very initial step of the removal process—the threshold decision of whether to remand the case, *see id.* §§ 1455(b)(4) (notice must be reviewed "promptly"), 1447(c) (remand motion must be filed within thirty days)—is completed before a judgment of conviction.

Although the United States does not cite, let alone explain away, this language, its other statutory arguments (U.S. Amicus: 7-8, 10) suggest that it would deem this provision immaterial because it does not explicitly ban remand or removal proceedings after sentencing in a state criminal case. But Congress's exclusive focus on procedures before final judgment strongly suggests that it did not anticipate federal removal after sentencing at all. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress

includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (quotation marks omitted)).

That interpretation is further supported by the fact that the removal statutes are conspicuously silent about critical procedural questions unique to the post-sentencing context. For example, although the United States suggests that the district court here could simply "transfer [this] case to this Court for appellate proceedings" (U.S. Amicus: 12 n.1), no statutory provision explicitly authorizes such novel transfer authority. *Compare* 28 U.S.C. §§ 1292(b) (procedure for certifying interlocutory orders for appeal), 1404 (explicitly authorizing district court transfers for change of venue), 2112(a)(4)-(5) (explicitly authorizing court of appeals transfers in multi-district litigation), 2241(b), (d) (explicitly authorizing transfers of habeas petitions). Such a transfer would also be inconsistent with the removal statute's provisions that the "district court," not this Court, resolve any remand motion in the first instance, *see id.* § 1455(b)(4)-(5); *see also id.* § 1447(d) (limiting appellate review of remand orders); and that the "district court," not this Court, decide which "injunctions, orders, and other proceedings had in such [criminal] action prior to its removal shall remain in full force and effect," *id.* § 1450. The United States' anything-goes approach to post-sentencing removal procedures conflicts with Congress' presumably deliberate decision not to legislate in this area at all. *See Sai Kwan Wong v. Doar*, 571 F.3d 247, 260 (2d Cir. 2009) ("we are not inclined to infer from statutory silence a congressional intent to have no rules whatsoever apply").

For these reasons, as the People have explained (RB: 21 & n.6), federal courts have uniformly held that 28 U.S.C. § 1455 "does not permit postconviction removal." *Renteria v. Lumpkin*, No. 23-70007, 2023 WL 7649071, at *3 (5th Cir. Nov. 14, 2023) (unpublished). The United States does not cite a single criminal case to the contrary. Instead, it relies exclusively on cases addressing the removal of civil cases (U.S. Amicus Br.: 8-10). But those cases are not controlling here because they do not address the distinct procedural requirements and statutory language applicable to the removal of state criminal prosecutions. *See Pennsylvania v. Maggitti*, No. 24-1702, 2025 WL 869493, *1 (3d Cir. Mar. 20, 2025) (unpublished) (where petitioner "sought removal of a criminal prosecution, not a civil action," her "citing of 28 U.S.C. § 1446 and our case law interpreting that removal statute in the civil context is unavailing").

If anything, the cases cited by the United States highlight how the unique features of civil litigation may justify post-final-judgment removal in ways that do not translate to the distinctive context of criminal prosecutions. For example, in amicus's principal case, *Harris v. U.S. Department of Transportation FMCSA*, 122 F.4th 418 (D.C. Cir. 2024), the state court had sua sponte dismissed the complaint before the defendant federal agency had even been served, and the agency sought to remove the pending appeal still within the original thirty-day deadline for filing a notice of removal. *Id.* at 423. No New York criminal case could proceed from arraignment to sentencing with such haste. *See, e.g.*, N.Y. Criminal Procedure Law ("CPL") §§ 245.10(1) (pretrial discovery), 255.20(1) (pretrial motions), 330.30 (post-trial motions), 390.20(1) (pre-sentence investigation).

Similarly, in the cited cases involving the Federal Deposit Insurance Corporation, the federal agency only substituted as a party after the state courts had entered final judgment. *See FDIC v. Keating*, 12 F.3d 314, 315 (1st Cir. 1993); *Matter of Meyerland Co.*, 960 F.2d 512, 513 (5th Cir. 1992); *see also In re Savers Fed. Sav. & Loan Ass'n*, 872 F.2d 963, 964 (11th Cir. 1989). No such substitution is available for individual criminal defendants.

