# 24-2299

### In the United States Court of Appeals for the Second Circuit

PEOPLE OF THE STATE OF NEW YORK,

*Plaintiff-Appellee,*

–v.–

PRESIDENT DONALD J. TRUMP,

*Defendant-Appellant.*

On Appeal from the United States District Court for the
Southern District of New York (No. 23-cv-3773)
(Hon. Alvin K. Hellerstein)

**SUPPLEMENTAL BRIEF FOR DEFENDANT-APPELLANT IN RESPONSE TO BRIEF FOR UNITED STATES AS *AMICUS CURIAE***

JEFFREY B. WALL
MORGAN L. RATNER
SULLIVAN & CROMWELL LLP
1700 New York Ave. NW
Washington, DC 20006
(202) 956-7500

ROBERT J. GIUFFRA, JR.
MATTHEW A. SCHWARTZ
JAMES M. MCDONALD
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000

*Counsel for Defendant-Appellant President Donald J. Trump*

## TABLE OF CONTENTS

*Page*

**ARGUMENT** ..................................................................................................... 1

**I.**     **THE UNITED STATES PERSUASIVELY EXPLAINS WHY THIS APPEAL IS NOT MOOT** ............................................................... 1

**II.**    **THE UNITED STATES CONFIRMS THAT PRESIDENT TRUMP HAD GOOD CAUSE TO FILE HIS POST-TRIAL REMOVAL NOTICE** ............................................................................... 6

       A.    President Trump's Post-Trial Removal Notice Satisfied The Requirements Of The Federal-Officer Removal Statute ........................................................................................ 6

       B.    President Trump Had Good Cause To Seek Removal After Trial ................................................................... 8

**CONCLUSION** ................................................................................................ 12

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Caterpillar Inc.* v. *Lewis*,
   519 U.S. 61 (1996)..................................................................................8

*Harris* v. *U.S. Dep't of Transp. FMCSA*,
   122 F.4th 418 (D.C. Cir. 2024)............................................................3, 6

*Reilly* v. *Waukesha Cnty.*,
   993 F.2d 1284 (7th Cir. 1993)...............................................................10

*Trump* v. *United States*,
   603 U.S. 593 (2024)............................................................................7, 8

*United States* v. *Edwards*,
   834 F.3d 180 (2d Cir. 2016)....................................................................2

**Statutes**

12 U.S.C. § 632 ...........................................................................................2

28 U.S.C.
   § 1442................................................................................................3, 7
   § 1455............................................................................................1, 2, 9

N.Y. Election Law § 17-152 .......................................................................5

**Other Authorities**

16 Moore's Federal Practice Civil § 107.141..............................................6

## ARGUMENT

The United States's *amicus* brief confirms that the federal-officer removal statute permits post-judgment removal. *See* U.S. Br. 7-12. The United States's brief also underscores that permitting removal of DANY's criminal prosecution of President Trump to federal court is "essential to protecting the autonomy and independence of the federal government from state interference." U.S. Br. 15; *see id.* at 12-17. DANY's 15-page response brief—which functions as a thinly veiled sur-reply—does not undermine either conclusion.

### I. THE UNITED STATES PERSUASIVELY EXPLAINS WHY THIS APPEAL IS NOT MOOT.

As President Trump explained in his reply (at 4-12), this appeal remains live because the federal-officer removal statute authorizes removal after a state court enters judgment in a criminal case. The United States agrees.

The United States correctly begins (at 8) with the "plain language of [28 U.S.C.] Section 1455(b)," which provides that federal officers may remove a state criminal prosecution "'at a later time' than the [general] time limit provided in the rule, which otherwise expires before trial, 'for good cause shown.'" In response, DANY says (at 3) that this language is "silent" on whether a case may be removed post-judgment. That is wrong. The statute

expressly authorizes a defendant, upon good cause, to remove any "pending" prosecution "at a later time" than "before trial." 28 U.S.C. § 1455(a), (b)(1). A case is still "pending" after sentencing while on appeal, Def. Reply Br. 6, and removal in such a case occurs "at a later time" than "before trial." The statutory text thus plainly permits a post-judgment removal for good cause.

