# No. 24-2299

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

PEOPLE OF THE STATE OF NEW YORK,
*Plaintiff-Appellee,*

v.

DONALD J. TRUMP,
*Defendant-Appellant.*

On Appeal from the United States District Court
for the Southern District of New York

**BRIEF FOR THE UNITED STATES AS AMICUS CURIAE
IN SUPPORT OF DEFENDANT-APPELLANT**

YAAKOV M. ROTH
  *Acting Assistant Attorney General*

ERIC D. McARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
MICHAEL S. RAAB
MAXWELL A. BALDI
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7513*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-1754*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................ ii

INTEREST OF THE *AMICUS CURIAE* ...................................................... 1

STATEMENT OF THE CASE ........................................................................ 1

    A.    Statutory Background ....................................................................... 1

    B.    Factual Background and Prior Proceedings ................................... 3

ARGUMENT ................................................................................................. 7

THIS CASE WAS PROPERLY REMOVED TO FEDERAL COURT. .................... 7

    A.    The federal officer removal statute permits removal after entry of judgment and sentencing. ............................................................. 7

    B.    The post-trial removal notice adequately alleges that the state prosecution relates to official acts and adequately raises a colorable federal defense. ............................................................. 12

    C.    Good cause exists for post-trial removal. ...................................... 16

CONCLUSION .............................................................................................. 20

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases:**                                                              **Page(s)**

*Agyin v. Razmzan,*
986 F.3d 168 (2d Cir. 2021) ........................................................................ 15

*Arizona v. Manypenny,*
451 U.S. 232 (1981) ................................................................................ 2, 10

*Chafin v. Chafin,*
568 U.S. 165 (2013) ...................................................................................... 11

*Dart Cherokee Basin Operating Co. v. Owens,*
574 U.S. 81 (2014) ........................................................................................ 15

*Davis v. South Carolina,*
107 U.S. 597 (1883) ........................................................................................ 2

*FDIC v. Keating,*
12 F.3d 314 (1st Cir. 1993) ............................................................................ 9

*Glenn v. Tyson Foods, Inc.,*
40 F.4th 230 (5th Cir. 2022) ........................................................................ 13

*Griffith v. Kentucky,*
479 U.S. 314 (1987) ...................................................................................... 10

*Harris v. U.S. Dep't of Transp. FMCSA,*
122 F.4th 418 (D.C. Cir. 2024) .............................................................. 8, 9, 12

*Isaacson v. Dow Chem. Co.,*
517 F.3d 129 (2d Cir. 2008) .............................................................. 14, 15, 16

*Jefferson County v. Acker,*
527 U.S. 423 (1999) .................................................................. 1, 2, 7, 14, 16

*Latiolais v. Huntington Ingalls, Inc.,*
951 F.3d 286 (5th Cir. 2020) ........................................................................ 13

*Martin v. Hunter's Lessee,*
14 U.S. (1 Wheat.) 304 (1816) ...................................................................... 11

*Mesa v. California,*
489 U.S. 121 (1989) .............................................................................. 2, 12, 14

*Meyerland Co., In re,*
  960 F.2d 512 (5th Cir. 1992) ................................................ 9

*Morales v. Trans World Airlines, Inc.,*
  504 U.S. 374 (1992) ................................................... 13, 14

*Pennsylvania v. Newcomer,*
  618 F.2d 246 (3d Cir. 1980) ................................................ 2

*Plaquemines Par. v. BP Am. Prod. Co.,*
  103 F.4th 324 (5th Cir. 2024) ............................................. 19

*Resolution Tr. Corp. v. BVS Dev., Inc.,*
  42 F.3d 1206 (9th Cir. 1994) .............................................. 9

*Savers Fed. Sav. & Loan Ass'n, In re*
  872 F.2d 963 (11th Cir. 1989) ............................................ 9

*Sawyer v. Foster Wheeler LLC,*
  860 F.3d 249 (4th Cir. 2017) ............................................. 19

*Stirling v. Minasian,*
  955 F.3d 795 (9th Cir. 2020) .............................................. 2

