24-2299-cv
New York v. Trump

# United States Court of Appeals
# For the Second Circuit

August Term, 2024

(Argued: June 11, 2025    Decided: November 6, 2025)

Docket No. 24-2299-cv

_____

PEOPLE OF THE STATE OF NEW YORK,

*Plaintiff-Appellee,*

v.

DONALD J. TRUMP,

*Defendant-Appellant.*

_____

Before:

> LOHIER, CARNEY, and PÉREZ, *Circuit Judges.*

In March 2023, a New York State grand jury indicted then-former President Donald J. Trump on thirty-four counts of falsifying business records in the first degree. The indictment alleged that Trump orchestrated an illegal scheme to influence the 2016 presidential election by directing his personal lawyer to pay $130,000 to an adult film star to prevent her from publicly revealing a sexual encounter with Trump. Trump sought to remove the criminal case against him to federal court, relying on the federal officer removal statute, 28 U.S.C. § 1442(a)(1). The District Court remanded the case after determining that it did not fall within the scope of § 1442(a)(1). Following a state court jury trial, Trump was convicted on all counts. After Trump's conviction but prior to sentencing, the United States Supreme Court issued its presidential immunity

decision in *Trump v. United States*, 603 U.S. 593 (2024). Trump thereafter sought leave to file a second, untimely notice of removal pursuant to § 1442(a)(1) and 28 U.S.C. § 1455(b), which establishes the procedure for removal of criminal prosecutions and requires that the defendant show "good cause" for an order granting leave to file a late notice of removal. Trump argued principally that the Supreme Court's intervening decision in *Trump v. United States* rendered the State's prosecution one "relating to" his official acts as President such that the case was now removable and established good cause for his untimely filing. The District Court denied leave, concluding, among other things, that "good cause" had not been shown for the delay in seeking removal a second time. We cannot be confident that in doing so, the District Court adequately considered issues relevant to the good cause inquiry so as to enable meaningful appellate review. Those issues include but are not limited to the impact of *Trump v. United States* on the removability of the underlying state prosecution. For example, the District Court did not consider whether certain evidence admitted during the state court trial relates to immunized official acts or, if so, whether evidentiary immunity transformed the State's case into one that relates to acts under color of the Presidency. Nor did the District Court consider whether any notice of removal of a criminal prosecution under § 1455(b)(1) must be filed before trial even if new grounds for removal arise during or after trial. We therefore **VACATE** the District Court's order denying Trump's motion for leave to file a second notice of removal and **REMAND** for reconsideration of the motion consistent with this opinion.

> STEVEN C. WU (John T. Hughes, *on the brief*), *for* Alvin L. Bragg, Jr., District Attorney for New York County, New York, NY, *for Plaintiff-Appellee.*
>
> JEFFREY B. WALL, Sullivan & Cromwell LLP, Washington, DC (Morgan L. Ratner, Sullivan & Cromwell LLP, Washington, DC, Robert J. Giuffra, Jr., Matthew A. Schwartz, James M. McDonald, Sullivan & Cromwell LLP, New York, NY, *on the brief*), *for Defendant-Appellant.*

> Yaakov M. Roth, Acting Assistant Attorney General,
> Eric D. McArthur, Deputy Assistant Attorney General,
> Mark R. Freeman, Michael S. Raab, Maxwell A. Baldi,
> Attorneys, Appellate Staff, United States Department of
> Justice, Washington, DC, *for United States, amicus curiae
> in support of Defendant-Appellant*.
>
> Pam Bondi, Matthew Whitaker, Jessica Hart Steinmann,
> Michael Berry, Richard Lawson, Gina M. D'Andrea,
> America First Policy Institute, Fort Worth, TX, *for
> America First Policy Institute, amicus curiae in support of
> Defendant-Appellant*.