Amicus's remaining arguments are meritless. The United States asserts that post-sentencing removal is necessary because "not every . . . federal defense is evident before trial," and defendants with a federal defense must have a "right to access a federal forum" no matter when such a defense arises (U.S. Amicus: 10). But there is no logical stopping point to this reasoning. Under the United States' rationale, removal would be available even if a state appeal takes years to resolve, *e.g., People v. Afflick*, 234 A.D.3d 501, 501 (1st Dep't 2025) (deciding the direct appeal of a 2006 criminal conviction); even after a ruling by a State's highest court, when ordinarily only Supreme Court review would be available (*cf.* U.S. Amicus: 10); and potentially even during a collateral attack on a conviction, which in New York can be filed before exhausting direct appellate review (*cf. People v. Machado*, 90 N.Y.2d 187, 189 (1997)), *contra Renteria*, No. 23-70007, 2023 WL 7649071, at *3 (holding that removal is unavailable for collateral proceedings). Allowing removal in such circumstances would raise its own procedural puzzles—for example, would this Court (or the district court) "review" a ruling by the New York Court of Appeals, or "transfer the case to [the Supreme Court] for appellate

proceedings" (U.S. Amicus: 12 n.1)? And removal would be enormously disruptive in any event, replacing the ordinary channels of state-court appellate review with a novel opportunity for a federal-court do-over.

The United States also claims that the unavailability of removal after sentencing would "risk incentivizing state and local prosecutors to manipulate trial dates and the timing of evidentiary submissions" to avoid removal (U.S. Amicus: 11). As discussed, however (*supra* at 4-5), New York's criminal procedures make it effectively impossible for a case to rush to sentencing. A defendant also has the option of requesting that sentencing be adjourned—as defendant repeatedly did here, including so he could brief the impact of *Trump v. United States*, 603 U.S. 593 (2024). And, failing that, a defendant can also seek federal-court stays of sentencing—as defendant again did here, without success (Add. 89; ACMS Dkt. No. 31). Given these protections, the United States vastly overstates the risk that prosecutors will be able to avoid federal removal by manipulating the sentencing date.[1]

---

[1] To the extent that the United States is alleging that, in this case, the People either "manipulate[d] trial dates" or the "timing of evidentiary submissions" to frustrate defendant's ability to seek removal (U.S. Amicus: 11), such an argument would be specious. Defendant did, in fact, file a first notice of removal within the deadline provided for in 28 U.S.C. § 1455(b)(1). The record makes clear that defendant was well aware from the outset of this case that the evidence against him included proof of actions he took while serving as President (JA96-105; *see also* JA802-805). And after the Supreme Court decided *Trump v. United States*, sentencing was adjourned for months to enable him to move for relief based on that intervening decision, both in state and federal court.

### B. The Late Stage of This Proceeding Weighs Heavily Against Removal in Any Event.

Even if removal were still formally available here, there were ample grounds supporting the district court's finding of lack of good cause to permit defendant to file a second, untimely notice of removal.

The United States' discussion of good cause (U.S. Amicus: 16-19) focuses exclusively on the question of whether the *timing* of the second notice of removal was justified due to the Supreme Court's intervening decision in *Trump v. United States*, 603 U.S. 593 (2024). As the People have explained (RB: 40-41), this factor does not actually support good cause here because defendant did not promptly seek removal after the Supreme Court's decision. Instead, he inexplicably waited for more than two months before making a motion under 28 U.S.C. § 1455(b), *compare id.* § 1455(b)(1) (ordinarily requiring notice of removal to be filed within 30 days of arraignment); delayed yet another month before pursuing his appeal with this Court; and never sought expedited briefing in this appeal, even after this Court denied his motion for a stay (ACMS Dkt. No. 31). Had defendant moved more swiftly, he could have fully litigated the question of whether he should be allowed to file a second notice of removal before his January 10, 2025 sentencing (*cf.* RB: 12-15 (six days to litigate date of defendant's sentencing from state trial court to U.S. Supreme Court)).