Even if the statute *were* silent about post-judgment removal, that silence would still speak volumes. Congress knows how to require removal before a particular deadline. The Federal Reserve removal statute, for example, limits removal to "any time *before the trial*." 12 U.S.C. § 632 (emphasis added); *see* Def. Reply Br. 7-8. By contrast, the federal-officer removal statute expressly permits removal "at a later time" than "before trial."

Ignoring the controlling statutory text itself, DANY suggests (at 2) that there are other "statutory indicia that Congress intended for removal of criminal cases to happen before sentencing." But DANY's mishmash of weak structural inferences cannot overcome Section 1455(b)'s plain text. *See United States* v. *Edwards*, 834 F.3d 180, 192 (2d Cir. 2016) ("Where the statutory text is unambiguous, no further inquiry is necessary."). President Trump has already made clear in his reply (at 8-12) why DANY's position does not actually follow from the handful of provisions they cite.

The United States also rightly points out (at 8-10) that decisions from other circuits unanimously support the availability of post-judgment removal under the federal-officer removal statute. DANY responds (at 4) that none of those cases is controlling because they were civil, not criminal. But that distinction makes no difference. For example, the court in *Harris* v. *U.S. Department of Transportation FMCSA*, 122 F.4th 418, 422-424 (D.C. Cir. 2024), authorized post-judgment removal under the same removal statute at issue here, which applies to "[a] civil action *or criminal prosecution* that is commenced in a State court." 28 U.S.C. § 1442(a) (emphasis added).

DANY also claims (at 4) that civil litigation has "unique features" that "*may* justify post-final-judgment removal in ways that do not translate to the distinctive context of criminal prosecutions" (emphasis added). For starters, that is not what Congress wrote in the statute, nor a distinction on which any court has relied. Indeed, if there were a distinction (which there is not), it would run the other way—Congress would be *most* concerned about the serious risk to life and limb, and the accompanying interference with federal supremacy, that follow from state criminal prosecution of federal officers. As the United States explains (at 10, 18), Congress might have had many scenarios in mind when authorizing post-judgment removal in criminal cases.

3

For example, after judgment, Congress might enact a new statute, the U.S. Supreme Court could issue a landmark decision (as happened here), or prosecutors could introduce evidence that implicates an evidentiary immunity (as they did here). The "very point of the statutory 'good cause' standard is to provide a safety valve" if those circumstances arise. U.S. Br. 18.

The United States also explains why this safety valve is critical to avoid gamesmanship by state and local prosecutors, who may at times be "'hostile' to federal policies and federal officers," "particularly during 'periods of national stress.'" U.S. Br. 11 (quoting *Willingham* v. *Morgan*, 395 U.S. 402, 405 (1969)). DANY responds (at 6, 11-12) with a defense of "New York's criminal procedures," but that is a non-sequitur. The issue is what Congress intended in a statute that applies to all 50 States, and to a host of local prosecutors with varying incentives and audiences. At any rate, DANY's self-serving praise of the New York courts' handling of this matter overlooks that the trial court abused its discretion in failing to recuse and made many other egregious legal and evidentiary rulings. *See* JA 448-451, 455-459, 487-493.

In fact, this case exemplifies the United States's concerns (at 10-11) about the possibility of hostile treatment by state and local prosecutors if post-judgment removal is unavailable—the same concerns that led Congress to

enact the removal statute in the first place. As President Trump will show on his direct appeal, the Federal Election Campaign Act (FECA) preempts the application of state election law to Presidential campaigns and required removal of this prosecution. When President Trump first removed this case pre-trial, DANY persuaded the district court that there was no colorable federal preemption defense by claiming that "the mere possibility . . . that a verdict here may rely on [New York] Election Law § 17-152" was "too speculative," because DANY intended to present other first-layer predicate offenses, such as alleged tax violations or supposed falsification of other business records. JA 282-283; *see* JA 480-481, Def. Reply Br. 30. Yet at the very end of trial, DANY abandoned all those other predicates that it cited to avoid pre-trial removal and put to the jury only the Election Law § 17-152 predicate. DANY still has nothing to say in defense of its obvious (and highly prejudicial) bait-and-switch. This Court should not permit DANY to avoid removal now after having misled the district court to avoid removal pre-trial.