*Tennessee v. Davis,*
  100 U.S. 257 (1880) ....................................................... 2

*Trump v. United States,*
  603 U.S. 593 (2024) ................................ 4, 5, 12, 13, 14, 16-17, 17

*United States v. Johnson,*
  383 U.S. 169 (1966) ...................................................... 18

*Willingham v. Morgan,*
  395 U.S. 402 (1969) ........................................ 2, 10, 11, 14, 15

**Statutes:**

Removal Clarification Act of 2011,
  Pub. L. No. 112-51, § 2(b)(1)(A), 125 Stat. 545, 545 .................... 12

12 U.S.C. § 1819(b)(2)(B) ................................................ 9

28 U.S.C. § 1442 ......................................................... 1

28 U.S.C. § 1442(a) .......................................................................................... 2, 12

28 U.S.C. § 1442(a)(1) .......................................................... 1, 2, 4, 7, 8, 12

28 U.S.C. § 1455(b)(1) ........................................................... 3, 5, 8, 16

28 U.S.C. § 1455(b)(2) ................................................................................ 3

28 U.S.C. § 1455(b)(3) ................................................................................ 3

52 U.S.C. § 30143(a) .................................................................................. 16

N.Y. Elec. Law § 17-152 ........................................................................ 16

N.Y. Penal Law § 175.05 ............................................................................ 3

N.Y. Penal Law § 175.10 ............................................................................ 3

**Other Authority:**

14C Charles A. Wright, et al., *Federal Practice and Procedure* § 3726
  (rev. 4th ed, June 2024 update) .................................................... 19

## INTEREST OF THE *AMICUS CURIAE*

This case involves the scope of the federal officer removal statute, 28 U.S.C. § 1442. The Department of Justice represents agencies, federal officers, and federal employees who face personal legal risk under state law on account of their federal offices and responsibilities. Section 1442 was enacted for the protection of federal entities and officers and those enlisted by the federal government to perform federal tasks. The statute is a critical tool deployed in cases commenced in state court to ensure that federal defendants have a federal forum to resolve their federal defenses— including, as here, an evidentiary immunity under the Constitution of the United States. Accordingly, the United States has a strong and direct interest in the issues presented in this appeal.

## STATEMENT OF THE CASE

### A.    Statutory Background

The federal-officer removal statute, 28 U.S.C. § 1442, authorizes the United States, a federal agency, a federal officer, or any person acting under a federal officer to remove a "civil action or criminal prosecution" that is "for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue." *Id.* § 1442(a)(1). Suits that fall within the scope of Section 1442(a) may be removed even when the federal question arises only by way of a defense to a state law claim. *See Jefferson County v. Acker*, 527 U.S. 423, 431 (1999). The

federal officer removal statute reflects Congress's desire to ensure that state prosecutors and state courts cannot wield state judicial processes to interfere with the operations of the federal government. *See Willingham v. Morgan*, 395 U.S. 402, 406 (1969); *Tennessee v. Davis*, 100 U.S. 257, 263 (1880). The statute guarantees to federal officers—from law enforcement agents, *e.g.*, *Davis v. South Carolina*, 107 U.S. 597 (1883), to postal workers, *e.g.*, *Pennsylvania v. Newcomer*, 618 F.2d 246 (3d Cir. 1980), to military attorneys, *e.g.*, *Stirling v. Minasian*, 955 F.3d 795 (9th Cir. 2020)—"a federal forum in any case where [they are] entitled to raise a defense arising out of [their] official duties." *Arizona v. Manypenny*, 451 U.S. 232, 241 (1981).

To remove an action to federal court successfully under the federal officer removal statute, a defendant must satisfy three requirements. First, the defendant must be a federal officer, a federal agency, or a person acting under a federal officer. 28 U.S.C. § 1442(a). Second, the defendant must assert a "colorable" federal defense. *Mesa v. California*, 489 U.S. 121, 129 (1989). And third, the defendant must establish that the suit is "for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1). In order to satisfy the third requirement, the defendant "must show a nexus, a causal connection between the charged conduct and asserted official authority." *Jefferson County*, 527 U.S. at 431 (cleaned up).