PER CURIAM:

The federal officer removal statute permits a defendant in a state criminal

prosecution to remove the action to federal court if it is "for or relating to any act

under color of [federal] office" and the defendant raises a colorable federal

defense.  28 U.S.C. § 1442(a)(1); *see Kelley v. Richford Health Ctr., Inc.*, 115 F.4th 132,

138 (2d Cir. 2024).  The statute's "basic purpose is to protect the Federal

Government from the interference with its operations that would ensue were a

State able, for example, to arrest and bring to trial in a State court for an alleged

offense against the law of the State, officers and agents of the Federal

Government acting within the scope of their authority."  *Watson v. Philip Morris

Cos.*, 551 U.S. 142, 150 (2007) (cleaned up).

But there are rules a defendant must follow to remove his state

prosecution to federal court. Among them is the requirement that he file "[a] notice of removal of a criminal prosecution . . . not later than 30 days after the arraignment in the State court, or at any time before trial, whichever is earlier." 28 U.S.C. § 1455(b)(1). Even this requirement has a little play in its joints: On a showing that "good cause" exists for doing so, the federal court "may enter an order granting the defendant . . . leave to file the notice at a later time." *Id.*

This appeal primarily raises two basic questions: whether the state prosecution of then-former President Donald J. Trump was removable to federal court based on the federal officer removal statute; and whether the then-former President showed "good cause" within the meaning of § 1455(b)(1) to file a notice of removal in federal court well after his arraignment, trial, and verdict based on the United States Supreme Court's subsequent decision in *Trump v. United States*. Because the District Court does not appear to have considered important issues relevant to the removability of the underlying state prosecution, we **VACATE** the District Court's order and **REMAND** for reconsideration of the motion consistent with this Opinion.

I

In March 2023, a New York State grand jury indicted then-former

4

President Trump on thirty-four counts of falsifying business records in the first degree in connection with actions taken before his Presidency. The indictment alleged that Trump orchestrated an illegal scheme to influence the 2016 presidential election by directing his personal lawyer to pay $130,000 to an adult film star to prevent her from publicly revealing a sexual encounter with Trump.

Trump sought to remove the criminal case against him to federal court by filing a notice of removal under the federal officer removal statute, 28 U.S.C. § 1442(a)(1). The District Court remanded the case to state court because it determined that the case fell outside the scope of federal officer removal jurisdiction. Following a nearly seven-week trial in state court, a jury convicted Trump on all thirty-four counts against him.

On July 1, 2024, after Trump's conviction but prior to sentencing, the United States Supreme Court issued its presidential immunity decision in *Trump v. United States*, 603 U.S. 593 (2024). In *Trump*, the Court held that "the President is absolutely immune from criminal prosecution for conduct within his exclusive sphere of constitutional authority." *Id.* at 609. "[S]eparation of powers principles," the Court further explained, "necessitate at least a *presumptive* immunity from criminal prosecution for a President's acts within the outer

5

perimeter of his official responsibility." *Id.* at 614.  Most relevant here, the Supreme Court also held that "even when an indictment alleges only unofficial conduct," prosecutors may not introduce evidence of "[t]he President's immune conduct." *Id.* at 631.

In light of the Supreme Court's decision, Trump attempted again to have his case removed to federal court.  This time, he sought leave to file a second, admittedly untimely notice of removal pursuant to § 1442(a)(1).  Among other things, he argued that the State's prosecution was "relat[ed] to" his official acts as President as *Trump v. United States* envisioned, rendering the case removable. The District Court denied leave to file the notice of removal principally on the ground that Trump had failed to show good cause for his late filing.

After Trump's election as President in November 2024, the state court imposed a sentence of unconditional discharge, the most lenient sentence possible in light of the conviction.  Trump appealed his final judgment of conviction to the State's intermediate appellate courts, where the appeal remains pending.  Trump now also appeals the District Court's order denying his motion for leave to file a second notice of removal.

II

New York Penal Law § 175.10 makes it a first-degree felony for any person to make or cause a false entry in the business records of an enterprise with an intent to defraud that includes an intent "to commit another crime or to aid or conceal the commission thereof." A state grand jury indicted Trump on thirty-four counts of falsifying business records in the first degree, in violation of § 175.10.