More fundamentally, however, even if defendant had sought removal promptly after the Supreme Court's decision, the district court still would not have abused its

discretion in finding an absence of good cause. Contrary to the United States' assumption, a late-breaking legal development alone does not compel a district court to allow a defendant to file an untimely notice of removal (*cf.* DB: 53-67 (citing non-timing factors to support good cause)). Here, the post-trial (and now post-sentencing) posture of this criminal prosecution provides multiple other compelling reasons to channel defendant's federal defenses through the ordinary appellate process, rather than through removal. *See, e.g.*, *Missouri v. Pate*, No. 4:24-CV-01728-MTS, 2025 WL 104174, at *2 (E.D. Mo. Jan. 15, 2025) ("Pate has already been tried, convicted, and sentenced, and there is no basis to find good cause to allow removal now."); *Maze v. Tennessee*, No. 3:15-CV-00698, 2015 WL 3989125, at *2 (M.D. Tenn. June 30, 2015) ("while it is unclear that there remains a 'case' to be remanded to the Tennessee trial court, since the matter is already on appeal, it is perfectly clear that removal of this action should not be permitted").

For one thing, as the People have explained (RB: 26-27), and defendant's own brief to this Court confirms (DB: 53-63, 65-67), defendant's challenge to his conviction will raise multiple purely state-law issues that will likely predominate over the limited federal issues that are the sole basis for removal.[2] Many of those issues, if resolved in

---

[2] *See, e.g.,* JA-559-589 (decision on defendant's omnibus motion, including claims regarding statute of limitations, multiplicitous counts, violations of grand jury secrecy, the People's Certificate of Compliance, and motion to compel the People to provide additional particulars); JA-648-661 (decision on People's motions in limine to exclude various forms of evidence or arguments and to introduce prior bad acts); JA-1013-1024 (decision on

(Continued…)

defendant's favor, could potentially be outcome-dispositive, obviating any resolution of the federal defenses of presidential immunity and preemption. Moreover, if this case were removed, this Court would likely certify some of those questions to the New York Court of Appeals. The sheer number of hotly contested state-law issues that defendant is likely to raise provides compelling reason to allow his appeal to proceed as normal through the state courts, rather than through the federal courts. *See Georgia v. Meadows*, 692 F. Supp. 3d 1334, 1340 (N.D. Ga. 2023) (noting that "the federal and state interests at issue" at issue in a criminal case "actually favor the resolution of his case in the State Court, rather than federal court").

Indeed, even defendant's purported federal defenses are intertwined with state-law issues or other issues that would not support removal. For example, as the state trial court noted in its decision on defendant's CPL § 330.30 motion, defendant failed to preserve many of his federal claims about the alleged inadmissibility of purported official-acts evidence (Add. 35-42), and any error in that regard was harmless in any event (Add. 61-64). Preservation is a matter of state law, *cf. Whitley v. Ercole*, 642 F.3d 278, 286 (2d Cir. 2011) (failure to preserve is an independent and adequate state ground), and the question of whether other evidence of defendant's guilt was overwhelming would not by itself warrant federal removal. Similarly, defendant's federal

---

defendant's motion to recuse); JA-1111-1115 (decision on defendant's motion to recuse); *People v. Trump*, Ind. No. 71542-23, Decision and Order on Defendant's Motions In Limine (Mar. 18, 2024) (ruling on defendant's applications to preclude evidence and arguments), *available at* https://tinyurl.com/mwpdf258 (last accessed April 25, 2025).

preemption claim—that a violation of the Federal Election Campaign Act (FECA) cannot constitute "unlawful means" under N.Y. Election Law § 17-152 (U.S. Amicus: 16)—is intertwined with two preliminary state-law questions: (1) whether Election Law § 17-152 can be an object crime for the charged offense of falsifying business records under N.Y. Penal Law § 175.10; and (2) whether the jury could have relied on other "unlawful means" having nothing to do with FECA, as they were instructed they could do.[3] The fact that these state-law issues may obviate or fundamentally affect the resolution of defendant's asserted federal defenses provides further ground for finding lack of good cause for removal here.