Finally, the United States explains (at 11 n.1) that because post-judgment removal is available, this case is not moot: the "district court can grant leave to file a second [removal] notice, adopt the judgment of the state trial court as its own, and transfer the case to this Court for appellate

5

proceedings." The Court should direct that this procedure be followed here after reversal of the district court's order denying President Trump leave to file his post-trial removal notice. *See* Def. Reply Br. 10-11. In protesting (at 3) that this procedure would be "novel," DANY ignores the many cases authorizing that exact approach under this and similar statutes. *See Harris*, 122 F.4th at 428 (Henderson, J., concurring) (collecting cases); 16 Moore's Federal Practice Civil § 107.141 (same).

## II. THE UNITED STATES CONFIRMS THAT PRESIDENT TRUMP HAD GOOD CAUSE TO FILE HIS POST-TRIAL REMOVAL NOTICE.

### A. President Trump's Post-Trial Removal Notice Satisfied The Requirements Of The Federal-Officer Removal Statute.

The United States is also correct (at 12-16) that President Trump presented at least two federal arguments—Presidential immunity and FECA preemption—that easily exceed the "appropriately low" bar of a "colorable" defense and therefore entitled him to remove. DANY ignores that governing standard of review, opting instead to rehash merits arguments that President Trump has addressed, *see* Def. Reply Br. 14-26.

DANY's two other arguments fare no better. *First*, DANY contends that "no case" stands for the "proposition that the mere introduction of evidence concerning official acts is enough to make a 'criminal prosecution . . .

6

for or relating to'" such acts under the statute. Br. 14 (quoting 28 U.S.C. § 1442(a)(1)). That proves nothing, because no case says the opposite either; this is a question of first impression. Not surprisingly, no court has had to examine how the federal-officer removal statute applies to the evidentiary immunity and "peculiar constitutional concerns implicated in the prosecution of a former [and current] President" following the landmark decision in *Trump* v. *United States*, 603 U.S. 593, 631 (2024), issued just last year. *See* Def. Reply Br. 18-19. As both President Trump and the United States have explained, the statutory text confirms that Congress intended to authorize removal in exactly this sort of circumstance. *See* Def. Reply Br. 14-19; U.S. Br. 12-14. Tellingly, DANY never engages with the merits of those arguments.

*Second*, DANY says (at 15) that federal-officer removal is "available only to current, not former, officers," and that President Trump was "only a *former* federal officer" when he sought leave to remove post-trial. But DANY has forfeited that argument, which it did not raise before the district court and did not make in its merits brief before this Court.

DANY's argument is also wrong: States cannot escape federal-officer removal by waiting until the defendant is out of office to bring a prosecution that would undeniably be eligible for removal. As the district court explained,

7

"the very purpose of the Removal Statute is to allow federal courts to adjudicate challenges to acts done under color of federal authority." JA 416. At a minimum, federal-officer removal must be available to a former President in light of the Supreme Court's holding that "the nature of Presidential power requires that a *former President*" be immune "from criminal prosecution for his official acts *during his tenure in office*." *Trump*, 603 U.S. at 606 (emphasis added). Finally, even if removal were available only to current federal officers, President Trump is now a federal officer once more. *See* Def. Reply Br. 16 n.3; *Caterpillar Inc.* v. *Lewis*, 519 U.S. 61, 73, 77 (1996) (lack of complete diversity at time of removal can be cured before final judgment).

**B. President Trump Had Good Cause To Seek Removal After Trial.**

The submissions from the United States and DANY also confirm that President Trump had the necessary "good cause" to file his removal notice after trial because he had no opportunity to raise either his Presidential immunity defense or his FECA preemption defense at any earlier time. Def. Reply Br. 27-31.

1. The United States focuses (at 16-19) on Presidential immunity. As it correctly maintains (at 17), good cause for post-trial removal exists because "[n]either the existence nor the parameters of that special evidentiary

8

immunity were established before the prosecutors here introduced evidence of President Trump's official acts." Without citing any authority, DANY disputes (at 8) that a "late-breaking legal development" from the Supreme Court is good cause for removal. But both analogous precedent and the federal-officer removal statute confirm that if "grounds not existing at the time of the original [removal] notice" arise post-trial, that alone provides good cause to remove. Def. Reply Br. 27-28 (quoting 28 U.S.C. § 1455(b)(2)).