In a state criminal case, the notice of removal must be filed "not later than 30 days after the arraignment in the [s]tate court, or at any time before trial, whichever is earlier, except that for good cause shown the United States district court may enter an

order granting the defendant . . . leave to file the notice at a later time." 28 U.S.C. § 1455(b)(1). A second such notice "may be filed only on grounds not existing at the time of the original notice," although "[f]or good cause shown, the United States district court may grant relief from" that requirement. *Id.* § 1455(b)(2). "The filing of a notice of removal of a criminal prosecution shall not prevent the [s]tate court in which such prosecution is pending from proceeding further, except that a judgment of conviction shall not be entered unless the prosecution is first remanded." *Id.* § 1455(b)(3).

### B.  Factual Background and Prior Proceedings

1. In March 2023, a New York County grand jury returned an indictment charging President Donald J. Trump with 34 counts of falsifying business records, in violation of N.Y. Penal Law § 175.10. JA 23–38. That statute makes it a felony for any person, "with intent to defraud" that "includes an intent to commit another crime or to aid or conceal the commission thereof," to "[m]ake[] or cause[] a false entry in the business records of an enterprise." N.Y. Penal Law §§ 175.05, 175.10 (McKinney). As alleged in a statement of facts, JA 96–108, the criminal charges were based on reimbursements for payments made during the runup to the 2016 presidential election, which were recorded as attorney's fees in the business records of the Trump Organization. JA 102–05.

In May 2023, pursuant to the federal officer removal statute, President Trump removed the suit to the United States District Court for the Southern District of New

York.  JA 11–18.  His notice of removal was based on anticipated federal defenses involving preemption and presidential immunity.  JA 15–17.

The district court remanded the case to state court.  JA 407–31.  It determined that the federal officer removal statute had been improperly invoked because the state criminal proceeding was not "for or relating to any act under color of [the] office" of President, *see* 28 U.S.C. § 1442(a)(1), and because no colorable federal defense had been raised.  JA 417–30.  With respect to the immunity defense in particular, the court stated that "hiring and making payments to a personal attorney to handle personal affairs" could not be viewed as carrying out a constitutional duty of the President. JA 422–23.

The case proceeded to trial in state court, and the jury returned a verdict of guilty on all counts.  *See* Appellee's Add. 27.

2.  On July 1, 2024, after President Trump's state criminal trial, the Supreme Court held in *Trump v. United States*, 603 U.S. 593 (2024), that the President is entitled to absolute immunity from criminal prosecution with respect to the exercise of his "core constitutional powers," and that he is further entitled to "at least a presumptive immunity" from prosecution for acts within the "outer perimeter of his official responsibility."  *Id.* at 606, 614 (emphasis omitted).  The Supreme Court further held that, although the President is entitled to "no immunity" for his unofficial acts, *id.* at 615, evidence concerning the President's official acts for which he is immune from prosecution cannot be used to "prove his liability on any charge," even if the charge is

4

unrelated to the exercise of the President's official responsibilities, *id.* at 631. *See also id.* at 632 n.3 (acknowledging that a "prosecutor may point to the public record" to show that the President performed an official act but could not "admit testimony or private records of the President or his advisers probing the official act itself" which would "invite the jury to inspect the President's motivations for his official actions and to second-guess their propriety").

3. After the Supreme Court's decision in *Trump v. United States*, President Trump filed a post-trial motion in state court to dismiss the indictment and vacate the jury's verdict based on presidential immunity. JA 846–900. On August 29, 2024, before the state court ruled on that motion, President Trump sought leave to file a second removal notice in the U.S. District Court for the Southern District of New York. JA 1139–40; *see also* JA 433–96 (removal notice). He argued that the State had improperly introduced evidence of official presidential acts in the criminal proceedings through testimony of witnesses Hope Hicks, Madeleine Westerhout, and Michael Cohen, and through social media posts and a financial disclosure form. JA 464–69. He further asserted that he was seeking a federal forum to litigate colorable immunity and preemption defenses. JA 470.