According to the indictment and the evidence presented at trial, Trump "orchestrated a scheme with others to influence the 2016 presidential election by identifying and purchasing negative information about him to suppress its publication and benefit [his] electoral prospects." App'x 96 ¶ 2. Shortly before the 2016 election, Trump directed Michael Cohen, his personal lawyer, to pay $130,000 to an adult film actress named Stormy Daniels "to prevent her from publicizing a sexual encounter with" Trump. App'x 96 ¶ 3. Following his client's instruction, Cohen then paid Daniels using a shell corporation. After the 2016 election, Trump reimbursed Cohen for the payment to Daniels through a series of monthly checks but was careful to "disguise[]" each check "as a payment for legal services rendered in a given month of 2017 pursuant to a

7

retainer agreement." App'x 97 ¶ 4. The Trump Organization maintained business records of these checks as payments for legal services, even though "there was no retainer agreement, and [Cohen] was not being paid for legal services rendered in 2017." App'x 97 ¶ 4. Instead, according to the indictment, Trump "caused his entities' business records to be falsified to disguise his and others' criminal conduct." App'x 97 ¶ 4.

On April 4, 2023, Trump was arraigned in the Supreme Court of the County of New York. A month later, Trump filed a timely notice of removal in federal court pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1). The removal notice asserted that "the indictment charges President Trump for conduct committed while he was President of the United States that was within the 'color of his office,' and the charges involve alleged federal and state election law violations that have a federal preemption defense." App'x 11 ¶ 2.

The State moved to remand the case to state court. After conducting an evidentiary hearing, the District Court concluded that Trump had failed to meet his burden of establishing removal jurisdiction based on the federal officer removal statute. The District Court explained that "[h]ush money paid to an

adult film star is not related to a President's official acts" and "does not reflect in any way the color of the President's official duties." *New York v. Trump*, 683 F. Supp. 3d 334, 345 (S.D.N.Y. 2023). The court accordingly granted the State's motion to remand.

Trump appealed that decision but, for reasons that are not clear on the record, dismissed his appeal later in 2023. The criminal trial began on April 15, 2024. On May 30, 2024, a day into its deliberations, the jury returned a verdict of guilty on each of the thirty-four counts against Trump.

On July 1, 2024, before Trump's scheduled sentencing, the Supreme Court issued its decision in *Trump v. United States*. In addition to providing for "at least a *presumptive* immunity from criminal prosecution for a President's acts within the outer perimeter of his official responsibility," 603 U.S. at 614, the Court announced that even evidence of the President's immunized official acts was inadmissible at trial, *id*. at 631. Because the "intended effect of immunity would be defeated" if a President's official acts could be "scrutinized to help secure his conviction," the Court explained, evidence of "[t]he President's immune conduct" must be inadmissible "even when an indictment alleges only unofficial conduct." *Id*. (quotation marks omitted).

9

In light of the Supreme Court's decision, Trump first moved in state court to dismiss the indictment against him and vacate the jury's verdict. When the state court denied his motion, Trump tried another tack. Relying again on 28 U.S.C. § 1442(a)(1), he filed a second notice of removal in the District Court on August 29, 2024, nearly two months after the Supreme Court issued its decision in *Trump v. United States*. But 28 U.S.C. § 1455(b)(1), which governs the procedures for removal of state criminal prosecutions, provides that a notice of removal "shall be filed not later than 30 days after the arraignment in the State court, or at any time before trial, whichever is earlier, except that for good cause shown the United States district court may enter an order granting the defendant . . . leave to file the notice at a later time." The District Court thus initially rejected Trump's second notice of removal because he had not been granted the statutorily required leave to file an untimely notice. On September 3, 2024, however, Trump corrected the error and filed a motion for leave to file a second notice of removal out of time. That is the motion at issue on appeal.

The District Court denied that motion in a brief order issued the same day. Describing many of Trump's challenges to the state court proceedings as "issues for the state appellate courts," the District Court concluded that Trump had

10

failed to show good cause for his untimely filing. *New York v. Trump*, No. 23-CV-3773, 2024 WL 4026026, at *1 (S.D.N.Y. Sept. 3, 2024). "Nothing in the Supreme Court's opinion" in *Trump*, the court explained, "affects [the court's] previous conclusion that the hush money payments were private, unofficial acts, outside the bounds of executive authority." *Id.* at *2.