Removal at this late stage would also be unnecessarily cumbersome as a procedural matter, especially when, as the Supreme Court has already recognized, defendant's challenges to his conviction "can be addressed in the ordinary course on appeal" in the state courts (Add. 89). As the United States acknowledges (U.S. Amicus: 19), removal would shift this entire case to federal court. But it would also require a host of additional procedures: potential further briefing on good cause under 28 U.S.C. § 1455(b), if this Court disagrees with the district court's application of that standard; briefing and potential interlocutory appeals over the district court's resolution of the People's motion to remand; and certification of state-law issues to the New York Court of Appeals, which will require full briefing and argument in that court, as well as

---

[3] *People v. Trump*, Ind. No. 71542-23, Jury Instructions 31-34, *available at* https://tinyurl.com/bdhsdwm8 (last accessed April 24, 2025).

additional briefing and argument back in this Court after the state court rules. *Cf. Carroll v. Trump*, 66 F.4th 91, 92-93 (2d Cir. 2023) (describing procedural history of certified questions in a removed case). All of this additional procedure is simply unnecessary when defendant can raise all of his federal defenses in his direct appeal, including to the Supreme Court (RB: 26-27).

Finally, although the United States cites the general principle that federal removal should be available in light of potential hostility by state courts to federal policies or federal defendants (U.S. Amicus: 11), it is telling that amicus identifies no basis whatsoever for finding that any such hostility has been present in this case. To the contrary, the state trial and appellate courts have bent over backwards to accommodate defendant, his invocation of federal interests, and his desire to litigate his federal defenses. For example, before trial, defendant was able to pursue emergency litigation in the Appellate Division on, among other issues, his request to "to exclude evidence based on the doctrine of presidential immunity." *Matter of Trump v. Merchan*, 227 A.D.3d 569, 571 (1st Dep't 2024). After the Supreme Court decided *Trump v. United States*, the state trial court adjourned sentencing to allow defendant to file a motion based on that decision (Add. 17-18). When defendant sought a further adjournment in light of the presidential election, the trial court granted that request (Add. 22-25). After the trial court scheduled sentencing for January 10, 2025 (Add. 85), defendant was able to pursue emergency litigation to stay that sentencing in the Appellate Division, New York Court of Appeals, and Supreme Court (Add. 86-89). And when the trial court ultimately

-11-

imposed sentence, it expressly acknowledged that the "extraordinary legal protections afforded by the Office of the Chief Executive is a factor that overrides all others" and accordingly imposed a sentence of an unconditional discharge in order to avoid "encroaching upon the highest office in the land" (Add. 110, 112). The complete absence of any hostility to federal interests by the New York courts provides yet more reason to decline to find good cause to allow an untimely second notice of removal here and to require defendant to pursue his arguments through the state-court system that has already proven willing and able to responsibly address his arguments.

## POINT II

## DEFENDANT IS NOT ENTITLED TO FEDERAL-OFFICER REMOVAL

Because the only question squarely presented in this appeal is whether the district court abused its discretion in finding lack of good cause under 28 U.S.C. § 1455(b), this Court need not address the United States' arguments about whether "the threshold requirements for removal under 28 U.S.C. § 1442(a)" have been satisfied (U.S. Amicus: 12). To the extent this Court were to reverse the district court's finding of lack of good cause, the appropriate next step would be for the parties to brief the question of remand below, including the availability of federal-officer removal here.

Nonetheless, as the People have previously argued (RB: 27-40), this Court could *affirm* the district court's order on the ground that defendant's motion for leave to file

an untimely second notice failed to identify any new grounds for removal. None of the United States' arguments foreclose this avenue of affirmance.

First, as discussed in detail in the People's main brief (RB: 34-40), the evidence at issue here simply did not constitute the kind of official-acts evidence to which the relevant holding of *Trump v. United States* would apply. The United States does not engage at all with the critical details of the actual testimony at issue, instead making the conclusory claim that defendant's "conversations in the Oval Office with the Attorney General and the White House Communications Director . . . facially involve official acts" (U.S. Amicus: 14).[4] But the Supreme Court has made clear that the official identity of a President's interlocutor does not by itself make every conversation an "official act[] for which the President is immune," *Trump*, 603 U.S. at 631; *see id.* at 623-624 (not all of a President's discussions with his Vice President would qualify as official conduct subject to absolute immunity). And contrary to the United States' unsupported assertion that defendant's conversations in the White House "facially involve[d] official acts" (U.S. Amicus: 14), the People have established, and the state trial court agreed, that all of the relevant conversations here "manifestly pertain[ed] to unofficial or private conduct" (Add. 45-51; *see also* RB: 36-37).