DANY also claims (at 9) that there was no good cause here because President Trump's immunity defense is "intertwined with state-law issues or other issues that would not support removal." That too is incorrect. DANY points to its argument that any violation of Presidential evidentiary immunity was "harmless." But that is a federal-law, not state-law, issue. DANY's harmlessness argument is also meritless, as President Trump has explained. *See* Def. Reply Br. 25 n.4. DANY separately claims (at 9) that President Trump "failed to preserve" his immunity argument, and that the trial court's preservation ruling is an adequate and independent state ground that precludes federal review. In fact, the state trial court found that President Trump properly objected to much of the evidence at issue, including testimony from White House Communications Director Hope Hicks and President

9

Trump's official Presidential statements on Twitter (now X). Dkt. 59.1 at 38-45, 58. Regardless, the trial court's ruling that other objections were not preserved is wrong and is entitled to no special preclusive effect. That ruling, like any other ruling of the trial court, can and should be reversed on appeal after removal. *See* Def. Reply Br. 9-10; *see, e.g.*, *Reilly* v. *Waukesha Cnty.*, 993 F.2d 1284, 1287 (7th Cir. 1993) ("A state court's decisions prior to removal are merged into the final judgment and may be reviewed on appeal" by a federal appellate court.).

2. On President Trump's FECA preemption defense, DANY has nothing to say in defense of its hide-the-ball tactics with the district court in opposing the President's first attempt at removal. *See* p. 5, *supra*. Instead, DANY says (at 8-10) that President Trump lacked good cause to remove based on FECA preemption because other "state-law issues may obviate or fundamentally affect the resolution" of that issue. But a federal court should not decline to exercise jurisdiction over a properly removed case just because removal may require it to examine issues of state law. That is common in removal cases. That President Trump has other meritorious arguments under state law—many of which arise out of the unprecedented, unlawful, and convoluted way DANY bent the law to fabricate a felony charge here—is not

a strike against removal. If anything, the novelty of DANY's legal theories confirms DANY's hostility toward President Trump and thus *supports* removal. In any event, given the strength of President Trump's Presidential immunity and FECA defenses, there may actually be no need for this Court to consider the state-law issues at all.

3. Finally, DANY claims (at 10, 12) that permitting President Trump to remove here would trigger "a host of additional procedures" that will slow this case down, including a remand to the district court to address (i) whether the requirements for federal-officer removal are met and (ii) whether President Trump had good cause to remove. But no such remand is warranted. The district court already denied President Trump's attempt to remove the case. That denial is now on appeal, where the parties (plus the United States) have extensively briefed the legal questions relevant to both (i) whether this case meets the low statutory bar for federal-officer removal (it does), and (ii) whether there was good cause to remove the case after trial (there was). This Court can and should resolve those legal questions now, and determine once and for all that this unprecedented criminal prosecution of a former and current President of the United States belongs in federal court.

The Court can then move to direct appellate review of that prosecution, using the procedure outlined above. *See* pp. 5-6, *supra*.

## CONCLUSION

The Court should reverse the district court's order denying President Trump leave to file the removal notice and remand for the district court to enter an order to permit this Court's direct appellate review of this prosecution of President Trump.

Respectfully submitted,

/s/ *Robert J. Giuffra, Jr.*
ROBERT J. GIUFFRA, JR.
MATTHEW A. SCHWARTZ
JAMES M. MCDONALD
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000

JEFFREY B. WALL
MORGAN L. RATNER
SULLIVAN & CROMWELL LLP
1700 New York Ave. NW
Washington, DC 20006
(202) 956-7500

*Counsel for Defendant-Appellant President Donald J. Trump*

MAY 6, 2025

## CERTIFICATE OF COMPLIANCE

This Brief contains 2,458 words. This Brief complies with the requirements of Federal Rule of Appellate Procedure 32(a) because it was prepared in 14-point font using a proportionally spaced typeface.

/s/ *Robert J. Giuffra, Jr.*
ROBERT J. GIUFFRA, JR.

MAY 6, 2025