Days later, the district court denied the motion and declined to permit the removal notice to be filed. SPA 1–4. The court explained that because the notice was filed after President Trump had already been tried, he must show "good cause" for post-trial removal. SPA 1 (quoting 28 U.S.C. § 1455(b)(1)). The court rejected

President Trump's argument that the Supreme Court's post-trial decision on presidential immunity in *Trump v. United States* provided good cause for removal notwithstanding the conclusion of his trial, explaining that it had already analyzed the charged conduct in its previous removal order and determined that the reimbursements and business-record entries were "not related to a President's official acts." SPA 3 (cleaned up). The court stated that nothing in the Supreme Court's opinion affected that analysis or conclusion. SPA 3.

4. On December 16, 2024, the state trial court denied President Trump's post-trial motion on immunity. Appellee's Add. 27–67. The court explained that the state criminal charges "stem from the private acts of [President Trump] made prior to taking the Office of the President," which left only the question whether evidence of official acts had been used to convict him. Appellee's Add. 33. The court determined that President Trump had preserved a presidential immunity objection only with respect to certain evidence introduced at trial, *see* Appellee's Add. 35–42, but it nevertheless evaluated all of the challenged evidence and determined that none of it amounted to official-act evidence, Appellee's Add. 42–61. The court also determined that if any of the disputed evidence was admitted in error, the error was harmless. Appellee's Add. 61–64.

On January 10, 2025, the trial court sentenced President Trump to an unconditional discharge. Appellee's Add. 111–12. President Trump appealed that

judgment to the First Department of the Appellate Division. *See People v. Trump*,

Index No. 71543/2023 (N.Y. App. Div. appeal filed Jan. 29, 2025).

## ARGUMENT

## THIS CASE WAS PROPERLY REMOVED TO FEDERAL COURT.

The post-trial removal notice filed by President Trump satisfies the statutory

requirements. Section 1442(a)(1) permits a federal officer to remove a state criminal

prosecution after judgment has been entered and a sentence has been imposed in the

state court. The President's post-trial removal notice, which explains that evidence of

his official acts was improperly used to convict him of a state crime, establishes the

necessary "causal connection between the charged conduct and asserted official

authority," *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999) (cleaned up), and raises at

the very minimum a colorable federal defense. And the fact that it was not until after

the conclusion of his state criminal trial that the Supreme Court issued its landmark

decision defining the contours of presidential immunity—including a broad

evidentiary immunity prohibiting prosecutors from inviting a jury to probe a

President's official acts, as President Trump's removal notice alleges occurred here—

supplies good cause for post-trial removal.

### A. The federal officer removal statute permits removal after entry of judgment and sentencing.

The parties dispute whether the federal officer removal statute, 28 U.S.C.

§ 1442(a)(1), permits a federal officer to remove a state criminal prosecution to federal

court after the state trial is complete. The answer to that question is yes. The plain language of 28 U.S.C. § 1442(a)(1) allows removal of a criminal prosecution brought in state court after the judgment of conviction is entered and a sentence has been imposed. Section 1442(a)(1) applies to criminal prosecutions that are "commenced in a State court," and it allows such cases to be removed to the federal district court for the location where the state proceeding is pending. Nothing in the text of Section 1442(a)(1) or any other applicable statute limits the removal window to before the criminal sentencing.

Moreover, the plain language of Section 1455(b), which governs the removal procedure for criminal cases, provides that defendants are entitled to remove a criminal prosecution "at a later time" than the time limit provided in the rule, which otherwise expires before trial, "for good cause shown." 28 U.S.C. § 1455(b)(1). The statute imposes no outer limit on when the federal officer can remove his criminal case based on a showing of good cause, including after the federal officer has been convicted and sentenced.