Trump timely appealed the District Court's order denying leave to remove his state court prosecution. He also moved in the District Court for a stay pending appeal and in this Court for an emergency stay of the order. On September 6, 2024, the District Court denied Trump's stay application. "[T]here is no action . . . to stay," it concluded, because "there has been no removal petition properly filed." App'x 1142. By then, however, the state trial court presiding over the criminal proceedings had adjourned sentencing until after the presidential election in November 2024. In light of the adjournment, this Court denied Trump's emergency stay motion on September 12, 2024.

On December 2, 2024, after his reelection, Trump filed another motion before the state trial court that had presided over his criminal proceedings, this time to dismiss the indictment and vacate the jury's verdict. The trial court denied that motion on January 3, 2025, and scheduled sentencing for a week

11

later, but declared that it was inclined "to not impose any sentence of incarceration." Add. 84–85. Trump as President-Elect then moved in the state appellate courts and the United States Supreme Court to stay sentencing. Each motion was denied, with the Supreme Court having the final word on January 9, 2025, a day before Trump was scheduled to be sentenced.

The Court held that "the alleged evidentiary violations at President-Elect Trump's state-court trial can be addressed in the ordinary course on appeal." Add. 89. "[T]he burden that sentencing will impose on the President-Elect's responsibilities is relatively insubstantial," it explained, "in light of the trial court's stated intent to impose a sentence of 'unconditional discharge' after a brief virtual hearing." Add. 89.

On January 10, 2025, the state trial court sentenced Trump to an unconditional discharge. Trump became President ten days later.

III

On appeal, Trump argues that the District Court erred in denying his motion for leave to file a second, post-trial notice of removal. The State counters that Trump's sentencing and the judgment of conviction in the state trial court render both his motion and this appeal moot. And even if the appeal is not

12

moot, the State says, Trump failed to establish good cause to permit filing of a second removal notice. For the reasons that follow, we conclude that the appeal is not moot, vacate the District Court's order denying Trump's motion for leave, and remand the case to the District Court for reconsideration of that motion consistent with this opinion.

IV

The first question is whether this case is moot. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). "A case becomes moot — and therefore no longer a 'Case' or 'Controversy' for purposes of Article III [of the United States Constitution] — when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quotation marks omitted). A case is moot on appeal "when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012) (quotation marks omitted); *see also Doe v. McDonald*, 128 F.4th 379, 385 (2d Cir. 2025).

The State insists that the appeal is moot because Trump's sentencing spelled the end of the state criminal action, leaving "nothing to remove to federal

13

district court" and divesting us of jurisdiction.  Appellee's Br. 20.  The State's

argument in favor of finding this case moot assumes on the merits that a federal

officer defendant can never remove a state criminal prosecution to federal court

under § 1442(a)(1) and § 1455(b)(1) after he has been sentenced and filed an

appeal in state court.  But, as discussed below, that is an open question in our

Court.  And in any event, "[a]n argument that claims mootness based on a

challenge to 'the legal availability of a certain kind of relief . . . confuses mootness

with the merits.'"  *Chevron Corp. v. Donziger*, 833 F.3d 74, 127 (2d Cir. 2016)

(quoting *Chafin v. Chafin*, 568 U.S. 165, 174 (2013)).  Unless the possibility of relief

is "so implausible that it is insufficient to preserve jurisdiction," a litigant's

"prospects of success are . . . not pertinent to the mootness inquiry" and are

instead relevant to the merits.  *Chafin*, 568 U.S. at 174.

Whatever we think of the obstacles Trump faces in obtaining removal

under § 1442(a)(1) and § 1455(b)(1) at this stage of his state criminal proceedings,

those relate to the merits of removal rather than to mootness.  At this stage,

Trump has at least *some* prospect of successfully removing the proceedings to

federal court and thus obtaining the relief he seeks.  We cannot say that he has

"no concrete interest" in the outcome of this case.  *MOAC Mall Holdings LLC v.*

14

*Transform Holdco LLC*, 598 U.S. 288, 296 (2023) (quotation marks omitted).