---

[4] Although the United States refers to defendant's conversations with the Attorney General, no such conversations were actually presented at trial (JA-933-936 (People's Memorandum of Law in Opposition to Defendant's Post-Trial Motion)).

Second, the United States does not dispute that the criminal charges in this case—which pertained to hush-money payments meant to ensure the silence of an adult firm star with whom defendant had an affair, and defendant's falsification of a private enterprise's records to conceal the nature of the transaction—simply did not "relat[e]" to defendant's official acts as President (RB: 28-34). Instead, amicus asserts that a relationship to an official act can be established when a federal official "challenges the use of official-act evidence in the state proceeding" (U.S. Amicus: 13). But the United States cites no case for the proposition that the mere introduction of evidence concerning official acts is enough to make a "criminal prosecution . . . for or relating to any act under color of [federal] office." 28 U.S.C. § 1442(a)(1). Even the federal cases that have recognized that Congress's addition of the phrase "relating to" broadened the availability of federal-officer removal have nonetheless required a much closer "connection between the charged conduct and the asserted official authority" than the United States or defendant can identify here. *Mayor & City Council of Baltimore v. BP P.L.C.*, 31 F.4th 178, 234 (4th Cir. 2022) (finding "too tenuous" "the relationship between Baltimore's claims and any federal authority" over defendants' actions); *compare Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 296 (5th Cir. 2020) (finding relationship where defendant failed to warn of dangers of asbestos while refurbishing Navy ship). Here, there is no such connection because the purportedly official acts at issue do not constitute the charged conduct itself, but instead involved, for example, defendant's

subsequent discussions *about* the charged conduct after he became President (*e.g.*, RB: 36-37).

Third, the United States makes no mention of the fact that, when defendant sought to file his untimely second notice of removal, he was not a *current* federal officer, but only a *former* federal officer. As the Eleventh Circuit has recently held, federal-officer removal under 28 U.S.C. § 1442(a) is available only to current, not former, officers. *Georgia v. Shafer*, 119 F.4th 1317, 1320 (11th Cir. 2024); *Georgia v. Clark*, 119 F.4th 1304, 1307 (11th Cir. 2024); *State v. Meadows*, 88 F.4th 1331, 1338 (11th Cir. 2023).

Finally, the United States briefly mentions defendant's preemption argument as another plausible "federal defense" (U.S. Amicus: 19). However, as explained in the People's main brief (RB: 50-51), defendant already raised that issue in his first notice of removal; he chose not to appeal the district court's remand order, which rejected his preemption argument as a basis for removal; and he failed to provide any reason in his motion below to be allowed to relitigate that same issue as part of a second removal proceeding. The absence of good cause to raise this defense is particularly striking because, unlike with defendant's immunity argument, no intervening case law materially affected the preemption analysis. On this claim, defendant has thus failed to justify any exemption from the general rule that "a second notice may be filed only on grounds not existing at the time of the original notice." 28 U.S.C. § 1455(b)(2).

## CONCLUSION

This appeal should be dismissed, or the order of the district court should be affirmed.

Respectfully submitted,

ALVIN L. BRAGG, JR.
District Attorney
New York County

BY: _____
JOHN T. HUGHES
Assistant District Attorney

STEVEN C. WU
  Chief, Appeals Division
JOHN T. HUGHES
  Assistant District Attorney
    Of Counsel

April 25, 2025

## CERTIFICATE OF COMPLIANCE

The word count for this brief is 3947, excluding the Table of Contents and Table of Authorities. The word processing system used to prepare this brief and to calculate the word count was Microsoft Word 365. The brief is printed in Garamond, a serifed, proportionally spaced typeface. The type size is 14 points in the text and headings, and 13 points in the footnotes. I certify that the brief complies with Rule 32(a)(5)-(7) and Local Rule 32.1.

_____
John T. Hughes