Accordingly, the D.C. Circuit recently held that a federal officer may remove a pending state case to federal court even after the state trial court has imposed its judgment and the case has progressed to the court of appeals. *Harris v. U.S. Dep't of Transp. FMCSA*, 122 F.4th 418, 424 (D.C. Cir. 2024). The court rejected the plaintiff's argument that a case must remain pending, at the time of removal, in the state trial court where it was commenced. *Id.* at 422–23. The court explained that the

8

only statutory preconditions to removal are that the suit was commenced in state court and that it was directed against a qualifying federal official. *Id.* at 422. The case must still be pending somewhere to be removable, the court explained, but it need not be pending in the trial court. *Id.* at 422–23.

The D.C. Circuit's decision in *Harris* aligns with other cases that have addressed removal from a state appellate court to federal district court. For example, the Fifth Circuit has held that a statute authorizing the Federal Deposit Insurance Corporation (FDIC) to remove "any action, suit, or proceeding from a State court to the appropriate United States district court," 12 U.S.C. § 1819(b)(2)(B), permits the FDIC to remove an action to federal district court even if a state trial court had already issued its judgment and the case was pending in state appellate court at the time of removal. *In re Meyerland Co.*, 960 F.2d 512, 516–17 (5th Cir. 1992). The court determined that such post-judgment removal was proper because the removal statute "does not limit removable actions to those that have not yet reached a state trial court judgment, nor does it limit removable actions to those that come to the federal courts from a specific state court." *Id.* at 516. Other courts have reached the same conclusion about Section 1819(b)(2)(B), its predecessor statute, or similar removal statutes. *See FDIC v. Keating*, 12 F.3d 314, 316 (1st Cir. 1993) (per curiam) (collecting cases); *In re Savers Fed. Sav. & Loan Ass'n*, 872 F.2d 963, 966 (11th Cir. 1989) (interpreting predecessor to Section 1819); *Resolution Tr. Corp. v. BVS Dev., Inc.*, 42 F.3d 1206, 1211 (9th Cir. 1994) (collecting cases interpreting either the FDIC's or

the Resolution Trust Corporation's removal statute to permit removal after the state trial court has issued a judgment).

The D.C. Circuit's decision applying the reasoning of those cases to similar language in the federal officer removal statute is firmly grounded in the statutory text. It also fits with Section 1442(a)'s purpose to "ensure a federal forum in any case where a federal official is entitled to raise a defense arising out of his official duties," *Arizona v. Maypenny*, 451 U.S. 232, 241 (1981), and with the general principle that a criminal judgment is not final until a "judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied," *Griffith v. Kentucky*, 479 U.S. 314, 321 n.6 (1987).

From a larger perspective, moreover, it would be peculiar if the federal officer removal statute did not permit federal officials to remove state criminal cases after judgment in appropriate cases. As noted, the purpose of the federal officer removal statute is to ensure that federal officers have access to a federal forum for the litigation of federal defenses arising from their offices and official acts. *See Willingham v. Morgan*, 395 U.S. 402, 407 (1969). As this case illustrates, however, not every such federal defense is evident before trial. Perhaps Congress enacts a new statute while the trial is underway. Or perhaps the Supreme Court issues a new decision, as it did here. The text and structure of the federal officer removal statute reflect Congress's intent that federal officials in those circumstances should enjoy the same statutory right to access a federal forum.

10

To hold otherwise would risk incentivizing state and local prosecutors to manipulate trial dates and the timing of evidentiary submissions in the most high-profile of cases. As the Supreme Court has recognized, in our federal system, state and local officials are sometimes affirmatively "hostile" to federal policies and federal officers, particularly during "periods of national stress." *Willingham*, 395 U.S. at 405. State and local prosecutors have strong incentives to respond to the particularized interests and views of their local communities, but no comparable incentives to accord the requisite weight to the effect of their local decisions on the Nation as a whole. As the Court has explained, their decisions may be influenced by "state attachments, state prejudices, state jealousies, and state interests." *Martin v. Hunter's Lessee*, 14 U.S. (1 Wheat.) 304, 347 (1816). The potential for such improper considerations—which President Trump has argued influenced his proceedings, *see, e.g.*, Appellant's Br. 53–57—militates in favor of federal jurisdiction. In the absence of an explicit textual command, therefore, it would be extraordinary to construe the federal officer removal statute—which was enacted against this historical backdrop, and with an eye to preserving federal supremacy—to preclude a federal official from obtaining a federal forum solely because the state trial court has entered judgment.[1]