V

On the merits, the principal question presented is whether the District Court erred in denying Trump's motion to file an untimely notice of removal under § 1455(b)(1).  We review that decision for abuse of discretion.  *See Hussein v. Maait*, 129 F.4th 99, 121 (2d Cir. 2025).  A district court "abuses or exceeds the discretion accorded to it when (1) its decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2) its decision . . . cannot be located within the range of permissible decisions." *Id*. (quotation marks omitted).

A

Section 1455(b)(1) provides as follows:

> A notice of removal of a criminal prosecution shall be filed not later than 30 days after the arraignment in the State court, or at any time before trial, whichever is earlier, except that for *good cause shown* the United States district court may enter an order granting the defendant or defendants leave to file the notice at a later time.

28 U.S.C. § 1455(b)(1) (emphasis added).

Although the parties have focused much of their attention on the "good cause shown" language of the statute, there remains the question whether a federal officer defendant can *ever* remove a state criminal prosecution to federal

15

court under § 1442(a)(1) and § 1455(b)(1) after he has been tried and a judgment entered. As already noted, that question relates to the merits, and there may be viable arguments from either side that the relevant statutory language either permits removal to federal court even at this late stage or plainly prohibits it. We do not answer that question. The District Court did not address this question either, however, and may do so on remand with the benefit of briefing from the parties.

B

By contrast, we do address the meaning of "good cause." In defining "good cause" within the meaning of § 1455(b)(1), we draw on this Court's analysis of similar "good cause" provisions in the federal rules of civil, criminal, and appellate procedure. Although not necessary to our resolution of this appeal, we are mindful of two background principles: first, that federal officer removal jurisdiction under § 1442(a)(1) "is not narrow or limited," *Cuomo v. Crane Co.*, 771 F.3d 113, 115 (2d Cir. 2014) (quotation marks omitted); but second, that "[t]he Supreme Court" otherwise "has held that statutory procedures for removal are to be strictly construed" and that "respect for the limited jurisdiction of the federal courts and the rights of states" compels us to resolve any

16

interpretive doubts "against removability," *In re Methyl Tertiary Butyl Ether Prods.*

*Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007) (quotation marks omitted).

"[A] finding of 'good cause'" to justify an untimely filing typically

"depends on the diligence of the moving party." *Parker v. Columbia Pictures*

*Indus.*, 204 F.3d 326, 340 (2d Cir. 2000). We interpreted the term "good cause"

this way in *Parker*, which involved motions for "leave to amend the pleadings

after the deadline set in the scheduling order" under Rule 16(b) of the Federal

Rules of Civil Procedure. *Id.*; Fed. R. Civ. P. 16(b); *accord BPP Ill., LLC v. Royal*

*Bank of Scot. Grp. PLC*, 859 F.3d 188, 195 (2d Cir. 2017). Likewise, in *United States*

*v. Kopp*, a criminal appeal, we determined that good cause did not exist to permit

filing of an untimely motion to suppress evidence under Rule 12(e) of the Federal

Rules of Criminal Procedure where the asserted basis for the delay "was a

quintessential strategic decision" by the moving party, which had earlier raised

and then withdrawn the motion. 562 F.3d 141, 143 (2d Cir. 2009). "The fact that

[the defendant] later came to view that decision as a poor one [was] not

sufficient, by itself, to establish cause." *Id.* And more recently in *Alexander v.*

*Saul*, we interpreted good cause for extending time to file a notice of appeal

under Rule 4(a)(5) of the Federal Rules of Appellate Procedure to mean that the

"movant must . . . show that the need for an extension is . . . occasioned by something that is not within the control of the movant." 5 F.4th 139, 147 (2d Cir. 2021) (cleaned up).