---

[1] Contrary to the State's suggestion (Br. 20–25), sentencing did not moot this appeal. "A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (cleaned up). Here, effective relief remains available to President Trump. The district court can grant leave to file a second remand notice, adopt the judgment of

*Continued on next page.*

**B. The post-trial removal notice adequately alleges that the state prosecution relates to official acts and adequately raises a colorable federal defense.**

President Trump's post-trial removal notice satisfies the threshold requirements for removal under 28 U.S.C. § 1442(a): the state prosecution is "for or relating to any act under color of [his federal] office," *see* 28 U.S.C. § 1442(a)(1), and President Trump has raised a colorable federal defense, *see Mesa v. California*, 489 U.S. 121, 129 (1989).

1. Because the post-trial removal notice asserts a federal evidentiary immunity specific to the President that was recognized by the Supreme Court in *Trump v. United States*, 603 U.S. 593, 631 (2024), President Trump is seeking removal of a state prosecution that "relat[es] to any act under color of [his] office" within the meaning of 28 U.S.C. § 1442(a)(1). Under the plain text of Section 1442(a)(1), a state criminal case may be removed to federal court even if the prosecution is not "for" the federal officer's official acts. In 2011, Congress amended the statute to provide that a federal officer may remove a state criminal prosecution "for *or relating to* any act under color of [his federal] office." 28 U.S.C. § 1442(a)(1) (emphasis added); *see* Removal Clarification Act of 2011, Pub. L. No. 112-51, § 2(b)(1)(A), 125 Stat. 545, 545. The use of official-act evidence to convict the President in a state criminal proceeding brings such a prosecution comfortably within the current version of Section

_____

the state trial court as its own, and transfer the case to this Court for appellate proceedings. *See Harris*, 122 F.4th at 422–24.

1442(a)(1) as a prosecution "relating to" official acts. *See Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 292 (5th Cir. 2020) (en banc) ("By the Removal Clarification Act, Congress broadened federal officer removal to actions, not just *causally* connected, but alternatively *connected* or *associated*, with acts under color of federal office.").[2]

In *Trump v. United States*, the Supreme Court recognized a special federal evidentiary immunity in light of the "peculiar constitutional concerns implicated in the prosecution of a former President." 603 U.S. at 631. Under that rule of immunity, evidence concerning the President's official acts from which he is immune from prosecution cannot be used to "prove his liability on any charge," even if the charge is unrelated to the exercise of the President's official responsibilities. *Id.*

It follows that a state criminal prosecution of a President "relat[es] to" his official acts when the President challenges the use of official-act evidence in the state proceeding. The Supreme Court has recognized that "[t]he ordinary meaning of the[] words ['relating to'] is a broad one—'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with.'" *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992). Here, as alleged in the President's notice of removal, New York prosecutors chose to prove their case by

---

[2] Congress's rejection of a causal nexus test for actual federal officers does not speak to whether a causal nexus is required for a federal *contractor* to be "acting under" a federal officer. *Compare Latiolais*, 951 F.3d at 292, *with Glenn v. Tyson Foods, Inc.*, 40 F.4th 230, 234 (5th Cir. 2022) (explaining that "acting under" a federal officer "typically involves subjection, guidance, or control." (cleaned up)).

introducing evidence of the President Trump's official acts. Prosecutors thereby brought their case "into association with or connection with" those presidential acts, *id.*, and thus within the ambit of the federal officer removal statute.