As applicable to this case, we consistently read the good cause standard to require movants to demonstrate that circumstances outside of their control prevented them from timely seeking relief and that they diligently sought relief within a reasonable period. In defining good cause to permit filing of an untimely removal notice under § 1455(b)(1), we see no reason to diverge from our past interpretations of the same term in analogous contexts. We therefore hold that a criminal defendant who moves for leave to file an untimely notice of removal under § 1455(b)(1) must show at least two things: that circumstances outside of his control, including new grounds for removal that could not reasonably have been raised prior to the expiration of the thirty-day default statutory deadline, prevented him from timely seeking relief; and that he acted with reasonable diligence and without undue delay to remove the case. Of course, we also keep in mind that, as in other contexts, good cause under § 1455(b)(1) reflects "a flexible standard that requires consideration of all interests in the particular case." *United States v. Kelly*, 128 F.4th 387, 420 (2d Cir.

2025) (quoting advisory committee's note to 2014 amendments to Federal Rule of

Criminal Procedure 12(c)(3)); *see* Fed. R. Crim. P. 12(c)(3) ("[A] court may

consider [an untimely] defense, objection, or request if the party shows good

cause.").

C

The District Court cited two bases for denying Trump's motion for leave.

The first requires little discussion, while the second calls for a more extended

analysis.

First, the District Court improperly invoked the *Rooker-Feldman* doctrine to

hold that it lacked "jurisdiction to hear Mr. Trump's arguments concerning the

propriety of the New York trial." *Trump*, 2024 WL 4026026, at *1. *Rooker-Feldman*

concerns the "limited circumstances" in which the certiorari statute, 28 U.S.C.

§ 1257, precludes a district court "from exercising subject-matter jurisdiction in

an action it would otherwise be empowered to adjudicate." *Exxon Mobil Corp. v.*

*Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005); *see Butcher v. Wendt*, 975 F.3d

236, 243 (2d Cir. 2020). Because the doctrine implicates statutory rather than

constitutional jurisdiction, *Butcher*, 975 F.3d at 243, it does not bar a district court

from exercising jurisdiction over actions properly removed under other statutes,

19

including 28 U.S.C. §§ 1442(a)(1) and 1455(b)(1).  So it was error for the District Court to rely on the *Rooker-Feldman* doctrine as a bar to removal here.

The District Court's second, independent basis for denying leave to file the untimely motion was that "[n]othing in the Supreme Court's opinion [in *Trump v. United States*] affects [the court's] previous conclusion that the hush money payments were private, unofficial acts, outside the bounds of executive authority" and that accordingly "[g]ood cause has not been shown."  *Trump*, 2024 WL 4026026, at *2.  While acknowledging the decision, the District Court does not appear to have adequately considered whether *Trump v. United States* represented a change in controlling law that could support a finding of good cause.  As noted, a state court action brought against a federal officer "for or relating to any act under color of such office" may be removed to federal court under § 1442(a)(1) if the defendant raises a "colorable federal defense."  *Agyin v. Razmzan*, 986 F.3d 168, 174 (2d Cir. 2021) (quoting *Mesa v. California*, 489 U.S. 121, 129 (1989)).  So a question that naturally arises in connection with the good cause inquiry is whether the State's prosecution of Trump was ever one "for or relating to" his official acts as President.

In urging that we answer "yes" to that question, Trump claims that the

State improperly relied at trial on at least three categories of official acts evidence later precluded by the Supreme Court's decision.  First is the "testimony that President Trump allegedly 'told' Cohen that [an] FEC inquiry would be 'taken care of' by then-Attorney General Jeff Sessions."  Appellant's Br. 44.  Second is the "testimony from [Hope] Hicks concerning private conversations with President Trump regarding matters of public concern relating to Cohen and his activities, which occurred in the Oval Office while Hicks served as White House Communications Director."  Appellant's Br. 40–41.  And third is the "evidence of . . . official statements by President Trump in 2018, via Twitter, regarding matters of public concern."  Appellant's Br. 42.  "[B]y offering the official-acts evidence," Trump contends, the State "made their case one that 'relat[ed]' to 'act[s] under color' of the Presidency."  Appellant's Br. 26 (quoting 28 U.S.C. § 1442(a)(1)).  "The federal-officer removal statute," he says, broadly "applies to cases in which the prosecution uses 'any act under color of [the President's] office' as evidence at a criminal trial of the President . . . regardless of whether the charged conduct itself qualifies as official."  Reply Br. 15.