2. For many of the same reasons, President Trump has raised a colorable federal defense under *Mesa*, 489 U.S. at 129. At this stage of the proceedings, the defense must only be "colorable"; it need not be "clearly sustainable." *Jefferson County v. Acker*, 527 U.S. 423, 432 (1999) (cleaned up); *see Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 138–39 (2d Cir. 2008). The "colorable" standard is appropriately low. As the Supreme Court has stressed, a federal officer need not "win his case before he can have it removed," because "[o]ne of the primary purposes of the removal statute" is "to have [federal] defenses litigated in the federal courts." *Willingham*, 395 U.S. at 407.

President Trump has made that threshold showing. He has identified certain categories of the State's trial evidence, including testimony about his conversations in the Oval Office with the Attorney General and the White House Communications Director, that facially involve official acts. Appellant's Br. 40–47; Appellant's Reply Br. 20–24. Indeed, in the *Trump* decision itself, the Supreme Court held that the President's conversations with the Attorney General were official acts that could not be introduced as evidence of criminal liability. *See Trump*, 603 U.S. at 619–20 (holding that the President's conversations with the Attorney General involved official acts). The notice of removal plausibly alleges that prosecutors introduced prohibited official-act evidence in the state criminal trial and urged the jury to draw inferences of

guilt from it. Given those specific allegations, and in light of the Supreme Court's decision in *Trump*, President Trump has established, at the very minimum, a "colorable" federal defense on appeal. *See Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 87 (2014) (holding that the same rules for evaluating complaints apply to evaluating notices of removal); *Agyin v. Razmzan*, 986 F.3d 168, 181 (2d Cir. 2021) (applying *Dart* to removal under Section 1442). As this Court has recognized, "[c]ourts have imposed few limitations on what qualifies as a colorable federal defense," other than the asserted interest must be "defensive" and "based in federal law." *Isaacson*, 517 F.3d at 138 (cleaned up). Those minima are plainly present here.

The State will remain free, of course, to argue in federal court that any evidentiary use of President Trump's official acts was somehow acceptable under the *Trump* immunity decision. The point for present purposes is that federal law guarantees the President a federal forum to assert that defense, just as it guarantees every federal agency and officer a federal forum for the adjudication of federal defenses. Section 1442 reflects Congress's judgment that, in our federal system, providing such a federal forum is essential to protecting the autonomy and independence of the federal government from state interference. A federal forum is especially vital for the preservation of official immunities, such as the evidentiary immunity that President Trump asserts here. "[O]ne of the most important reasons for [federal officer] removal is to have the validity of the defense of official immunity tried in a federal court." *Willingham*, 395 U.S. at 407.

15

As explained in his briefs, Appellant's Br. 63–67, Appellant's Reply Br. 25–26, President Trump also raises a defense of federal preemption: specifically, that the predicate "other crime" necessary to transform the charge of making a false business-record entry into a state-law felony required proof, in this case, of a conspiracy to prevent the election of any person to a public office by "unlawful means," *see* N.Y. Elec. Law § 17-152 (McKinney), and that the State's theory of "unlawful means" included a violation of the contribution cap for presidential candidates under the Federal Election Campaign Act, which contains an express preemption provision, *see* 52 U.S.C. § 30143(a). That preemption defense likewise exceeds the appropriately low "colorable" standard for removal so that a federal court can address the defense on its merits. *Jefferson County*, 527 U.S. at 432; *Isaacson*, 517 F.3d at 138.

### C. Good cause exists for post-trial removal.

Finally, President Trump's post-trial removal notice is timely. For a state criminal case, the notice of removal must be filed "not later than 30 days after the arraignment in the State court, or at any time before trial, whichever is earlier, except that for good cause shown the United States district court may enter an order granting the defendant . . . leave to file the notice at a later time." 28 U.S.C. § 1455(b)(1). The statute imposes no outer time limit on a federal court's authority to grant leave for a removal notice filed "at a later time," as long as good cause exists.