Decisions interpreting § 1442(a)(1) after its enactment as part of the Judicial Code of 1948 held that the "'color of office' test . . . require[s] a showing of a

21

'causal connection' between the charged conduct and asserted official authority."
*Willingham v. Morgan*, 395 U.S. 402, 409 (1969); *accord Mesa*, 489 U.S. at 131–32;
*Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137 (2d Cir. 2008) (recognizing the
"causation requirement").  The Removal Clarification Act of 2011, Pub. L. No.
112-51, § 2(b), 125 Stat. 545, 545, amended § 1442(a)(1) to permit removal of
actions "for *or relating to* any act under color of [federal] office."  28 U.S.C.
§ 1442(a)(1) (italicized text added by the 2011 amendment).  That 2011
amendment, we recognized, was "intended to broaden the universe of acts that
enable Federal officers to remove to Federal court."  *Agyin*, 986 F.3d at 174 n.2
(quotation marks omitted); *see* H.R. Rep. No. 112-17(I), at 6 (2011).  At the same
time, we "reject[ed] assert[ion] that the causal-nexus requirement recognized
in pre-2011 cases . . . was abrogated by" the amendment.  *State ex rel. Tong v.*
*Exxon Mobil Corp.*, 83 F.4th 122, 145 n.7 (2d Cir. 2023).  Meanwhile, without
guidance from the Supreme Court about the effect of the 2011 amendment, sister
circuits have taken different approaches on the issue.[1]

---

[1] *Compare, e.g., Moore v. Elec. Boat Corp.*, 25 F.4th 30, 35–36 (1st Cir. 2022), *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 813 (3d Cir. 2016), *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 258 (4th Cir. 2017), *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 291–96 (5th Cir. 2020) (in banc), *Baker v. Atl. Richfield Co.*, 962 F.3d 937, 944 (7th Cir. 2020), *and District of Columbia v. Exxon Mobil Corp.*, 89 F.4th 144, 155–56 (D.C. Cir. 2023), *with Minnesota ex rel.*

Whether *Trump v. United States* constructed a new road for removal under § 1442(a)(1) turns initially on whether any of the three categories of challenged evidence relates to immunized official acts. If so, there remains the question whether admitting that evidence transformed the State's case against Trump into one that "relat[es] to" acts taken under color of the Presidency within the meaning of the amended removal statute.

There are other substantive and procedural legal questions raised by Trump's arguments concerning removal and good cause. Recall that § 1442(a)(1) also requires a "colorable federal defense." *See Kelley*, 115 F.4th at 138. Were the state prosecution somehow related to official acts, the District Court would have had to consider whether a challenge to the admissibility of evidence of those acts constitutes a "federal defense" under § 1442(a)(1), or more broadly whether intervening Supreme Court decisions or changes in the State's theory of prosecution might restore Trump's purported federal defense based on the preemption provision of the Federal Election Campaign Act, 52 U.S.C. § 30143(a).

Even if Trump could establish that new grounds for removal existed that

---

*Ellison v. Am. Petrol. Inst.*, 63 F.4th 703, 715 (8th Cir. 2023), *and State v. Meadows*, 88 F.4th 1331, 1348–50 (11th Cir. 2023), *and with Ray v. Tabriz*, 110 F.4th 949, 957 (7th Cir. 2024), *and DeFiore v. SOC LLC*, 85 F.4th 546, 557 (9th Cir. 2023).

23

he could not reasonably have raised within the default thirty-day period contained in § 1455(b)(1), he would have to demonstrate that he acted diligently and without undue delay to remove the case based on those new grounds. *See Callahan v. Cnty. of Suffolk*, 96 F.4th 362, 370 (2d Cir. 2024); *Parker*, 204 F.3d at 340. Otherwise, he would be unable to show good cause for the untimely filing at issue.

The State now challenges Trump's claim that he acted with reasonable diligence. It asserts that Trump "waited more than two months" after the Supreme Court issued its decision to file his motion for leave. Appellee's Br. 41. And it claims that Trump "should have exercised diligence and sought relief soon after those new circumstances arose" yet "failed to do so." Appellee's Br. 41. Trump counters that his delay was reasonable because the two-month period between the Supreme Court's decision and the filing of his motion for leave to file a second notice of removal coincided with a tumultuous presidential campaign and other urgent legal matters requiring the attention of his legal team. *See* Reply Br. 31–32.