Good cause for post-trial removal exists here. It was not until after the state criminal trial that the Supreme Court issued its landmark decision in *Trump v. United*

*States*, 603 U.S. 593 (2024). That decision resolved, for the first time in our Nation's history, the constitutional immunity from criminal prosecution that shields the official acts of the small number of people who will ever hold the office of President of the United States. The Court in *Trump* further explained, in light of the "peculiar constitutional concerns implicated in the prosecution of a former President," that the Constitution precludes the use of official-act evidence in *any* criminal prosecution, even where the charges are based on unofficial acts undertaken before the defendant became the President. *Id.* at 631. Neither the existence nor the parameters of that special evidentiary immunity were established before the prosecutors here introduced evidence of President Trump's official acts in an effort to secure his conviction of a state criminal offense. After the Supreme Court's decision, President Trump promptly asserted his right to a federal forum to challenge prosecutors' use of that official-act evidence.

The district court's refusal to find good cause in these circumstances was an abuse of discretion. Indeed, the district court's error on this score is a significant one for the operation of the federal officer removal statute and warrants this Court's swift correction. A federal official generally has good cause to remove a state criminal case to federal court after trial when, as here, the basis for removal only becomes clear during or after the trial. In this case, President Trump had good cause to remove after trial because it was not until after trial that the Supreme Court established the federal evidentiary immunity on which he relies.

The district court's contrary conclusion is difficult to fathom. Suppose New York had instead prosecuted a Member of Congress for alleged personal-capacity offenses, and prosecutors had unexpectedly introduced evidence during the criminal trial of the Member's speeches on the House floor to secure a conviction. It seems plain that the Member would have had good cause to remove the case to federal court after trial to assert Speech or Debate immunity. *Cf. United States v. Johnson*, 383 U.S. 169, 173–77 (1966) (Speech or Debate Clause prohibits evidentiary use of legislative acts). That result would be even more clear if, as here, the Supreme Court had handed down its decision recognizing the relevant evidentiary immunity only after the state criminal trial concluded. Similarly, suppose Congress had enacted a federal statute after the state court entered judgment in this case expressly preempting state criminal prosecutions of federal officials based on evidence of their official acts. President Trump would undoubtedly have had good cause at that point to remove the case to federal court to pursue an appeal based on that new statute. That President Trump's defense in fact takes the form of a new constitutional immunity announced by the Supreme Court after his trial ended, rather than a new statute enacted by Congress, should if anything cut in the President's favor.

In sum, in the unusual circumstance in which a federal official is tried by state authorities for conduct, or based on evidence, that intervening federal law colorably places off limits, the requisite "good cause" for post-trial removal is established. The very point of the statutory "good cause" standard is to provide a safety valve for

circumstances of that kind. Because President Trump's evidentiary immunity defense meets that standard, the district court erred in refusing to find good cause here.

Finally, the parties dispute whether the State's prosecution theory shifted during the trial, precipitating good cause for post-trial removal based on President Trump's Federal Election Campaign Act preemption defense. See Appellant's Br. 65–67; Appellee's Br. 50–51; Appellant's Reply Br. 30–31. The Court need not address that question in this appeal because it is clear that President Trump established good cause for post-trial removal based on his immunity defense. "And if the removing party establishes that one claim satisfies the requirements under § 1442(a)(1), the entire case is deemed removable." *Plaquemines Par. v. BP Am. Prod. Co.*, 103 F.4th 324, 333 (5th Cir. 2024); *see, e.g.*, *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 257 (4th Cir. 2017) (similar); 14C Charles A. Wright, et al., *Federal Practice and Procedure* § 3726, at 275 (rev. 4th ed, June 2024 update) (similar).

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be reversed.

Respectfully submitted,

YAAKOV M. ROTH
*Acting Assistant Attorney General*

ERIC D. MCARTHUR
*Deputy Assistant Attorney General*

MARK R. FREEMAN
MICHAEL S. RAAB

/s/ Maxwell A. Baldi
MAXWELL A. BALDI
*Attorneys, Appellate Staff*
*Civil Division, Room 7513*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 305-1754*
*maxwell.baldi@usdoj.gov*

March 2025

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 5,027 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*/s/ Maxwell A. Baldi*
Maxwell A. Baldi