At oral argument, however, Trump acknowledged that he could have sought removal immediately following the Supreme Court's decision but opted

instead to "reasonably g[i]ve the state court judge an opportunity to address the effect of" that decision.  Oral Argument Tr. 20.  According to counsel, Trump sought removal to federal court only after the state trial court suggested that it was likely to reject Trump's immunity argument and proceed to sentencing.[2]

In its denial of leave to file a second removal notice, however, the District Court did not address whether Trump acted diligently.  In fact, the District Court did not grapple with *any* of the central issues that we have identified above. Explaining only that "[n]othing in the Supreme Court's opinion affects [the] previous conclusion that the hush money payments were private, unofficial acts, outside the bounds of executive authority," *Trump*, 2024 WL 4026026, at *2, the court bypassed what we consider to be important issues bearing on the ultimate

---

[2] Trump's counsel explained:

> We could have come up immediately . . . .  I just think we clearly would have been criticized.  Because if the concern is about stepping on state courts, we reasonably gave the state court judge an opportunity to address the effect of the Supreme Court's decision.  And only when he said, I'm going to rule on immunity on September 16, and I'm going to sentence on September 18, two days later, only then did we say, well, wait a minute. We're not going to be able to take an interlocutory appeal of that ruling, and it sure looks like he's going to deny it because he is setting sentencing. So we've given him a fair opportunity, and now we've come to federal court.

Oral Argument Tr. 20.

issue of good cause.

D

Where, as here, the District Court "failed to consider [relevant] factors," we "[can]not determine whether the court abused its discretion" and are "therefore . . . constrained to 'remand the case for further consideration.'" *Ibeto Petrochemical Indus. Ltd. v. M/T Beffen*, 475 F.3d 56, 61 (2d Cir. 2007) (quoting *D'Alto v. Dahon Cal., Inc.*, 100 F.3d 281, 284 (2d Cir. 1996)). "[T]his Court's usual practice is to allow the district court to address arguments in the first instance." *New York ex rel. James v. Niagara-Wheatfield Cent. Sch. Dist.*, 119 F.4th 270, 284 (2d Cir. 2024) (cleaned up).

Both parties at oral argument helpfully acknowledged that if we were to conclude that the District Court did not properly exercise its discretion, "this Court could remand for the [D]istrict [C]ourt to make a good-cause determination under the appropriate standard." Oral Argument Tr. 45; *see* Oral Argument Tr. 49–50. Having determined that the District Court "d[id] not address . . . significant issues" relevant to the good cause inquiry, we "vacate the decision of the [D]istrict [C]ourt and remand for development of these and other relevant arguments before the [D]istrict [C]ourt." *Farricielli v. Holbrook*, 215 F.3d

26

241, 246 (2d Cir. 2000). Specifically, on remand, the District Court should consider the factors relevant to determining good cause listed above. This presumably would entail closely reviewing the three categories of evidence that Trump claims relate to official acts and determining whether in fact the State's use of such evidence means that his prosecution relates to acts taken under color of the Presidency as contemplated by *Trump v. United States*. If the District Court finds that the prosecution is related in this way, it should evaluate both whether Trump has a colorable federal defense and whether he diligently sought removal. The District Court should also determine whether removal under § 1442(a)(1) and § 1455(b)(1) is even available at this stage of the state court proceedings. We leave it to the able and experienced District Judge to decide whether to solicit further briefing from the parties or hold a hearing to help it resolve these issues. We express no view and "neither rule nor imply" that the District Court should resolve Trump's motion for leave to file a second removal notice in any particular way. *Fulton v. Goord*, 591 F.3d 37, 45 (2d Cir. 2009). We simply direct the District Court to consider the motion anew in light of our opinion.

27

VI

For the foregoing reasons, we **VACATE** the District Court's order denying

leave to file a second notice of removal and **REMAND** for reconsideration

consistent with this opinion.